**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CASE NO. 21 MJ 92** |
| | **:** | |
| **COUY GRIFFIN.** | **:** | |
| | **:** | |
| Defendant. | **:** | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(2)(A) and (f)(2)(B) of the federal bail statute.   The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Background**

The defendant has been charged by complaint with Unlawful Entry in violation of 18 U.S.C. § 1752(a), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions..   The United States seeks a detention hearing and would show that defendant should be held without bond pending trial.

1

### A.   The defendant's history and personal characteristics.

The defendant, 47 years old, is a former entertainer, having acted for six years as a western or cowboy performer for the Walt Disney Company in Paris, France.   At other times, he has been self-employed as a restauranteur and as a self-styled preacher.   He currently serves as a county commissioner for Otero County, New Mexico.

The defendant is the founder and leader of a political committee called, "Cowboys for Trump," on whose behalf he has engaged in inflammatory, racist, and at least borderline threatening advocacy.   For instance, at one gathering involving his group, the defendant stated, "the only good democrat is a dead democrat," before saying he did not intend that physically, only politically.   On another occasion, the defendant posted a video titled "Cowboys and Indians" on his Facebook page in which the defendant participates in a traditional Apache blessing where he is seen laughing while an individual off-camera says, "You better go jump on (an expletive) Democrat now. . . You're protected now."   As a result of this incident, the nearby Mescalero Apache Tribe banned the defendant from entering its tribal lands.   In another video, referencing certain football players, the defendant stated, "They want to destroy our country. They want to talk about playing a Black national anthem before football games? I got a better idea, why don't you go back to Africa and form your little football teams over in Africa and you can play on a(n) old beat-out dirt lot and you can play your Black national anthem there. How about that?"   The defendant's group, "Cowboys for Trump," was fined for flouting financial reporting requirements and ignoring a binding arbitration agreement that found it was a political committee, subject to state regulation.   "Cowboys for Trump" has plans to stage a protest at the New Mexico State Capitol on January 20, 2021.   Foreseeing a potential for violence at this demonstration, the New

Mexico State Capitol has been closed and secured with barriers and fencing.   The New Mexico National Guard will be deployed to provide additional security.   "Cowboys for Trump" advocates for gun rights.

The defendant is recently divorced.   In related child-custody proceedings, the judge barred the defendant from in-person visits with his son following social media posts that have generated threats and for refusing to abide by COVID-19 mask requirements, thereby placing his son's safety at risk.

The defendant's criminal history includes two arrests and one conviction for driving under the influence of alcohol/drugs.   He resides in Alamogordo, New Mexico, and has no known ties to the Washington, D.C. metropolitan area.

**B.      The defendant participated in the unlawful demonstration at the U.S. Capitol on January 6, 2021, intent on preventing a Biden Presidency.**

On January 9, 2021, the FBI received a tip that the defendant, a county commissioner for Otero County, New Mexico, was present at the U.S. Capitol on January 6, 2021, and had posted videos to his Facebook page indicating that he intended to return to Washington, D.C. on January 20, 2021.

The defendant is the founder of an organization called "Cowboys for Trump."   Following the incident at the U.S. Capitol on January 6, 2021, the defendant posted a video to the Cowboys for Trump Facebook page in which he stated that he "climbed up on the top of the Capitol building and . . . had a first row seat."   In that same video, which has since been removed from the Facebook page, he went on to state his intention to return to the U.S. Capitol on January 20, 2021:

> You want to say that that was a mob? You want to say that was violence? No sir. No Ma'am. No we could have a 2nd Amendment rally on those same steps that we had

that rally yesterday. You know, and if we do, then it's gonna be a sad day, because there's gonna be blood running out of that building. But at the end of the day, you mark my word, we will plant our flag on the desk of Nancy Pelosi and Chuck Schumer and Donald J. Trump if it boils down to it.

While standing before the crowd assembled before the Capitol, the defendant stated, "We're not going anywhere.   We're not taking no for an answer.   We're not going to get our election stolen from us from China."   The defendant also stated at the time, "Biden will never be president."

**C.     Since January 6, 2021, the defendant has made threatening comments and promised to return to the U.S. Capitol on January 20, 2021, with firearms, at which time "blood would be running out of that building."**

On January 7, 2021, a television news reporter interviewed the defendant and asked him whether his "blood running out of the" Capitol comment the day before was a "direct threat" against Congressional leaders.   The defendant admitted, "It is," before equivocating and denying any intention to engage in violence.

On January 11, 2021, the FBI interviewed the defendant about his actions on January 6, 2021. The defendant reported that he traveled to Washington, D.C. to participate in a protest regarding the results of the 2020 Presidential Election.   The defendant stated that he traveled with an individual who runs media for the Cowboys for Trump organization.   The defendant told agents that he expected the event to be peaceful, and that it largely was.   The defendant stated that he was "caught up" in the crowd, which pushed its way through the barricades and entered the restricted area of the U.S. Capitol. The defendant told the Special Agents that he hopes a change in leadership can be accomplished "without a single shot being fired," but noted that there was "no option that's off the table for the sake of freedom."

Video footage obtained by the FBI shows the defendant standing on the west front of the

U.S. Capitol steps, well within the restricted area. In the video, the defendant states: "it is a great day for America! The people are showing that they've had enough. People are ready for fair and legal elections, or this is what you are going to get, you're going to get more of it."

Subsequent to the January 6, 2021, incident, the defendant was interviewed on television by Inside Edition about his participation in the January 6, 2021, incident at the U.S. Capitol. During this interview, a reporter asked the defendant about the comments he posted on Facebook stating that there might be "blood running out" of the U.S. Capitol during further demonstrations, and whether he was afraid that additional people could die. The defendant responded: "I am more afraid of losing my freedom than anything." At another point, the defendant stated: "We are not going to allow it. There will never be a Biden presidency."

On January 14, 2021, during an Otero County Commission meeting in Alamogordo, New Mexico, the defendant spoke for approximately seventeen minutes about his actions on January 6, 2021. During these comments, the defendant told the commission that he noticed the fencing that was erected to delineate the area between permissible First-Amendment activity and the prohibited areas on the west side of the U.S. Capitol. Specifically, the defendant stated that when the crowd got down to the inaugural side of the building, "there was some fencing up and they were saying that you could not go any further because this was being reserved for Joe Biden and his inauguration. Well, you tell a million Trump supporters that . . . , pretty soon that crowd just pushed through. I wasn't anywhere in the front of it, I was in the back."

The defendant also told members of the commission about his intent to lead the group in a prayer, and noted that he finally was able to do so when he got a bullhorn "outside the Capitol, but up where the President is inaugurated at."

Finally, the defendant spoke at the commission meeting about his plans to return to Washington, D.C. to protest President-Elect Biden's inauguration on January 20, 2021. The defendant stated that he intended to bring his firearms with him when he traveled to Washington, D.C. specifically, the defendant stated: "I am going to leave either tonight or tomorrow. I've got a .357 Henry big boy rifle . . . that I got in the trunk of my car, and I've got a .357 single action revolver . . . that I will have underneath the front seat on my right side. And I will embrace my Second Amendment, I will keep my right to bear arms, my vehicle is an extension of my home in regard to the constitution law, and I have a right to have those firearms in my car."

**Procedural History and Applicable Authority**

On January 17, 2021, the defendant was arrested on a complaint charging violation of 18 U.S.C. § 1752(a).  The United States requests a detention hearing pursuant to 18 U.S.C. §§ 3142(f)(2)(A) and (f)(2)(B) and moves that the defendant be detained as a flight risk and danger to the community under 18 U.S.C. §§ 3142(e)(1).

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).   The parties may proceed by way of proffer, and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the Government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge

to obtain discovery.   Smith, 79 F.3d at 1210; see also Williams, 798 F. Supp. at 36.

The government contends that the defendant is a flight risk.   The government must establish by a preponderance of the evidence that the defendant is a flight risk.   The government also contends that the defendant is a danger to the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. United States v. Peralta, 849 F.2d 625, 626 (D.C. Cir. 1988).   The Court should hold a hearing to determine whether the defendant should be detained, because there is a serious risk that the defendant will flee and because there is a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

Evidence establishing the defendant's risk of flight includes the lack of ties he has to the Washington, D.C. metropolitan area, to which he must return for trial.   In addition, the defendant has demonstrated and continues to demonstrate a disdain for legal authority.   As detailed above, the defendant's group, "Cowboys for Trump," has shown its disdain for lawful authority, failing even after being ordered to do so, to comply with lawful regulations.   Moreover, the defendant traveled across country to participate in an unlawful protest that aimed to overturn a lawful election, and then returned to the District as he stated he would in his speech at the council meeting. The defendant has repeatedly denied the legitimacy of the 2020 Presidential Election, has stated that Biden will never be president, and foresees "blood running out of the" U.S. Capitol in connection with efforts to prevent a Biden presidency, and has stated that "nothing is off the table" in preventing a Biden presidency.   As the defendants stated, "We are not going to allow it. There will never be a Biden presidency."   If the defendant denies the authority of the lawfully elected

President of the United States, who election was certified by the Congress of the United States, certainly he would deny the authority of the judicial officers appointed by the President and confirmed by the Senate.

There also is reason to believe that there is a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.   The defendant has communicated a willingness to prevent a Biden presidency, stating that "nothing is off the table."   He has stated that "blood will run."   He has stated that "the only democrat is a dead democrat."   These and other statements the defendant has made indicate his willingness to threaten, injure, and intimidate, whether individually or through his group, "Cowboys for Trump."   The defendant has demonstrated his propensity to engage in such conduct in order to advance his viewpoints over those of others.   It is reasonable to expect, given the defendant's history, that he would engage in such conduct to deter prospective witnesses and jurors who might not share his viewpoint.

## The Defendant Should Be Detained

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. See 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case causes the government to ask the Court to conclude that there is: (1) no condition or combination of conditions that would assure the safety of the community and (2) no information in the defendant's personal background and characteristics that would serve

as a basis to rebut the presumption of dangerousness under 18 U.S.C. §§ 3142(f)(1)(D) and
(f)(1)(E). A hold under 18 U.S.C. § 3142(f)(2)(A) is also appropriate for risk of flight, given the
defendant's lack of ties to the community.

### Nature and Circumstances of the Offenses Charged

The defendant is charged by complaint with Unlawful Entry in violation of 18 U.S.C. §
1752(a).  The nature and circumstances of this charge are set forth fully above.  The first factor,
the nature and circumstances of the offense charged, clearly weighs in favor of detention. Here,
the defendant traveled across country to participate in a demonstration the purpose of which was
to prevent the lawful certification of the 2020 Presidential Election.  The defendant continued to
participate in this demonstration even after it became unlawful and even after it became violent.
The defendant's participation in this demonstration included the use of inflammatory language
which, at the very least, had the potential to incite further unlawful activity.  The defendant knew
what he was doing was unlawful, but he did not refrain from such unlawful conduct and indeed
appeared to relish in it.  The defendant also voiced his intent to engage in such unlawful conduct
gain, stating his intention to return to Washington, D.C. to prevent a Biden presidency.  He also
stated that any such effort by him or others could involve violence: "You know, and if we do, then
it's gonna be a sad day, because there's gonna be blood running out of that building. But at the end
of the day, you mark my words, we will plant our flag on the desk of Nancy Pelosi and Chuck
Schumer and Donald J. Trump if it boils down to it."  The defendant promised to return to
Washington, D.C. with firearms.  The nature and circumstances of the charged offense are
serious.  Given these facts and circumstances, the defendant should remain detained.

**Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is strong.   The defendant made videos of himself in the restricted area.   It is clear that he is in the restricted area.   The defendant has admitted that he was in the restricted area and that he knew so at the time.   Witnesses can be expected to corroborate this fact.   There could be no stronger evidence of the defendant's guilt.

**The Defendant's History and Characteristics**

The third factor, the history and characteristics of the person, also weighs heavily in favor of detention.   As detailed above, the defendant is an inflammatory provocateur and fabulist who engages in racist invective and propounds baseless conspiracy theories, including that Communist China stole the 2020 Presidential Election.   He denies the lawful election of the president and as stated repeatedly that Biden will never be president.   The defendant has a history of making threatening comments, such as "the only good democrat is a dead democrat," and then inviting the listening that he did not mean what he just said.   The defendant is divorced and was denied visitation with his rights because of the dangers the defendant's inflammatory, provocative, and irresponsible conduct has caused his child.   The defendant has no established profession, whether as cowboy, cowboy actor, restauranteur, or otherwise.   The defendant's history and characteristics weigh in favor of detention.

**Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The defendant has twice traveled across country to engage in demonstrations, with one turning violent, bloody and deadly,

10

and the second, according to the defendant, promising at least the same.   The defendant has taken "nothing off the table" in pursuit of his aims to ensure "Biden will never be president."   The defendant's inflammatory conduct, repeated threats, delusional worldview, and access to firearms makes him a danger to the community.    In order to protect the community and assure his appearance at future court proceedings, the defendant should be held without bond pending trial.

### Conclusion

WHEREFORE, the Government requests that the Court schedule a detention hearing and order the defendant to be detained without bond pending resolution of this case.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

By: _____/s/_____
JANANI IYENGAR
Assistant United States Attorney
555 4th Street, N.W., Room 9413
Washington, D.C. 20530
(202) 870-4487
Janani.Iyengar@usdoj.gov

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via email on January 19, 2021.

_____/s/_____
JANANI IYENGAR