UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | MAGISTRATE NO. 21-MJ-92 |
| : | |
| COUY GRIFFIN, : | |
|     Defendant. : | |

OPPOSITION TO DEFENDANT'S MOTION
TO REVOKE PRETRIAL DETENTION
ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this opposition to the Defendant's Motion to Revoke Pretrial Detention Order, filed on February 3, 2021. In support thereof, the government states the following:

I.   **BACKGROUND**

   A.   **Procedural Posture**

On January 17, 2021, the Defendant was arrested near the United States Capitol building pursuant to an arrest warrant issued on January 15, 2021, by Magistrate Judge Zia Faruqui of the District Court of the District of Columbia. Due to the Martin Luther King, Jr., holiday, the Defendant appeared in the Superior Court of the District of Columbia. The magistrate judge in Superior Court transferred this matter to District Court and detained the Defendant until his appearance in District Court on January 19, 2021.

On January 19, 2021, the government received a notice from the U.S. Marshals that the Defendant refused to take a COVID test. Therefore, the Defendant could not appear for his initial appearance. On January 21, 2021, the matter was scheduled for an initial appearance. The

1

Defendant continued to refuse his COVID test. The Defendant briefly appeared by phone during that hearing and refused to speak with the Court. The Court continued the initial appearance until February 1, 2021. On January 29, 2021, Magistrate Judge Faruqui entered an order requiring the Defendant to appear for his detention hearing on February 1, 2021. On February 1, 2021, following a detention hearing in which the government proceeded by proffer, Magistrate Judge Faruqui detained the Defendant pending a preliminary hearing.

    B.    **Statement of Facts**

On January 9, 2021, the FBI received a tip that the Defendant, a county commissioner for Otero County, New Mexico, was present at the U.S. Capitol on January 6, 2021, and had posted videos to his Facebook page indicating that he intended to return to Washington, D.C. on January 20, 2021.

The Defendant is the founder of an organization called "Cowboys for Trump." Following the incident at the U.S. Capitol on January 6, 2021, the Defendant posted a video to the Cowboys for Trump Facebook page in which he stated that he "climbed up on the top of the Capitol building and . . . had a first row seat." In that same video, which has since been removed from the Facebook page, he went on to state his intention to return to the U.S. Capitol on January 20, 2021:

> You want to say that that was a mob? You want to say that was violence? No sir. No Ma'am. No we could have a 2nd Amendment rally on those same steps that we had that rally yesterday. You know, and if we do, then it's gonna be a sad day, because there's gonna be blood running out of that building. But at the end of the day, you mark my word, we will plant our flag on the desk of Nancy Pelosi and Chuck Schumer and Donald J. Trump if it boils down to it.

While standing before the crowd assembled before the Capitol, the Defendant stated, "We're not going anywhere. We're not taking no for an answer. We're not going to get our election stolen from us from China." The Defendant also stated at the time, "Biden will never be president."

On January 11, 2021, FBI agents interviewed the Defendant about his actions on January

6, 2021. The Defendant stated that he traveled to Washington, D.C. to participate in a protest regarding the results of the 2020 Presidential Election. The Defendant stated that he traveled with a man named Matt Struck, who runs the media operation for Cowboys for Trump. The Defendant stated he went to the Capitol on January 6 and observed a large crowd forming around the barricades. He further stated that he was part of the crowd that pushed its way through the barricades and entered the restricted area of the U.S. Capitol grounds. The Defendant further stated that he and Struck did not enter the Capitol building, but remained on the Capitol steps. During the interview, the Defendant also stated that he intended to return to Washington, D.C. for a rally on January 20, 2021, the day of President Biden's inauguration. The Defendant stated that he hoped the protests on Inauguration day would be non-violent, and that a change in leadership could be accomplished "without a single shot being fired." He noted, however, that there was "no option that's off the table for the sake of freedom."

Agents interviewed Struck who stated that he and the Defendant climbed up the U.S. Capitol wall and onto the patio on the U.S. Capitol's west front. Struck further stated that he and the Defendant then proceeded to the outside deck of the U.S. Capitol via a temporary staircase.

Agents obtained video footage of the Defendant standing on the west front of the U.S. Capitol steps, within the restricted area. In the video, the Defendant stated, "It is a great day for America! The people are showing that they've had enough. People are ready for fair and legal elections, or this is what you are going to get, you're going to get more of it."

On January 14, 2021, during an Otero County, New Mexico council meeting, the Defendant spoke for approximately seventeen minutes about his actions on January 6, 2021. During these comments, the Defendant told the council that he noticed the fencing that was erected to delineate the area between permissible First-Amendment activity and the prohibited areas on

the west side of the U.S. Capitol. Specifically, the Defendant stated that when the crowd got down to the inaugural side of the building, "there was some fencing up and they were saying that you could not go any further because this was being reserved for Joe Biden and his inauguration. Well, you tell a million Trump supporters that . . . , pretty soon that crowd just pushed through. I wasn't anywhere in the front of it, I was in the back."

The Defendant also told members of the council about his intent to lead the group in a prayer, and noted that he finally was able to do so when he got a bullhorn "outside the Capitol, but up where the President is inaugurated at."

Finally, the Defendant also spoke at the council meeting about his plans to return to Washington, D.C. to protest President-Elect Biden's inauguration on January 20, 2021. The Defendant stated that he intended to bring his firearms with him when he traveled to Washington, D.C. Specifically, he stated: "I am going to leave either tonight or tomorrow. I've got a .357 Henry big boy rifle . . . that I got in the trunk of my car, and I've got a .357 single action revolver . . . that I will have underneath the front seat on my right side. And I will embrace my Second Amendment, I will keep my right to bear arms, my vehicle is an extension of my home in regard to the constitution law, and I have a right to have those firearms in my car."

On January 17, 2021, three days before Inauguration Day, the Defendant was stopped and arrested in close proximity to the Capitol building. During his interview with agents, the Defendant stated that he brought firearms with him on his trip to Washington, D.C., but he left those firearms with a friend outside the District of Columbia before entering the District.

    **C.**    **Order for Detention**

After a detention hearing on February 1, 2021, Magistrate Judge Faruqui granted the government's motion to detain the Defendant pending a preliminary hearing. On February 3, 2021, the Defendant appealed this decision.

**III.**    **ARGUMENT**

On the Defendant's motion to review a detention order, this Court considers *de novo* the Magistrate Judge's granting of pre-trial detention.  In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed:   whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182,  3195-3196.

The Court should not disturb Magistrate Judge Faruqui's decision to detain the Defendant. With respect to the likelihood of the Defendant to return for his next court date, the Court correctly considered the Defendant's beliefs about the government's authority. These beliefs bear directly on the Defendant's willingness to abide by the conditions of his release and his willingness to return to court. In addition to participating in a riot to stop the certification of the Electoral College vote, the Defendant made several statements during and after the riot

indicating that he does not respect the authority of the government or the laws of the United States of America. During the rally, the Defendant stated, "We're not going anywhere. We're not taking no for an answer. We're not going to get our election stolen from us from China." After the rally, the Defendant stated during a recorded county council meeting that, on the day of the riot, in spite of seeing fencing and signs at the Capitol stating that a portion of the grounds was a restricted area, "Well, you tell a million Trump supporters that . . . , pretty soon that crowd just pushed through. I wasn't anywhere in the front of it, I was in the back." Perhaps most disturbingly, the Defendant further stated at that meeting that he intended to return to the District of Columbia with firearms on Inauguration Day. In a separate video, the Defendant stated that if a second rally was held at the Capitol, "there's gonna be blood running out of that building."

Not only do these statements demonstrate the Defendant's utter lack of respect for the rule of law, but also his lack of respect for the authority of the government. As the Defendant states in his motion, he "is not a mafia member. He is an elected official on the governing body of Otero County, New Mexico, and a former pastor." As such, the Defendant has a responsibility to conduct himself in a manner that instills trust in the rule of law and in government. Instead, during and after the riot, the Defendant has acted at every turn to undermine the legitimacy of the government. The Court correctly took the Defendant's conduct and his statements into consideration when determining whether he would abide by the Court's conditions of release and return to court.

The Defendant argues in his motion that, "in multiple conversations with the FBI, Mr. Griffin has abjured violence, lawbreaking, and disrespect to law enforcement." This argument is entirely undermined by the Defendant's conduct throughout the government's investigation into this matter. Far from abjuring violence and disrespect to law enforcement, the Defendant

has advocated using violence to overthrow the democratically elected government of the United States. He told FBI agents that he hopes a change in leadership can be accomplished without a single shot being fired but that "no option is off the table for the sake of freedom." He has also in the past stated that the "only good democrat is a dead democrat." Although, as the Defendant points out in his motion, the Defendant caveated his statement by saying he did not mean that literally, he still made a statement advocating violence against elected officials. Therefore, any notion that the Defendant is against violence is diametrically opposed to the behavior he has exhibited since January 6, 2021.

The Defendant also argues that others who participated in the riot have already been released and that, "if the magistrate judge's logic were correct, every accused person who has quarreled with the 2020 presidential election outcome is subject to automatic pretrial detention, no matter their individual characteristics." As a preliminary matter, the government has been very judicious in making requests for detention in cases relating to the Capitol riot. Magistrate Judge Faruqui's decision to detain the defendant was not based on the Defendant merely "quarreling" with the outcome of the presidential election. Instead, the Court's decision was based on the statements the Defendant made at the riot and following the riot. These statements demonstrated that the Defendant did not just "quarrel" with the outcome of the election, but, unlike other defendants who have been released in these cases, was willing to use violence to prevent President Biden's inauguration. As Magistrate Judge Faruqui noted in his findings, statements like these shed light on Defendant's state of mind – namely, that he does not respect the authority of the United States government as it is currently constituted, and is therefore unlikely to abide by the Court's conditions of release.

Finally, the Defendant argues that the statements he made following the riot are protected

political speech and should not be used as a basis for detention. The Defendant cites *Williamson v. United States*, 184 F.2d 280 (2d Cir. 1950), in which the Second Circuit noted that the speech at issue in that case "d[id] not contain any advocacy of violent overthrow of the Government and can only be said to be inciting as all opposition speaking or writing that undermines confidence and increases discontent may be said to be incitement." In stark contrast to *Williamson*, the Defendant in the instant matter advocated violence to prevent the peaceful transfer of power. *Williamson* is therefore clearly distinguishable.

Based on the record before the Court and the facts and circumstances of the Defendant's conduct, the government respectfully requests that the Court deny the Defendant's Motion to Revoke Pretrial Detention Order.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY


\_\_/s/_____
JANANI IYENGAR
Assistant United States Attorneys
NY State Bar No. 5225990
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-252-7760
Janani.Iyengar@usdoj.gov