UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       v.<br><br>COUY GRIFFIN,<br><br>       Defendant. | )<br>)<br>)<br>)<br>) Case No. 1:21-cr-92<br>)<br>) **District Judge Trevor N. McFadden**<br>)<br>)<br>) |

**DEFENDANT GRIFFIN'S OPPOSITION TO THE GOVERNMENT'S MOTION TO CONTINUE AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

Defendant Couy Griffin, through his counsel, opposes the government's Motion to Continue and to Exclude Time Under the Speedy Trial Act. ECF No. 17.

The government says Griffin's case is "so unusual [and] so complex" that his right to a speedy trial, "one of the most basic rights preserved by our Constitution," *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967), is overbalanced. The government's motion offers no factual support for that contention pertaining to Griffin specifically, as opposed to the hundreds of Capitol incident cases the government chose to file all at once. Indeed, the government's motion is virtually identical to one it has filed in many other Capitol cases, regardless of the facts in each case.

The self-imposed burden of prosecuting hundreds of cases simultaneously creates administrative challenges. However, the Speedy Trial Act is not concerned with all the U.S. Attorney's Office's cases lumped together, but with *this* case. And Griffin's is neither unusual nor complex. To the contrary, it is simple in both an absolute sense and relative to other Capitol cases. The issues are easy to grasp for any lay person. Images and video, already produced by the government, depict Griffin standing on the steps outside the west front of the Capitol

1

Building on January 6.  Griffin picked up a bullhorn and led a prayer.  He did not enter the building.  He did not engage in violence, theft, or destruction of property.  He did not encourage those things.  The question for trial is whether that conduct amounts to a violation of 18 U.S.C. § 1752(a)(1) and (a)(2), the two misdemeanor charges in the Information.  ECF No. 14.

Those issues might be simpler than those presented in any other federal criminal case in this Court.  Given that simplicity, none of the Speedy Trial Act delay factors warrants a continuance and tolling of its deadlines, even as a cloud indefinitely remains over Griffin's reputation as a public official.

## I. Factual and procedural background

Couy Griffin, 47, is a county commissioner for Otero County, New Mexico.[1]  On January 6, 2021, he traveled to Washington, D.C., to participate in the events near the Capitol.  On the same day, a joint session of Congress convened at the Capitol to certify the vote count of the Electoral College for the 2020 presidential election.  The session began at approximately 1:00 p.m.  Vice President Mike Pence was present and presiding.  According to the statement of facts attached to the criminal complaint, "temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol police were present, attempting to keep the crowd away from the Capitol building and the proceedings underway inside." Compl.,

---

[1] In this misdemeanor trespassing case, the government's motion for pretrial detention dwelled on Griffin's political views and activities, describing them as "inflammatory, racist, and at least borderline threatening advocacy." Gov't Detention Mot., p. 2.  Irrelevant though this information was to the detention factors in § 3142, candor requires admitting that it went far in explaining the decision to charge Griffin and to detain him pretrial.  Many of the protestors on the Capitol steps on January 6 were not federally charged—while many who entered the Capitol Building and committed offenses inside, unlike Mr. Griffin, have also not been charged.  And to the extent they have been charged, the government cites them as a reason Griffin's trial should be continuously delayed.

p. 2.  Shortly after 2 p.m., the crowd "forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol police." *Id.*

After receiving a tip that Griffin was present at the Capitol that day, Special Agents interviewed him on January 11.  According to their notes, Griffin told the agents that he "walked down to the Capitol building, where there was already a large crowd around the barricades." FD-302, 1/11/21.  At that point, Mr. Griffin,

> got caught up in the crowd, which eventually pushed through the barricades. [He] saw many people scaling walls and scaffolding to get up to the Capitol's front patio.  In his area, there were people flying flags, but no one violent. . .Neither [he] nor [his acquaintance] entered the capitol building.  At one point, a man with a bullhorn gave it to [Griffin], who led a prayer on the steps. . .[Griffin] was never asked to leave the area by the police, and exited peacefully. He even encountered a former congressman on the way out and had a nice chat with him.

*Id.*

The Complaint attached a photograph of Griffin standing on the west front of the Capitol building steps.  Compl., p. 4.  The Complaint described this position as "well within the restricted area." *Id.*  The Complaint did not allege that Griffin entered the Capitol Building.  The complaint did not define "restricted area." It alleged as follows:

> On January 6, 2021, permanent and temporary security barriers were in place to separate areas where lawful first amendment activity could be conducted from areas restricted both to prevent any adverse impact on the legislative process and to safeguard and prevent and [sic] property damage directed at the U.S. Capitol and West Front Inaugural Platform.

Compl., p. 2.

The Complaint cited two postings indicating to the public that the area Griffin entered was "restricted": bike racks and green snow fencing; and signage stating, "Area Closed By order of the United States Capitol Police Board." Compl., p. 2.

Griffin was charged under 18 U.S.C. § 1752(a)(1).  That section makes it a federal misdemeanor to "knowingly enter[] or remain[] in any restricted building or grounds without

3

lawful authority to do so." 18 U.S.C. § 1752(a)(1).  Section 1752 is not a general, all-purpose trespass statute for federal property.  Instead, "restricted buildings or grounds" is defined statutorily and focuses on Secret Service protectees.  In Section 1752, that phrase means "any posted, cordoned off, or otherwise restricted area—

    (A) of the White House or its grounds, or the Vice President's official residence or its grounds;

    (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

    (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. § 1752(c)(1).

To establish a Section 1752(a)(1) offense, the government must show that Griffin knew that the area in which he "enter[ed] or remain[ed]" was one of the areas described in Section 1752(c)(1).  *United States v. Bursey*, 416 F.3d 301, 309 (4th Cir. 2005).  The Complaint and Information do not allege that either of subsections (A) or (C) in Section 1752(c)(1) is satisfied here.[2]  They do not allege that Griffin knew that the area in which he "enter[ed] or remain[ed]" was "of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).  And, as alleged, the area Griffin "enter[ed] or remain[ed]" was not the Capitol Building, where the Vice President then presided, but instead the west front of the Capitol steps.   The Complaint and Information do not allege that the Vice President was or would be "temporarily visiting" on the west front of the Capitol steps, or that Griffin "knew" that.  § 1752(c)(1)(B).

---

[2] The joint session of Congress on January 6 was not designated by the Department of Homeland Security as a "special event of national significance." National Special Security Events, CRS, Jan. 11, 2021, available at: https://fas.org/sgp/crs/homesec/R43522.pdf.

4

Griffin was detained on January 17. He was not given a shower, and held in solitary confinement, for over a week. The toilet in his cell was broken, and when he requested a shower, was handed baby wipes. Recognizing him from media stories calling him racist and/or some kind of domestic terrorist, guards in the jail snapped pictures of him. A magistrate judge initially ordered Griffin detained pretrial. That implied Griffin would likely spend more time in pretrial confinement than the statutory maximum sentence on his misdemeanor charge. That decision was reversed by Chief Judge Howell on February 5.

**II.     Argument**

    **A.     Sixth Amendment and Speedy Trial Act Rights**

A defendant's right to a speedy trial is guaranteed by the Sixth Amendment of the Constitution of the United States. U.S. Const. amend VI. It has been called "one of the most basic rights preserved by our Constitution." *Klopfer*, 386 U.S. at 226. "That right has its roots at the very foundation of our English law heritage." *Id.* at 224.

That is why, in the Speedy Trial Act (STA), in any case in which a plea of not guilty is entered, "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

Delays in that timeline are permitted only for the specific reasons set forth in the STA. Here, the government relies solely on the reason set forth in § 3161(h)(7)(A). Gov't Mot., p. 4. That provision states the Court shall exclude in computing the time within which the trial of any offense must commence:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. *No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.*

18 U.S.C. § 3161(h)(7)(A) (emphasis added).

Section 3161(h)(7)(B) sets out four factors the Court shall consider in deciding whether to exclude time under § 3161(h)(7)(A), of which the government relies on the following three:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
. . .

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).

### B.     The government's reasons for delay are not valid under § 3161(h)(7)

The government says an ends-of-justice continuance of 60 days (with no guarantee of no more delays) is justified because "the Capitol Attack is likely the most complex investigation ever prosecuted by the Department of Justice." Gov't Mot., p. 6. The problem with this argument is at least twofold. First, characterizing every prosecution relating to the January 6 events as one cohesive "complex investigation" does not make it so. While some of the Capitol

6

cases involving multi-defendant conspiracies could conceivably be grouped as unified "complex investigations"—though counsel would dispute that, given the evidence thus far presented in those cases—those matters have nothing to do with Griffin.  The government does not articulate how some factual dimension of its other Capitol investigations could conceivably affect the prosecution of Griffin.  It just describes the logistical and manpower burdens for its office generally.  The Court will notice there is no claim that *this case* involves an insuperable amount of discovery, "sensitive materials," and groundbreaking complexity.  Gov't Mot., p. 6.

It actually involves pictures of Griffin with a bullhorn on the Capitol steps.

Second, the government's argument runs counter to the statutory text.  The relevant ends-of-justice question is "Whether *the case* is so unusual or complex…." 18 U.S.C. § 3161(h)(7)(B)(ii) (emphasis added).  Even if there were some factual basis for lumping every January 6 prosecution together—and there isn't—the government's argument would fail because it does not concern whether "the case" is "so unusual or complex." Consider, for example, the government's six-case string cite in support of its argument for an ends-of-justice delay.  Gov't Mot., pp. 6-7.  Not a single case in that cite involves the argument that burdens created by cases *other than the defendant's or co-defendant's* provide an ends-of-justice delay *in the defendant's case*.  The government does not cite precedent for that proposition and there is none.

That might be because the argument is explicitly rejected by the statute.  There shall be "no continuance under [18 U.S.C. § 3161(h)(7)(A). . . because of general congestion of the court's calendar . . ." 18 U.S.C. § 3161(h)(7)(C).  The government's continuance position is a barred "general congestion" argument.

Nor does the government explain how a denial of its motion "would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." 18 U.S.C. §

7

3161(h)(7)(B)(i).  In what sense would it be impossible for this trespass case to proceed? How would miscarriage of justice result? As the government was quick to point out in the arraignment hearing, it has produced a number of videos to the defense, showing Griffin during the January 6 events on the Capitol steps.  These videos will likely constitute the bulk of the government's trial evidence.  The government does not explain what more it needs to bring its case.

Nor does the government explain how a denial of its motion would "deny . . . the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv).  The government alludes to "voluminous materials accumulated across hundreds of investigations," Gov't Mot., p. 6, but it does not explain how the "voluminous materials" are necessary for "effective preparation" in *this case involving Griffin*.  What are the voluminous materials in this case? Because the government's continuance motion has been filed in so many cases without any adjustment for the facts of the individual cases, it refers to "the number of co-defendants" in this case.  Gov't Mot., p. 8.  *What co-defendants?*

One reason that is *not* valid for an ends-of-justice continuance, and is not cited as a reason for delay in § 3161(h)(7), is to allow the government to strategically manage which trials and cases it wishes to put forward to the public first, unilaterally organizing bellwethers without regard for the speedy trial rights of individual defendants.

The Court must also consider Griffin's interests in this decision.  Since the day of his arrest, a cloud has been placed over his reputation as a public servant.  His work as a public official in New Mexico has been seriously affected by the charge hovering over him.  He has received death threats since, and because of, the charges against him.  These considerations loom even larger when the government has not presented any cognizable ends-of-justice continuance

8

arguments.  *See*, *e.g.*, *Strunk v. United States*, 412 U.S. 434, 439 (1973) ("The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial . . .").

Another factor to consider is "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence.  *Doggett v. United States*, 505 U.S. 647, 654 (1992) (citation omitted).  And "of [all the] forms of prejudice, the most serious is [that one], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

The backdrop to the Court's STA decision, of course, is that this Court has recently re-opened the trial calendar.  Standing Order No. 21-10.  Accordingly, the government's reliance on the Covid-19 pandemic for an ends-of-justice continuance, Gov't Mot., p. 8, is misplaced.  The government does not articulate how Covid-19 means the case should be frozen for 60 days.

In conclusion, the government has not offered any valid reason for a continuance and delay of STA deadlines under 18 U.S.C. § 3161(h)(7).

                                           Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Appointed by the Court*

Nicholas D. Smith, VA Bar No. 79745
David B. Smith, PLLC
7 East 20th Street, Suite 4R
New York, NY 10003

(917) 902-3869<br>
nds@davidbsmithpllc.com

## Certificate of Service

I hereby certify that on the 18th day of March, 2021, I filed the foregoing opposition with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

JANANI IYENGAR
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-7846

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Appointed by the Court*