# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| v. | ) Case No. 1:21-cr-92 |
|  | ) |
|  | ) **Judge Trevor N. McFadden** |
| COUY GRIFFIN, | ) |
|  | ) |
| Defendant. | ) |

## DEFENDANT GRIFFIN'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED INFORMATION

David B. Smith (D.C. Bar No. 403068)
David B Smith PLLC
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Couy Griffin*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................ 1

II. ARGUMENT ............................................................................................................. 2

    A. The Amended Information fails to state an offense because only the USSS restricts areas under § 1752 ........................................................................ 2

        1. The plain meaning of § 1752 .......................................................... 2

        2. The legislative history of § 1752 .................................................... 6

    B. If the government's interpretation of § 1752 is applied, it is unconstitutionally vague as to Griffin ............................................................. 9

    C. The rule of lenity dictates that any ambiguities in § 1752 be resolved in Griffin's favor ............................................................................................ 13

    D. The novel construction principle requires rejection of the government's interpretation, which would operate as an *ex post facto* law ......................... 13

III. CONCLUSION ........................................................................................................ 15

I.      **Preliminary statement**

Though it responds to a motion to dismiss, the first half of the government's opposition makes no legal argument. Resort to nonverbal advocacy through pictures is a tell. The Court asked the government to produce evidence that the Secret Service set the "restricted area" Griffin allegedly entered. It came back with none. The government has cited no evidence because the Secret Service did not "restrict" the "area" Griffin entered, as those terms are used in § 1752. Therefore, the Amended Information does not charge a crime. Nor would the Secret Service agree to endorse the government's countertextual, just-this-once position that any government entity may federally criminalize a person's movements. The Secret Service would not agree as it makes no sense to empower other agencies to unilaterally demarcate areas it guards. The government's position is contradicted by the clear legislative history, unprecedented in the case law, and would lead to absurd results.

The legal argument presented after the pictures is a post-hoc justification for a decision to immediately charge Griffin with any statute at hand. Local D.C. trespass law would not do—it had to be federal. Section 1752 referenced a "restricted area," so Griffin was selectively charged with entering it because the government loathed him and his politics. Hundreds of people standing right next to him were never charged with any offense. The government apparently had not read to the bottom of § 1752 where "restricted buildings or grounds" is defined, or did not care for what it saw there, as shown by the absence in the charging instruments of any reference to the Secret Service and by the allegations that January 6 police barricades were there to safeguard congressional property, not Secret Service protectees.

Even if the government's unprecedented interpretation of § 1752 were somehow correct despite the text, case law, and legislative history, Griffin's Due Process Clause and rule of lenity arguments still require dismissal of the Amended Information. The government sees fair notice in § 1752 that Griffin could be federally charged by crossing a barricade set by local police because § 1752 includes the phrase "cordoned off." But, of course, the act of entering any "cordoned off" area is not *malum in se* and does not usually lead to federal liability even where it results in a local regulatory infraction. By not responding to Griffin's novel construction principle argument under the Due Process Clause, the government has forfeited the issue.

## II. Argument

### A. The Amended Information fails to state an offense because only the USSS restricts areas under § 1752

#### 1. The plain meaning of § 1752

After showing pictures of Griffin at the Capitol, the government quotes subsections (a) and (c) of § 1752 and then flatly states that, "in short," any "posted, cordoned off, or otherwise restricted area" encompassing a Secret Service protectee is a "restricted building or grounds" under § 1752, even absent Secret Service involvement. Gov't Opp., p. 9. To interpret § 1752 as requiring that the "restricted building or grounds" be restricted by the law enforcement agency that the statute explicitly charges with guarding those areas would be "to import an extra-textual requirement," the government says. *Id.* at 11. The government admonishes that the Court must go no further after this "straightforward analysis" is complete. *Id.* at 10.

That reading is facile. Here are a few simple phrases found inside, not outside, the text. If an area is to be "restricted," § 1752(c)(1), some person or government entity must do the restricting. Areas do not restrict themselves. The government implicitly concedes that much. The question then becomes, does the text indicate what person or entity does the restricting?

2

Notice that although § 1752 does not state that a government entity, such as a law enforcement agency, must do the restricting, the government also implicitly concedes that the restricting must be performed by such an entity, not merely by any person.  After all, if a § 1752 restricted area could be set by any person, it would be illegal to enter an area "cordoned off" around the White House by a homeless person using tinfoil traffic cones.  § 1752(c)(1)(A).  The government implicitly concedes the point, because, although it is not explicitly stated, that plain meaning is derived without "import[ing] an extra-textual requirement." Gov't Opp., p. 11.  The text itself tells us Congress intended that *some* government agency must do the restricting since the passive phrase "any posted, cordoned off, or otherwise restricted area" is immediately followed by text that, by specifying the situations when areas will be restricted, leads to the necessary inference that the statute unambiguously requires a government entity, not merely any person, to do the restricting.  § 1752(c)(1)(A)-(C).

Yet when it comes to the next question of *which* government entity does the restricting, the government argues that the exact same plain meaning analysis it applies to the entity/person distinction now reaches *outside* the statute's text.  Gov't Opp., p. 11.  Now, for some reason, the government admonishes the Court to stop looking to the rest of § 1752(c) in determining which is the more natural reading: that *any* government entity may set restricted areas or that the very same situations set forth in § 1752(c)(1) that led the government to conclude that a government entity, and not any person, must do the restricting also plainly identify a particular agency that does the restricting.

It is clear why the government attempts to kick away its interpretation ladder after climbing it.  The government does not deny that each of the three definitions of "restricted buildings or grounds" concerns an area exclusively *guarded* by the Secret Service.  In subpart

3

(A) that is the residence of two Secret Service protectees: the president and vice president. In subpart (B) it is an area being visited by the president or "other person protected by the Secret Service." And in subpart (C) it is a building or grounds restricted in conjunction with a special event of national significance. § 1752(c)(1). Protecting these people, places and events is, by statute, the duty of the Secret Service. 18 U.S.C. § 3056(a), (e). For the very same reasons the text of § 1752(c) plainly indicates, despite not explicitly stating so, that a government entity restricts areas and not any person, it also plainly indicates that that entity is the Secret Service—*the only agency referenced in the text.*

Griffin showed that the government's interpretation of § 1752 suffers from obvious absurdities. Mot. to Dismiss, p. 14. If the government were correct that any government entity could restrict areas under § 1752, the U.S. Postal Inspection Service could unilaterally extend the restricted area of the White House from Foggy Bottom to the E. Barrett Prettyman courthouse. Everyone inside the area would be criminally liable absent lawful authority to remain where they are.[1] The government's response to this obvious flaw makes no sense. It says its interpretation could not lead to that absurd outcome because "the statute only criminalizes entry into a restricted area 'of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting.'" Gov't Opp., p. 12. "The statute does not criminalize an individual who enters an area in a building or grounds separate from where a Secret Service protectee is present." *Id.*

---

[1] It is no response to this possibility to point out that even under Griffin's reading of § 1752 the Secret Service could set such an unreasonable restricted area. First, unlike in the government's interpretation, under a regime where an agency clearly identified in the statute is responsible for restricting areas the public is on notice of the appropriate office to contact for "lawful authority" to enter the area. § 1752(a)(1). Second, by identifying a specific restricting agency in § 1752, Congress may be held accountable democratically for that agency's unreasonable restrictions.

4

Again, the government simply fails to read the statute on which it relies. Subpart (A) of § 1752(c)(1) does not require the presence of a Secret Service protectee. There, the "restricted buildings or grounds" is merely "any posted, cordoned off, or otherwise restricted area . . . (A) of the White House or its grounds, or the Vice President's official residence or its grounds." § 1752(c)(1)(A). Accordingly, if the government is correct that any government entity may restrict areas under § 1752, the U.S. Postal Inspection Service *may* unilaterally restrict the § 1752 area of the White House from Foggy Bottom to the courthouse. Or, to take another absurd example, even if the Secret Service determines that the restricted area protecting a Secret Service protectee temporarily visiting a place is appropriately limited to one block, § 1752(c)(1)(B), a local police unit may unilaterally determine that it should extend 20 blocks. Any person exercising his First Amendment rights in blocks two to twenty may then be federally prosecuted—by the same government that deemed the restricted area limited to one block. The government does nothing to defang these absurd results of its interpretation—because it does not even read the statute to counter arguments made in support of Griffin's dismissal motion.

As to precedent, the Court will notice the government fails to cite a single case where some entity other than the Secret Service set a restricted area under § 1752. Indeed, the government does not offer any real-world example of an event where some agency other than the Secret Service set a "restricted area." That is because, before January 6, the government had never prosecuted a person on the theory it uses to charge Griffin. The government is using this any-agency-may-restrict-areas theory for January 6 defendants alone.

Nor does its analysis of precedent that rejects its interpretation fare any better. The government represents that, in *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005), "the court did not address the issue of which law enforcement agencies may designate a restricted area. . ."

Gov't Opp., p. 14.  Strictly speaking, that is not true.  As Griffin's motion explained, the defendant in *Bursey* argued that the trial evidence was insufficient to convict him under § 1752(a)(1) as the government had not proven he "understood the restrict[ed area] to have been created by the Secret Service (as opposed to state or local law enforcement)."  *Bursey*, 416 F.3d at 308.  While the Fourth Circuit held that the *mens rea* evidence was sufficient to convict him—Bursey testified he knew that the Secret Service had preempted local law enforcement—a necessary premise for engaging in that analysis in the first place was that it is the Secret Service, and not other government agencies, that restricts areas under § 1752.  As the Fourth Circuit put it, "[T]here was ample evidence that Bursey understood the area to have been restricted by the Secret Service, *and thus a federally restricted zone*." *Id.* at 309 (emphasis added).  Neither the government nor the court of appeals in *Bursey* even contemplated the possibility of the interpretation offered by the government for the first time here.

*Bursey* appears to be the only circuit-level decision interpreting § 1752—and it runs directly contrary to the government's interpretation.

2. The legislative history of § 1752

Turning to the legislative history, the government has no response to an overwhelming case that the only government agency involved in setting restricted areas under § 1752 is the Secret Service.  Gov't Opp., p. 11.  It cites no legislative history supporting its interpretation.  Instead, the government cites to a law review article published in the Journal of Gender, Race & Justice, entitled "Protecting the President from Protest: Using the Secret Service's Zone of Protection to Prosecute Protestors." Gov't Opp., p. 11 (citing 9 J. Gender Race & Just. 665, 668-69 (2006)).  That is a curious choice.  The student author concludes early on that § 1752 "gives the Secret Service the authority to create restricted access zones preceding presidential visits."

6

*Id.* at 667.[2]  The law review article, relied on by the government, went on to provide numerous instances in § 1752's legislative history that support Griffin's interpretation of that statute.  This passage of the article is worth reproducing in full:

> [In 1969] Senators [Roman Lee] Hruska and [James] Eastland designed [S. 2896, later codified at § 1752] to provide a uniform minimum of federal protection for presidential security when the President is on temporary visits. Prior to the passage of Senate Bill S. 2896, local law enforcement agencies provided most security at presidential visits.  The Secret Service, however, was charged with the responsibility of maintaining a safe environment for the President even during visits to localities.  Therefore, *the Service needed to be able to restrict the ingress and egress of people near the President in a standardized manner.*

9 J. Gender Race & Just. 665, 670 (citing S. Rep. No. 91-1252 (1970)) (emphasis added).

The author was right to look to the Senate Judiciary Committee report accompanying S. 2896.  That piece of legislative history made clear that, in 1970, "[a]lthough the Secret Service [was] charged with protecting the person of the President . . . there [was], at the present time, no Federal statute which specifically authorize[d] *them to restrict entry to areas* where the President maintains temporary residences or offices." S. Rep. No. 91-1252, at 7 (emphasis added). Similarly, during floor debate on the bill, senators explained that the key purpose of the legislation that would become § 1752 was to vest the Secret Service in particular with the authority to set restricted areas, cutting through the patchwork of existing State laws and local

---

[2] The author goes on to argue that the government's use of § 1752 in its prosecution of Bursey was unconstitutional "because, although the text of the statute is content neutral and thus could be applied as a valid time, manner, and place restriction in a public forum, in Bursey's case the statute was (1) arbitrarily enforced, [and] (2) applied in a viewpoint-discriminatory manner. . ." 9 J. Gender Race & Just. 665, 668-69.  The article also notes important First Amendment consequences that flow from the obvious reality that it is the Secret Service, and no other agency, that sets restricted areas under § 1752: "Although the Secret Service itself does not designate free-speech zones, cities and states must decide where to place the zones *according to where the Secret Service draws the boundaries of its restricted area.*" *Id.* at 673 (emphasis added).

ordinances and *freeing the Secret Service from reliance on other government agencies*.

Explaining the need for S. 2896, Senator McClellan stated:

> Protecting the President . . . is a formidable task for the Secret Service, which is charged with safeguarding the personal life of the President. As difficult as this task is, however, it is rendered even more difficult because the Secret Service's present powers are somewhat limited. Title 18, section 3056 of the United States Code authorizes the Secret Service to protect the life of the President, but does little more. *Consequently, the Service must rely upon a patchwork of State laws and local ordinances and local officers to clear areas for security perimeters, to provide for free ingress and egress when the President is visiting, and to protect the President's private homes from trespassers*.

116 Cong. Rec. 35,651 (1970) (statement of Sen. McClellan) (emphasis added).

Similarly, Senator Hruska explained that S. 2896 was needed to empower the Secret Service to set restricted areas:

> It would be unconscionable not to recognize the obvious fact that the President's vulnerability is maximized when he is traveling or residing temporarily in another section of the country. It would be unconscionable not to recognize the obvious fact that *the Secret Service does not presently possess adequate Federal authority during these most vulnerable occasions*. This body cannot ignore the obvious responsibility and duty it has at this moment to *create the needed* protection and *authority*.

116 Cong. Rec. 35,653 (statement of Sen. Hruska) (emphasis added).

The government cites nothing in the legislative history supporting its argument that any government entity may set restricted areas under § 1752. That is because the entire thrust of that history opposes its interpretation. Section 1752 was enacted precisely to empower a specific federal agency, the Secret Service, to do what no federal agency then had in its power: restrict areas under federal law to protect the president and vice president when visiting places outside their residences.[3]

---

[3] The government argues in passing that "Congress's decision in 2006 to eliminate reference[s] to regulations" in § 1752 "indicates that the statute *no longer* depends on whether the USSS has defined an area as 'restricted.'" Gov't Opp., pp. 11-12 (emphasis added). Griffin appreciates the government's concession that the statute was originally designed to mean that only the USSS may restrict areas, but the government's larger point is wrong. As Griffin explained in his

8

### B. If the government's interpretation of § 1752 is applied, it is unconstitutionally vague as to Griffin

If the Court concludes that the government's interpretation of § 1752(c) is somehow correct notwithstanding the text, legislative history, absence of supporting precedent, and everyday practice of the Secret Service, there can be little doubt that the construction fails to give "ordinary people" fair notice of the newly prohibited conduct and invites, and has invited, arbitrary and discriminatory enforcement. The government's counterargument consists of a single paragraph which fails to accurately describe the legal issues involved. Gov't Opp., p. 14.

The government argues that its interpretation of § 1752(c) suffers from no vagueness "[b]ecause the area on the Capitol grounds was cordoned off by metal barricades as well as a row of USCP officers . . . Therefore, [Griffin] had fair notice that his entry into the west front of the Capitol was unlawful." Gov't Opp., p. 15. This analysis is flawed in several ways. First, the void-for-vagueness issue is whether *the criminal statute* provides fair notice of the conduct prohibited by that particular law, not whether the facts in a given case "notified" a defendant of general wrongdoing.

Second, even if the government had made an argument about constitutionally fair notice in the statute, it would fail. The government notes that § 1752(c) defines "restricted building or grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily

---

motion, (1) in 2006, the Secret Service Authorization and Technical Modification Act of 2005 eliminated § 1752's references to Department of Treasury regulations because in March 2003 USSS was transferred from Treasury to the Department of Homeland Security (DHS), rendering antiquated the Treasury regulation references from the 1970 version of the statute; and (2) when DHS later repealed the old Treasury regulations, which made clear that the USSS sets restricted areas, it explained that the statute itself incorporated the same understanding. Restricted Building or Grounds, 84 Fed. Reg. 18,939- 18,940 (Apr. 30, 2018) (repealing 31 C.F.R. Part 408).

9

visiting." Gov't Opp., p. 15 (citing § 1752(c)(1)(B)).  It also notes that the west front of the Capitol was "cordoned off" by police barricades on January 6. *Id.*  "Therefore, [Griffin] had fair notice that his entry into the west front of the Capitol was unlawful." *Id.*

The point the government is missing: if its interpretation of § 1752 is correct, a person may be held liable under *federal* criminal law for crossing a *local police barrier*, *even though the sole agency referenced in that statute has not restricted that area, and even where no federal law enforcement agency has done so.*  As shown above, the only law enforcement agency referenced in § 1752 is the Secret Service.  To the extent an "ordinary person" reads statutes, legislative history, case law, and law review articles, such a person would have every reason to believe that he violates § 1752 by entering an area restricted by the Secret Service, not local law enforcement. Therefore, there is no notice, much less fair notice, to the "ordinary person" that crossing a local police barricade creates federal liability under § 1752 absent the involvement of the Secret Service.

Although it is not put this way, the government's argument appears to be that Griffin received fair notice of a § 1752 offense since the act of crossing *any* law enforcement barricade is intrinsically evil, *i.e.*, *malum in se*.  However, acts that courts have traditionally identified as *mala in se*, as opposed to *mala prohibitum* (acts that are wrong because prohibited by the state), roughly track the Decalogue, i.e., murder, theft, rape, assault, with a more modern addition of drug dealing.  *United States v. Barker*, 514 F. 2d 208, 266 n. 70 (D.C. Cir. 1975).  An act *malum prohibitum*, by contrast, is wrongful "merely because it is prohibited by statute, although the act itself is not necessarily immoral." Black's Law Dictionary 1045 (9th ed. 2009).

Stepping over an already-overturned metal barricade is not a necessarily immoral act, like bank robbery.  For example, in *United States v. Bishop*, 261 F. Supp. 969 (N.D. Cal. 1966), three

10

defendants were charged under 18 U.S.C. § 1382 for entering the restricted area of the Concord Naval Weapons Station without the permission of the commanding officer. The court held:

> A mere entry upon a federal station is not *malum in se* and becomes a criminal petty offense under 18 U.S.C. § 1382 only because some statute or lawful regulation prohibits entry without permission.
>
> Trespass upon property was not even a crime at common law, even though committed willfully or maliciously or forcibly, unless accompanied by or tending to create a breach of the peace. (87 C.J.S. Trespass, § 140 (1954)).

*Bishop*, 261 F. Supp. at 971; *See also United States v. United States Steel Corp.*, 328 F. Supp. 354, 365 n. 1 (N.D. Ind. 1970) (holding that even common law criminal trespass per se is not *malum in se*).

Nor does the government even address the arbitrary enforcement that has been invited by its vague interpretation of § 1752. Pictures in the government's opposition show hundreds of people standing in the same "area" as Griffin on January 6. Gov't Opp., p. 5. The government alleges these pictures were taken by Griffin's "videographer, Matt Struck," who, it alleges, accompanied Griffin throughout the day. *Id.* at 3. Yet the government does not contend that a single protestor among them has been charged under § 1752 despite "entering" and "remaining in" precisely the same "restricted area" as Griffin. It does not explain why Struck has not been charged. The government says it "charged the Defendant because he violated the law, and for no other reason." Gov't Opp., p. 15 n. 1. We know that is plainly not true since hundreds of people who were in the exact same "restricted area" "violated the law," under the government's interpretation of § 1752, and have not been charged. We know that is not true because, before January 6, the government had never charged a person under § 1752 for entering an area restricted by some entity other than the Secret Service. We also know that is not true because the government has explicitly argued in Court that Griffin was arrested and detained pretrial on the basis of these considerations:

11

> Griffin is the founder and leader of a political committee called, "Cowboys for Trump," on whose behalf he has engaged in inflammatory, racist, and at least borderline threatening advocacy . . .
>
> [T]he defendant posted a video called "Cowboys and Indians" on his Facebook page in which the defendant participates in a traditional Apache blessing where he is seen laughing while an individual off-camera says, "You better go jump on (an expletive) Democrat now . . . You're protected now." As a result of this incident, the nearby Mescalero Apache Tribe banned the defendant from entering its tribal lands. . . .
>
> The defendant's group, "Cowboys for Trump," was fined for flouting financial reporting requirements and ignoring a binding arbitration agreement that found it was a political committee, subject to state regulation.
>
> "Cowboys for Trump" has plans to stage a protest at the New Mexico State Capitol on January 20, 2021. . . .
>
> "Cowboys for Trump" advocates for gun rights.

ECF No. 3, pp. 2-3.

Nor does the government contest Griffin's argument that void-for-vagueness scrutiny is heightened where, as here, the prohibited conduct encompasses the exercise of a person's constitutionally protected rights. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 500 (1982). Here, the government does not contest that those rights included Griffin's rights to freedom of speech, to peaceably assemble, and to petition the government for a redress of grievances. U.S. Const. amend I. The government's vague extension of § 1752 to areas not restricted by the Secret Service has resulted in the criminalization of the exercise of those rights. Indeed, the government has nowhere identified to which agency Griffin should have applied for "lawful authority" to "legally" exercise his First Amendment rights.

Because § 1752 does not provide any notice of the government's unprecedented interpretation of it here, and because that construction has already invited discriminatory law

enforcement, it is unconstitutionally vague as applied to Griffin. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018).[4]

    **C.**     **The rule of lenity dictates that ambiguities in § 1752 be resolved in Griffin's favor**

Although it (1) had never used § 1752 before January 6 to prosecute a person under the statutory interpretation it now offers, (2) has cited no precedent supporting its interpretation, which the scant case law contradicts, and (3) finds no support in the legislative history for its position, the government argues, in one sentence, that the rule of lenity does not apply here. Here is that sentence: "Section 1752 prohibits certain knowing conduct within restricted zone established to ensure the protection of certain individuals such as the Vice President and Vice President-elect. No guess work is required." Gov't Opp., p. 16.

The government is wrong. Even if the Court decides that, despite all the above, the government's this-time-only interpretation of § 1752 is right, that construction is plainly not "unambiguously" correct—in the absence of supporting case law and legislative history, and in the absence of common sense. *United States v. Granderson*, 511 U.S. 39, 54 (1994). For that reason alone, the Amended Information should be dismissed.

    **D.**     **The novel construction principle requires rejection of the government's interpretation, which would operate as an *ex post facto* law**

Even if the government's construction of § 1752 is unambiguously correct and not unconstitutionally vague, it is still "an unforeseen judicial enlargement of a criminal statute,

---

[4] Griffin's motion assumed that the government would attempt to argue that even if Griffin did not enter "any restricted building or grounds," he committed an offense under § 1752(a)(2) by being "within such proximity to" such an area. Mot. to Dismiss, pp. 21-21. The government appears not to understand the argument, which it has anyway forfeited. Gov't Opp., p. 15.

13

applied retroactively," which operates as an *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment.  *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964).

The government's response to this argument consists of this sentence: "As with the Defendant's other arguments, this claim is rooted in the faulty premise that the statute requires that the USSS designate the restricted area." Gov't Opp., p. 16.  Because Griffin's argument under *Bouie* starts from *precisely the opposite premise*, the government has failed to address the argument, which is therefore forfeited.  *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (party's failure to address a clearly briefed argument constitutes a forfeiture of the issue).

Griffin's *Bouie* argument does not start from the premise that the Secret Service must set any restricted area under § 1752, but instead assumes arguendo that the Court will apply the government's interpretation of the statute.  However, as the government's opposition shows, before January 6 it had never charged a person with violating § 1752 by entering an area "restricted" by some entity other than the Secret Service.  As its opposition shows, its interpretation has "not the slightest support in prior [§ 1752] decisions." 378 U.S. at 356.  Although § 1752 clearly prohibits entry into areas restricted by the Secret Service, there is "nothing in the statute to indicate that it also prohibited the different act" of entering into an area restricted by the U.S. Capitol Police.  *Id.*

Accordingly, the novel construction principle dictates against the government's interpretation, which would operate as an *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment.  Because the government has forfeited the argument, the Amended Information should be dismissed on that basis.  *Alvarez*, 828 F.3d at 295.

### III. Conclusion

For all the foregoing reasons, Griffin respectfully requests that the Court dismiss the Amended Information with prejudice.

Dated: June 1, 2021                     Respectfully submitted,

**DAVID B. SMITH, PLLC**

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 722-1096
nds@davidbsmithpllc.com

*Attorneys for Couy Griffin*

### Certificate of Service

I hereby certify that on the 1st day of June, 2021, I filed the foregoing reply with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

> JANANI IYENGAR
> Assistant United States Attorney
> 555 4th Street, N.W., Room 4408
> Washington, D.C. 20530
> (202) 252-7846

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith

15

                    David B. Smith, VA Bar No. 25930
                    David B. Smith, PLLC
                    108 North Alfred Street, 1st FL
                    Alexandria, Virginia 22314
                    (703) 548-8911 / Fax (703) 548-8935
                    dbs@davidbsmithpllc.com
                    *Appointed by the Court*