1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
2


3     UNITED STATES OF AMERICA,
                                        Criminal Action
4              Plaintiff,              No. 1:21-cr-92

5          vs.                         Washington, DC
                                       September 20, 2021
6     COUY GRIFFIN,
                                       2:02 p.m.
7              Defendant.
      _____/
8


9              TRANSCRIPT OF VIDEO STATUS CONFERENCE
            BEFORE THE HONORABLE TREVOR N. McFADDEN
10                UNITED STATES DISTRICT JUDGE


11
      APPEARANCES:
12

13    For the Government:    JANANI IYENGAR
                             EMILY MILLER
14                             U.S. Attorney's Office for the
                               District of Columbia
15                             555 4th Street, NW
                               Washington, DC 20530

16

17    For the Defendant:    NICHOLAS SMITH
                            DAVID SMITH
18                            David B. Smith, PLLC
                              108 N. Alfred Street, 1st Floor
19                            Alexandria, VA 22314


20


21


22

23    Court Reporter:       JEFF M. HOOK
                              Official Court Reporter
24                            U.S. District & Bankruptcy Courts
                              333 Constitution Avenue, NW
25                            Room 4700-C
                              Washington, DC 20001

**P R O C E E D I N G S**

1                  **DEPUTY CLERK:**  Your Honor, this is criminal case

2  21-92, United States of America v. Couy Griffin.  Counsel,

3  please introduce yourselves, starting with the Government.

4                  **MS. IYENGAR:**  Good afternoon, your Honor.  Janani

5  Iyengar for the United States.

6                  **THE COURT:**  Good afternoon, Ms. Iyengar.

7                  **MS. MILLER:**  Good afternoon, your Honor.  Emily

8  Miller for the United States.

9                  **THE COURT:**  Good afternoon, Ms. Miller.

10                  **MR. NICHOLAS SMITH:**  And you have Nicholas and

11  David Smith for Couy Griffin, Judge.  Good afternoon.

12                  **THE COURT:**  Good afternoon, Mr. Smith.  Good

13  afternoon, Mr. Smith.

14                  **THE DEFENDANT:**  Good afternoon, your Honor.  It's

15  Couy.

16                  **THE COURT:**  Good afternoon, Mr. Griffin.  We're

17  here for another status conference.  We've got a few things

18  to discuss today.  I have the Government's motion to

19  continue, the defense motion to compel Brady evidence and

20  the Government's motion for leave to late file.

21                  I guess on the motion to compel -- well,

22  Ms. Iyengar, why don't you tell me where things stand in

23  terms of the evidence that has been -- and discovery that's

24  been produced.

1        **MS. IYENGAR:**  Sure.  So I guess I'll just start

2   with what was requested in the motion to compel -- or the

3   meat of what was requested in the motion to compel, which

4   was the materials that we stated in our I guess last motion

5   to exclude time under the Speedy Trial Act regarding videos

6   of officers moving barricades and things of that nature.  So

7   on September 14th, I disclosed United States Capitol Police

8   records that included records of investigations into

9   wrongdoing by United States Capitol Police Officers.  And I

10  sent an e-mail to Mr. Smith indicating that we had disclosed

11  those materials.

12       So those materials, at least in part, were

13  responsive to the request that the defense had made

14  regarding videos of officers engaging in that type of

15  conduct.  That is certainly not an exhaustive group of

16  materials, because our office is obviously still continuing

17  to sift through those materials.  And my understanding is

18  there's also ongoing investigations as well.  But at least

19  in terms of what we have and what we've identified, those

20  materials have been disclosed to the defense.

21       We also filed a memo on September 16th which

22  outlines the current status of discovery.  As the memo

23  stated, we should be transferring 2,300 hours of body-worn

24  camera footage over to the defense by the end of the week.

25  And we're also disclosing 1,600 hours of United States

1    Capitol Police surveillance which should also hopefully be

2    done by the end of the week.  Also, since the last status

3    hearing, I just wanted to let the Court know that we -- I

4    have disclosed multiple video and audio recordings to

5    Mr. Smith, including a movie that the defendant made about

6    his participation in the Capitol breach.  The audio and

7    video recordings are mostly interviews that the defendant

8    has conducted regarding this case, his participation in the

9    Capitol breach as well as the plea negotiations between the

10    Government and the defense.

11         **THE COURT:**  So Ms. Iyengar, am I correct in

12    understanding that you're not aware of any information that

13    would be Brady as to this defendant that has not

14    currently -- that has not been turned over, is that correct?

15         **MS. IYENGAR:**  So me personally, yes, I'm not aware

16    of any material that could be considered to have any

17    exculpatory or impeachment value for the defendant.  I think

18    this was sort of made clear at the last status hearing.  But

19    I don't really personally have any visibility into the

20    discovery material that our discovery team has for the

21    overall riot investigation.  I think Ms. Miller can speak

22    more directly to whether anything exists that she's aware

23    of.

24         But in terms of what I am aware of, no, there

25    isn't anything that has any exculpatory or impeachment value

1    at this point with respect to this defendant.

2            THE COURT:  Okay.  Ms. Miller, can you add to

3    that?  And specifically, I think Mr. Smith flagged the

4    suggestion that there may be evidence of police officers

5    moving bike racks, fist bumping and what have you.

6            Has that been disclosed?

7            MS. MILLER:  Let me elaborate, your Honor, I think

8    I can clear this all up.  It may be in part due to poor

9    drafting by yours truly.  We filed the motion to continue

10    for Speedy Trial, and therein explained obviously that the

11    basis in large part was to turn over voluminous materials

12    that may contain information that a defendant might consider

13    to be material to his defense or exculpatory.  And we

14    explained that, for example, counsel in many cases had been

15    requesting any information that suggested essentially that

16    officers engaged in misconduct or were complicit with or

17    somehow authorized people to enter into the building or into

18    the restricted premises.

19            And so what I was trying to explain in the motion

20    is we -- in the effort to respond to that, we requested

21    first and foremost to provide in voluminous discovery all,

22    among other things, U.S. Capitol Police internal

23    investigations of misconduct that related to the riot.  This

24    is the first thing that we requested.  And in those, what

25    you will see are there are allegations exactly along the

1    lines of what I said:  Officers moved bike racks or

2    officers -- exactly what I quoted in the motion and what

3    Mr. Smith is quoting back to us.  That statement was based

4    on what I had read were the allegations in those reports.

5              So we did turn over the reports, which are pretty

6    lengthy.  There's about 850 pages that we turned over.  The

7    reports had exhibits.  The exhibits to the report would

8    often include -- depending on how the tip came in.

9    Sometimes the tip would come in as like a publicly sourced

10   tip.  So somebody sees something on Instagram, a video that

11   someone captured, and they send it into the U.S. Capitol

12   Police and they say, "You should look at this, see this

13   picture of this officer moving a barricade."  It's just

14   something on Instagram that frankly everyone may have

15   already seen by now just by following the press on this.

16             And then the investigator would take that clip,

17   try and see if they could figure out where the area was, and

18   then potentially pull related Capitol surveillance

19   television to see if they could see it from different

20   angles, identify the officer or see what happened better to

21   investigate the allegation.  So we requested all of those

22   exhibits as well obviously when we requested the reports

23   from the U.S. Capitol Police in the effort to also turn over

24   all of those exhibits.

25             Unfortunately the video exhibits they gave us from

1  the Capitol surveillance system, the way they gave them to

2  us didn't work.  This goes back to what I was telling the

3  Court earlier.  A lot of times items are provided in

4  proprietary players and we need to convert them.

5  Essentially we had to re-request that footage three times.

6  My understanding is we finally got it and were able to

7  convert it into a playable form on Friday last week, like

8  three days ago.

9          So we have been trying to get this; we're not

10  trying to suppress anything.  We agree that the defense is

11  entitled to this, and we understand why it's a priority item

12  for them.  We are doing our very best to get them these

13  exhibits that they want.  And I've already instructed my

14  team, you know, this has to be a priority; put it on the top

15  of the list; these need to go out as the exhibits to the

16  reports that we sent.  And that message has been delivered.

17  So in addition to all of the other footage that we've talked

18  about providing this week, I've asked the team to raise this

19  to the top of the list.

20          I do want to add some clarification to some of the

21  points that Ms. Iyengar made, because I just want to make

22  sure that we're -- the Court has the complete picture.

23  That's what's going on with the OPR reports.  In addition --

24  with the OPR reports I should say, a lot of the officers

25  gave interviews and those interviews are extremely lengthy.

1    We are redacting them before we turn them over because of

2    the extremely sensitive nature, and the fact that many of

3    the complaints were actually unfounded.  And we don't want

4    these things to make it into the public realm.  And we're

5    very concerned given the high profile nature of these cases,

6    the number of defendants who will be receiving this material

7    and the nature of the charges at issue in these cases about

8    this information being improperly disseminated into the

9    world.  So we are redacting them before we turn them over,

10   and those will also come, but not in the same wave that we

11   send the video -- which obviously doesn't need to be

12   redacted before it's provided.

13           With respect to what Ms. Iyengar said about us

14   turning over the body-worn camera and Capitol surveillance

15   footage this week, we are going to do that this week.  I

16   just wanted to make sure the Court understood how that's

17   going to work, which is we're turning it over through a

18   platform called Evidence.com.  We have funded and

19   established a defense instance of Evidence.com.  It is being

20   administered by the public -- Federal Public Defender.  They

21   have agreed to administer that for all Capitol breach

22   defendants.  They are learning how to use it.  They have all

23   of the licenses.  They are supposed to distribute the

24   licenses to all of the defense attorneys in this case.

25           And as we represented in the memo that I think

**1**    Ms. Iyengar said she filed on September 16, as soon as we

**2**    make this production they're going to need about a week

**3**    before they can figure out how to tell the entire defense

**4**    bar in all of these cases how to get access and distribute

**5**    all of the licenses and tell them the status of what's going

**6**    on with that.  So I just didn't want the Court to be under

**7**    the misimpression that when we turn it over to that database

**8**    this week, this defendant will be in possession of it.

**9**    Because that requires some work by FPD who will be

**10**   distributing it to all of the Capitol breach defendants.

**11**          In terms of being aware of Brady that this

**12**   defendant has not received, to be clear, I was not trying to

**13**   say in our motion that we were aware of video footage of

**14**   some sort that implied that this defendant, you know,

**15**   somehow had interactions with police that authorized his --

**16**   or he could have believed authorized his access onto the

**17**   premises.  I may have put including this defendant, and

**18**   that's why I said it was my fault maybe for a bad typo in

**19**   the wrong place.

**20**          What I meant was that there were allegations by

**21**   many defense counsel that they wanted this material, because

**22**   they thought that it could be helpful and supportive of the

**23**   kinds of claims that I described therein; including that

**24**   this defendant might be interested in those things, not that

**25**   this defendant had -- I wouldn't know, I'm not involved in

1    these individual cases.  I'm not looking at the footage in

2    that way, and I'm the one who wrote that language.

3           And so when the Court asked is there anything as

4    to this defendant that will be, quote, Brady that we haven't

5    turned over, the truth is -- and for all the reasons I've

6    already told the Court, I have no way of knowing what this

7    defendant would consider material or exculpatory.  Certainly

8    I think based on just if you're asking, you know, from what

9    I've seen in this case, do I think there's evidence of

10   factual, actual innocence in this case given the defendant's

11   own admissions and videos to the world, unlikely.  Is there

12   information that he might be interested in in supporting his

13   defense, you know, along the lines of wanting to claim that

14   the Government's mischaracterizing the nature of the event

15   or that police officers were friendly or that police

16   officers let people in or that it was largely a peaceful

17   protest, like assuredly we haven't turned over every kind of

18   evidence that contains that kind of information, and we're

19   not in a position to do that right now.

20          It's an interesting case, because this defendant

21   did have his own videographer follow him around and report

22   all of his actions from -- as far as I know, from the

23   beginning to the end of his stay.  So I understand that that

24   information might be less significant to him, but he has not

25   said he doesn't want it.  In fact, to the contrary he has

1    very much said that he wants that information.  So I don't

2    believe that he has all of that information at this time.

3              **THE COURT:**  Thanks, Ms. Miller, that makes sense

4    to me.  So what I would imagine would be most obviously

5    relevant would be information showing officers letting

6    people in.  I think I understand you to be saying that to

7    the extent there are allegations from OPR, that type of

8    information has gone out or will be about -- is about to go

9    out to defense counsel, but there may be other videos that

10   are out there that would show that you have not turned over.

11             **MS. MILLER:**  And even after we turn over all the

12   body-worn camera and all of the Capitol surveillance

13   footage, we get into the fact that we have thousands of

14   people who were recording these -- recording events on their

15   phones and uploading it to social media.  And every one of

16   those phones that's had a search warrant has to be properly

17   searched and scoped, right, consistent with the terms of the

18   part B of the warrant.  And we have to quality check it and

19   ensure that only scoped results are eventually going to go

20   into a database.

21             So there's going to be a lot of video that needs

22   to be analyzed and processed in this case for months to

23   come.  I mean, that's just where we are.  It's extremely

24   complicated, which is what I've been trying to explain from

25   the outset.

1    **THE COURT:**  And so back to my law firm associate

2    days, I think we had like hot docs.  You'd be tagging

3    documents that would be particularly good or particularly

4    bad for your clients.

5    **MS. MILLER:**  We are trying to do that, but this

6    comes back to where we cited that Meek case in our brief.

7    It's really hard for us -- a prosecutor and a defense

8    attorney can look at the same thing and see two different

9    things.  We don't necessarily always see it the same way and

10   we understand that, which is why it's hard for us to tag

11   everything as a hot doc or not.  Sure, when it's really

12   obvious it's easy, but sometimes it's just not.

13         And because of the volume here, honestly we don't

14   have a way of looking at every minute of it either.  We're

15   constrained just like the defense to use tools and do our

16   best to try and find the most relevant items for any

17   defendant, which is what Ms. Iyengar is doing when she's

18   providing the case-specific discovery.  But what's out there

19   that they may find of interest -- they meaning the defense

20   or the defense in this case even, it's extremely difficult

21   for the Government to know which is why our plan is just to

22   not suppress it and turn it over; and yes, as the Court

23   says, do our best to flag things.  But we're not promising

24   that we're going to flag -- knowingly be able to flag

25   everything that they would consider relevant.

1          **THE COURT:**  Understood.  So Mr. Smith, I'm happy

2     to hear from you.  I'll tell you, I think we're probably all

3     more or less on the same page about the Government's

4     obligation to turn over Brady material as soon as it

5     reasonably can.  It sounds to me like the Government has

6     turned over some potentially arguably exculpatory material,

7     and is working to turn over others.  It's certainly clear to

8     me that Ms. Iyengar isn't sitting on anything that she knows

9     is relevant to your client.  And the other potential needles

10    in various haystacks that Ms. Miller is going through, I

11    don't quite know what to do about that.

12          So I'm happy to hear from you.

13          **MR. NICHOLAS SMITH:**  Thank you, Judge.  So we'd

14    like to just take a step back here and kind of describe some

15    of the larger dynamics with discovery, because we think it

16    informs the detailed questions too.  Mr. Griffin was charged

17    seven months ago.  We're now in the seventh month of this

18    case and other cases where the Government -- Ms. Miller did

19    not mention this, but there are a few of the Capitol cases

20    that are calendared for trial.  The Government is filing

21    motions to vacate the trials right now and is telling the

22    courts that likely they won't be prepared to say that

23    they've completed their Brady obligations through well into

24    next year.  I know some of the earliest trials have been

25    continued to the summer of next year.  That's pretty

1      extraordinary for a case like this one, which is not very

2      complicated.

3              So just on the details here, Ms. Miller was

4      referencing a comment she made in a prior status report that

5      said that the Government has identified videos showing

6      police officers moving barricades out of the way.  That

7      might be considered Brady to the defendants -- that's the

8      term they used, Brady material.  Then Ms. Miller said, well,

9      what we really meant was we were referring to OPR reports

10     concerning Capitol Police.  But I think you just heard

11     Ms. Miller say that those -- that production did not include

12     any of the videos that Ms. Miller was referencing in her

13     status report.

14             There are no videos, Judge.  And we've asked the

15     Government -- not specifically in this case, but in other

16     cases, for the exhibits to the Capitol Police reports, and

17     they're not forthcoming soon.  Their response is the

18     Government will have to ask the Capitol Police whether

19     they're okay with producing the exhibits, which is the

20     evidence that we had moved to compel and the responses.  We

21     don't know yet whether we'll get those.

22             But Ms. Miller also said that those videos are

23     probably Capitol CCTV videos, but that's not always the

24     case, your Honor.  Some of the OPR reports reference social

25     media videos shows police officers lifting barricades and

1    waving people in.  Those clips are not designated sensitive.

2    There's no security-related reason why the Government should

3    not be able to share clips -- social media clips that the

4    Government has compiled and that have been identified to the

5    Government as clips showing police officers waving people

6    in.

7              So Judge, one of the points the Government just

8    made is that, well, Mr. Griffin was followed by a

9    photographer that day, so shouldn't that include all of the

10   Brady material he might want to use.  The Judge knows that

11   there's thousands of different angles.  There's a fly eye

12   kind of phenomenon through all these events where the more

13   camera footage there is the better, and you see things from

14   certain views that you don't from others.  So I think it's

15   quite likely that some of this video footage that the U.S.

16   Capitol Police have and that hasn't been produced yet could

17   be Brady.

18             One of the other main points the Government makes

19   is we don't know what Mr. Griffin would say constitutes

20   Brady.  We don't know, that's the defense's argument.

21   That's not plausible, Judge, because among other reasons,

22   the motions to dismiss across dozens of these cases and

23   hundreds of pages of briefing have shown the Government what

24   the defense arguments are.  Just last week, Judge Mehta told

25   the Government what might be Brady in a 1752 case like this.

1    So the Government knows what types of evidence would be

2    useful, Judge.  And they've had these videos for months now.

3               So the dynamic that's going on here is the

4    Government is saying you can either have your Speedy Trial

5    or you can have your -- what we're calling Brady, but you

6    can't have both.  And what that is is an attempt to put onto

7    each defendant the burden the Government has created for

8    itself.  It has a trade-off where it can decide to charge

9    600 people at once and go ahead with that with the

10   trade-offs involved, or it could have pursued investigation

11   and indicted, charged people more selectively.  It chose to

12   indict all at the same time, that's the problem it's facing

13   right now.  But there's no basis to put that choice on the

14   defendant, especially a defendant in a non conspiracy case

15   who isn't alleged to have encouraged people to show up and

16   riot.  So it's really not Mr. Griffin's choice whether he

17   goes to trial or whether he has his Brady, that's the

18   Government's choice.  And the Government can make that

19   choice.

20              So your Honor, we think the appropriate action is

21   to set the Speedy Trial Act running -- there isn't a plea

22   agreement in this case and there won't be -- to set the

23   Speedy Trial Act running.  And if the Government would like

24   to ask for a continuance of the trial because it has already

25   said that it can't comply with its Brady obligations, it can

1    receive the continuance.  But nothing requires the Court to

2    toll the Speedy Trial Act in the meantime.

3            If we go through the bases for tolling -- for ends

4    of justice tolling, we don't really think this

5    category meets -- this context meets any of the categories.

6    This isn't an unusual or complex case.  3161(h)(7)(B)(ii)

7    refers to the case being complex or unusual, not all of the

8    Government's burdens collectively.  And the only other

9    section of the ends of justice continuance act that the

10   Government's relying on is is reasonable time necessary for

11   effective preparation in this case.  But there's no case law

12   that says that an inability to timely produce discovery

13   information is reasonable on an unlimited basis.  The word

14   reasonable has to do some work in that section.  And if it

15   means forever, so long as we come into court and very sort

16   of smoothly explain all of the moving pieces, then there

17   really is no force to the Speedy Trial Act, Judge.

18           So Judge, we think it's important to look at the

19   fine print in the status reports.  There's two buckets of

20   discovery:  The Government has said the digital media bucket

21   which is at Evidence.com and the discovery -- the document

22   bucket which is at Relativity.  If your Honor looks at the

23   9/16 status report, it will see the Government's not making

24   any commitments about when it will produce anything.  What

25   it's making commitments about is when it will produce

1    information with the Federal Public Defender's office.  But

2    then if your Honor reads down into the fine print, it

3    actually says that there is no timeline for when the Federal

4    Public Defender's office will acquire the right licenses

5    with Deloitte or Relativity and Evidence.com to get the

6    information to the defense.  We are not the Federal Public

7    Defender's office.  The Government's discovery burden is

8    with us, with this defendant, not the Federal Public

9    Defender's office.  And we've heard no word from them when

10   we're going to get any of this information.

11          What we're looking for is the videos and

12   photographs that Ms. Miller specifically said the Government

13   has identified, which is videos of police moving barricades.

14   The defense theory is very simple:  Mr. Griffin was not

15   permitted to enter a restricted area without lawful

16   authority.  There's also a mens rea question about this.  If

17   police officers pick up barricades and neatly stack them --

18   the barricades are the Government's definition of a

19   restricted area boundary, then there's an argument for

20   lawful authorization.

21          It seems from what Ms. Miller is saying that we're

22   not going to get any clear answers on this definitively

23   until next year, Judge.  So we think it's appropriate in

24   that case to run the Speedy Trial Act.  The Government will

25   produce the information when it can.  It has a duty, Judge,

1   to identify Brady that it has found.  Ms. Miller and

2   Ms. Iyengar say they don't personally know whether there's

3   any Brady relating to Mr. Griffin.  The question is not

4   whether they personally know, it's whether the Government

5   has it in its possession, custody or control.  And there's a

6   pretty substantial line of cases in this Court, Judge,

7   saying that open file discovery is not appropriate in a case

8   where you're dumping millions of pages of records on a

9   defendant, even as the Government has an army of agents to

10  review these documents and to find the Brady that everyone

11  knows is Brady, Judge.

12          So the entire FBI has been redirected towards this

13  enterprise right now.  There are hundreds of thousands of

14  agents scouring these videos.  Judge, the Government should

15  identify the material that's known as -- material that is

16  reasonably objectively considered Brady.  That's the

17  Saffarinia case, 424 F.Supp.3d 46 in this courthouse, a 2020

18  decision.  It cites a few cases for that principle.

19          So that's our position, Judge.  The motion to

20  compel should be granted.  The Government defaulted on the

21  position.  If the motion to compel is not granted and

22  Mr. Griffin is forced to choose between his Speedy Trial Act

23  and his Brady rights, there is literally no tool he can use

24  to try to keep both of those rights.  If he can't move to

25  compel the information the Government's identified, if he

1    can't have his Brady if he doesn't waive and he can't have

2    his Speedy Trial Act if he doesn't waive, then he's given a

3    Sophie's Choice between his rights, Judge.

4           **THE COURT:**  So Mr. Smith, actually I don't think

5    they believe he does get the choice between waiving Brady

6    and waiving Speedy Trial.  I think the Government's position

7    is that Brady is not waivable.  So I don't know which -- how

8    that cuts here.  I think regardless, the Government has

9    argued, if not in this case certainly others, that Speedy

10   Trial constitutional rights are somewhat more capacious than

11   you might be suggesting; and that a case that has been

12   pending for well less than a year, particularly where a

13   defendant is not in custody, is well within that

14   constitutional Speedy Trial rights.

15          Mr. Smith, it sounds like you do have the OPR

16   reports.  I understand you to be saying you don't have

17   videos.  Have you seen photographs that I think Ms. Miller

18   was referencing?

19          **MR. NICHOLAS SMITH:**  No, Judge.  Without being

20   indiscreet, I think I'm allowed to verbally describe the

21   nature of the production.  But it essentially can be

22   reviewed in about 30 minutes.  And what it consists of is

23   investigators' memoranda investigating claims of misconduct

24   by U.S. Capitol Police.  There are social media videos and

25   photographs and other kinds of videos referenced in the

1    documents, and they're identified by exhibit number, but

2    they weren't produced to the defense.  So there are no

3    videos or photographs, digital media produced in the U.S.

4    Capitol Police OPR production.  It's merely investigative

5    reports that reference interviews like Ms. Miller said,

6    reference audio recordings of interviews with police

7    officers, but none of the videos are produced.

8           There's another point here, your Honor, which is

9    in cases like Mr. Griffin's where he did not enter the

10   Capitol, the U.S. Capitol Police information is not nearly

11   as important as the Metro Police.  The basic dividing line

12   the Court knows is that usually the Metro Police were at the

13   barricades and outside and enforcing the law out there

14   whereas the Capitol Police generally kept closer to the

15   building and were not really in the zone that Mr. Griffin

16   was in certainly.  So those videos are not as significant in

17   our case.

18          **THE COURT:**  I understand.  So Ms. Miller, can you

19   respond on when Mr. Smith can hope to see videos and

20   pictures that have been referenced in your materials?

21          **MS. MILLER:**  So that's correct, your Honor, we

22   didn't turn over any exhibits to the reports in an effort

23   to -- as I mentioned, we had problems processing a number of

24   the exhibits which were only resolved as of last Friday.

25   And in the effort to turn over things not in a very

1    disorganized, piecemeal manner, what we're not doing is

2    sending people one-off an exhibit of this or a link to that;

3    but rather here's a production, here are the exhibits to the

4    OPR reports in a way that makes sense so that when you read

5    the report, here are the exhibits that go with it.  This has

6    been held back because of the technological problems that we

7    had processing some of the video.

8             As I told the Court, this morning when I found out

9    they finally got it to work on Friday, I told my team this

10   needs to go out.  I know it's really important to defense

11   lawyers to actually have the footage and photographs that

12   support the allegations and not just the allegations

13   themselves.  You have to put it at the top of the priority

14   list.  I don't think it's going to be this week, because

15   honestly they're extremely focused on getting out thousands

16   of hours of CCTV and body-worn camera footage this week.

17   And while we are throwing all resources at this, we are not

18   limitless in our resources, notwithstanding what Mr. Smith

19   might believe about the discovery team.

20            And so it is at the top of the list.  I certainly

21   hope it will be done in the next week to two.  I will

22   certainly stress that to my team.  We have no objection at

23   all to providing this material.  In fact, it's extremely

24   important to me that it goes out as soon as possible.  The

25   problem is that everything is a priority.  We could have

1    held back the reports longer until all the exhibits were

2    ready.  We don't think Mr. Smith would have appreciated

3    that.  So to the extent that we provide things piecemeal,

4    there's a complaint.  And when we don't provide things

5    piecemeal, the complaint is that we're waiting too long to

6    provide everything.  So I am sort of betwixt and between

7    here.

8            I do want to say for the record that Mr. Smith in

9    my view mischaracterized and misrepresented any number of

10   things that the Government has said in the past.  I'm not

11   going to respond to them all, but if the Court has specific

12   questions from me, I'm happy to answer them.

13           **MR. NICHOLAS SMITH:**  Judge, I'd just like to say

14   that it's not appropriate for the Government to say

15   generally and vaguely someone has done -- committed some

16   sort of misconduct, but I won't substantiate what I'm saying

17   and I'll just vaguely let that hang out there.  But that's

18   pretty characteristic of many things in this investigation,

19   Judge.  But even if there's no Speedy Trial Act issue in

20   this case, we still have identified the Brady identification

21   issues.

22           So the Government is taking the position that open

23   trial discovery is appropriate in these cases, that their

24   discovery obligations are complete once they've produced

25   millions of pages of documents.  But, your Honor, we think

1    that the Saffarinia line of cases applies; and that because

2    there are so many agents on these cases; because there are

3    so few defense attorneys, court-appointed ones representing

4    the defendants; and the defense arguments are perfectly

5    clear and obvious to the Government, there is an obligation

6    to identify Brady that the Government is aware of, that the

7    Government is aware of.  Not that -- it doesn't need to go

8    in search of monsters, but it needs to identify specifically

9    what it has found that's Brady to the defense.

10       **THE COURT:**  All right.  So here's what I want to

11   do.  I think the big thing here is trying to find a trial

12   date and move towards some resolution here.  That's what I

13   think Mr. Griffin is most interested in.  I can understand

14   that, and I want to try to address that in a moment here.

15       On the motion to compel, I guess I'm going to say

16   I'm granting it in part and denying it in part.  I think

17   this Court, the local rules and the Supreme Court have made

18   clear the importance of turning Brady over quickly.  I think

19   the Government is seeking to do that, although this has

20   certainly taken longer than I would have expected.  I don't

21   think there's been any showing of a Brady violation or

22   anything like that at this point.

23       So I'm going to direct the Government to comply

24   with Brady and with the local rules on that point.  I think

25   the -- I understand Mr. Smith's concern about video and

1    other images that are -- doesn't take any mind reader to

2    figure out would be particularly relevant to the defense,

3    and particularly images of officers waving people into a

4    restricted area or removing gates, what have you.  I think

5    those need to go over.  I also understand Ms. Miller's

6    frustration with the technology there with interacting with

7    various agencies.  So I think what I hear from her is she

8    sees that as important and is going to turn it over as

9    quickly as possible, and I think that's appropriate.

10           I'm also going to grant the Government's motion

11   for leave to late file.  I think Mr. Smith is right that

12   they did file out of time.  But also I think Ms. Iyengar has

13   shown she was out of the country at the time, and I don't

14   think there's any prejudice to the defense in allowing the

15   Government to respond.  I certainly would not deny a similar

16   motion from the defense in similar circumstances.

17           So the practical matter is, Mr. Smith, I'm looking

18   at mid March trial dates.  That's just because aside from

19   the January 6th issue, of course the Court is also dealing

20   with the backlog in trials due to the pandemic.  And my

21   first three months are literally back to back -- of the next

22   year are back to back trials, all of which are either as old

23   or older than yours, and most of which involve detained

24   defendants.  So I think what I'd like to suggest is that we

25   pick a trial date here in mid March and work from there.

1      Obviously I'd expect that the Government provide the Brady

2      materials well in advance of that.

3                  Mr. Smith, you wanted to say something?

4                  **MR. NICHOLAS SMITH:**  Couy, wait just one second

5      here.  I think I can anticipate you, give me a second.  So

6      Judge, I think we're okay.  If that's the earliest trial

7      date that fits in the Court's calendar, we're of course okay

8      with that.  Your Honor, we'd just like to flag that there is

9      this open issue here of open discovery versus Brady

10     identification, your Honor.  And so if the Court is prepared

11     to decide this issue today, it's been briefed by the

12     parties, Judge, I believe.

13                 So it is Mr. Griffin's position that if the

14     Government is aware of Brady material having conducted a

15     review of thousands of hours of footage -- body-cam and

16     social media footage, that they must identify it to

17     Mr. Griffin; that open file discovery is not appropriate in

18     this type of case.  And we just want to be clear, we're not

19     taking the position that the Government must go in search of

20     Brady, but rather just identify the Brady it has to the

21     defense -- it has knowledge of.  And I think that that's a

22     standard that is well supported by precedent in this Court,

23     Judge.

24                 **MS. MILLER:**  Your Honor, may I respond?

25                 **THE COURT:**  Yes.

1          **MS. MILLER:**  Two things.  First, I understand the

2      Court is inclined to set a trial date, so just a few points

3      on that.  What we are actually requesting is that the Court

4      not set a trial date now, set a status hearing 60 days out,

5      continue to monitor our diligence in providing discovery

6      because it is incredibly complex in this case, because we do

7      think (B)(iv) applies under 3161(h)(7).  I understand the

8      Court may not be inclined to do that, but that's our

9      request.

10          I say that only to say we can set this for March,

11      but I do have -- I don't want the Court to think if we come

12      back whenever the next status conference is and it doesn't

13      look like we're going to be ready to have provided

14      everything by then, I don't want that to be a surprise so

15      long as the Court understands we are doing everything we can

16      to go through the material.  I'm not saying it's not going

17      to happen, I'm just saying I don't know; that there's too

18      many unknowns at this point and the amount of information I

19      need to process -- or we need to process for me to tell the

20      Court with any certainty whether we'll be ready by then.

21          I also want to say on the issue of identification

22      of Brady, defense counsel cited one case, Saffarinia.  It's

23      a D.D.C. case by Judge -- I think it's Judge Sullivan who

24      issued it.  And in that case, in fact, the Court

25      acknowledged the, quote, pervasive authority has articulated

1    a general rule that the Government is under no duty to

2    direct a defendant to exculpatory evidence within a larger

3    mass of disclosed evidence, end quote.  And the holding in

4    that District Court case was very much limited to the facts

5    of that case, which are totally inconsistent with the facts

6    of this case.  And that every circuit, to consider this

7    issue, has ruled that if the information is not suppressed,

8    the Government has complied with its job.  That is why we

9    are providing all of the information.

10        We do not plan to dump stuff on the defense.  We

11   are doing our best to get the defense up to the point where

12   we are in terms of giving them equivalent tools,

13   functionality; and even as I've noted in our status memo, to

14   provide work product that we've created just for the purpose

15   of helping them wade through the mass of material.  But I do

16   not believe that we're under any obligation whatever to

17   identify material that is Brady, and I think that would be

18   inconsistent with every circuit in the country if the Court

19   required us to do it here.

20        **THE COURT:**  So Ms. Miller, I thought that's what

21   you were trying to do, though.  Am I incorrect in

22   understanding that?

23        **MS. MILLER:**  Well, I think, your Honor, the issue

24   is we are trying to identify hot docs.  And we are -- when

25   we see things, if we can we do.  So, for example -- but I

1    don't think it's as simple as saying we're trying to

2    identify exculpatory evidence wherever we see it.  So things

3    that we're doing, for example, include I think 60 different

4    people in our office combined, paralegals, interns, AUSAs,

5    whoever, were on a project to review the body-worn camera

6    footage.  That's the only footage, by the way, that is

7    voluminous that I'm aware of that's been reviewed in this

8    fashion.  They just took it actually upon themselves to do

9    this.

10          And when they did it, they created a spreadsheet

11   organized in 15-minute increments by each officer's camera

12   that explains essentially -- that shows -- I'm trying to

13   think.  It shows I think where the camera is in terms of a

14   zone of the Capitol.  They made their own zone map.  So

15   every 15 minutes, this camera's in zone A or zone B.  They

16   just made this up to try and organize the information,

17   because there was no GPS information available for the

18   body-worn cameras.  They were trying to find a way to wade

19   through the thousands and help people identify the cameras

20   that might actually be relevant to them.

21          So things like that we're going to turn over,

22   which means that if Mr. Smith is interested in what all the

23   cameras show of where Mr. Griffin were, that he can go to

24   the time -- he knows exactly where Mr. Griffin was at any

25   time, because Mr. Griffin recorded the entire event on his

**1**  own camera.  So if he wants to go find out which officers

**2**  were in that area at that time, he can go and take the zone

**3**  map that we're going to give him that took thousands of

**4**  hours for people to put together, and find every body-worn

**5**  camera he wants to find that could possibly capture his

**6**  event.

**7**          Have we gone through each and every one of those

**8**  cameras and identified what we think a defendant might think

**9**  is material to him?  That has not happened, and I don't

**10**  think that we could.  Even if we could for the body-worn

**11**  camera footage, we certainly couldn't then extend that to

**12**  7,000 more hours of Capitol surveillance footage and another

**13**  I don't know how many hours of social media and search

**14**  warrants.  Like I -- it's just not required by law, and

**15**  to --

**16**          **THE COURT:**  I don't hear him requesting that,

**17**  Ms. Miller.  I think he's saying that where you have

**18**  identified information -- not hunted out, but where you, the

**19**  Government, have identified likely Brady information, that

**20**  it's not sufficient just to slip this in what the Government

**21**  is describing as historic amounts of discovery that we've

**22**  never before seen in any criminal case.  You know, Mr. Smith

**23**  is right, he's not the Federal Public Defender's office.

**24**  He's certainly not the U.S. Attorney's Office.  We're

**25**  talking about two defense attorneys who are trying to

1    prepare one defendant.  I understand all of the resource

2    limitations you have.  That is -- you have significantly

3    more than he has.

4            **MR. NICHOLAS SMITH:**  And Judge --

5            **THE COURT:**  No, Mr. Smith, hold on, I'm talking

6    with Ms. Miller.

7            **MS. MILLER:**  It's hard for me to know, your

8    Honor -- so in other words, let me put it a different way.

9    Mr. Griffin made himself be captured on thousands of cameras

10   when you start to add up all the Capitol surveillance

11   cameras which extend well beyond the interior of the Capitol

12   all the way out into the public streets.  He's walking all

13   over all different places passing all different cameras at

14   different times.  He may be captured on hundreds of other

15   people's cellphones.  Everything that he did could be

16   captured in hundreds of thousands of -- not hundreds of

17   thousands, but hundreds to thousands of cameras.  We are not

18   in each case able to identify for each defendant every

19   camera that captures that defendant.

20           Mr. Smith might believe that that material is all

21   extremely relevant and in some way exculpatory, that might

22   be his theory.  We're not able to do that.  That's why we're

23   producing it all.  He is the person in the best position to

24   know where he went, when he went there and what would

25   capture something that's relevant.  If the Government

1    becomes aware of something that is of course exculpatory, we

2    have no intent to bury that.  That is never our goal.  We

3    will make sure that that is highlighted for the defense.

4           But what I won't do is have these words then used

5    against me.  Because the way that I see this going, your

6    Honor, is that we fail to identify something, and the next

7    time we're in court Mr. Smith is screaming that this was so

8    obviously Brady and the Government didn't tag it as Brady

9    for us, and therefore you should penalize the Government.

10   And since we're not under an obligation to do that by law,

11   and since the information is not suppressed once we turn it

12   over, and since we're giving Mr. Smith all of the tools that

13   we have -- and he actually has an advantage over us by

14   knowing everywhere that his client went, and the ability to

15   speak with his client and know what his client's intent was,

16   we have complied with our obligations.

17          So the reason we're turning over the OPR reports

18   and the MPD IAD reports first specifically is because we

19   know that those are allegations that officers did things

20   that were potentially complicit with the protesters, the

21   rioters, whatever anybody wants to call them.  But to ask us

22   to look at every minute of video -- so say, for example,

23   there's three hours of video that depict a crowd just

24   assembled and protesting somewhere on some side of the

25   Capitol.  Is that Brady, is that exculpatory?  Does it show

**1**  people in a crowd acting nonviolent?  I suppose it does.  Is

**2**  it our job to say that on this camera, you can see that as a

**3**  general rule when you zoom out from the crowd it doesn't

**4**  look like anything violent is happening?  It's just not

**5**  possible.

**6**       The defense needs to look at the evidence and

**7**  decide what is material to the defense.  If we see something

**8**  that's particularly exculpatory, of course we will define it

**9**  for the defense; of course we will.  But we can't be held to

**10**  a standard of they didn't show us this, they didn't tell us

**11**  that, so therefore you know they're lying, your Honor.

**12**       **MR. NICHOLAS SMITH:**  Judge, since the Government

**13**  has 20 minutes to discuss something that we're not even

**14**  debating, I think it's fair to just let the defense point

**15**  out that the Government is addressing a strawman.  No one

**16**  has said the Government needs to watch videos it hasn't in

**17**  order to look for Brady.  The point which is in the

**18**  Saffarinia case and others -- which does not comport with

**19**  any circuit precedent, is that when the Government is

**20**  producing a large number of documents -- that's factor one;

**21**  factor two, to a small defense; factor three, defense

**22**  counsel is not benefitting from parallel civil litigation or

**23**  voluntary corporate assistance, it is appropriate to require

**24**  the Government to identify to the defense Brady material

**25**  that's objectively Brady material that the Government is

1    aware of.

2            There's no burden on the Government to go

3    searching through video evidence, as Ms. Miller explained

4    for the past 10 minutes.  The issue is if the Government has

5    viewed thousands of hours of information and it's aware of

6    the defenses that Mr. Griffin will raise, and it has

7    identified information that arguably satisfies Mr. Griffin's

8    defenses, the Government should identify it to Mr. Griffin.

9    That's the only position we're taking, Judge.

10           **THE COURT:**  Okay.  Folks, we're going to cut this

11   off.  I think you all are actually kind of mostly agreeing

12   that where there is material that is objectively Brady that

13   the Government is aware of, the Government should be

14   flagging that for the defense.  And I think that's

15   appropriate here.  I'm not going to issue some sort of

16   written order on this.  I'm not going to weigh in on whether

17   Judge Sullivan was right or not.  But I think the Government

18   has said it intends to do that, and I think that's

19   appropriate.

20           I'm not a judge who's likely to find that the

21   Government is deliberately failing to do its duty, certainly

22   in a case like this that does have extraordinary discovery

23   demands.  But I think because of those demands that are --

24   however great they are on the defense, they are

25   significantly greater on the defendant, I think the

1   Government should make sure it's not hiding the ball.  I

2   think Ms. Miller has said that she doesn't intend to hide

3   the ball.  I'm sure she's not going to hide the ball.  I

4   think that's appropriate.

5           Let's talk about trial dates, folks.  March 21st,

6   this is going to be a bench trial so we don't need to pick a

7   jury.  I'm expecting this is going to be a couple of days

8   max.

9           Ms. Iyengar, any reason that doesn't make sense to

10  you?

11          **MS. IYENGAR:**  I think that's certainly fine from

12  the Government's perspective.  I don't think we'll have any

13  witnesses to go beyond two days.

14          **THE COURT:**  Mr. Smith?

15          **MR. NICHOLAS SMITH:**  We agree, your Honor.

16          **THE COURT:**  Okay.  So March 21st, 9:30.  Are you

17  available, Ms. Iyengar?

18          **MS. IYENGAR:**  Yes, that's a good day for the

19  Government.

20          **THE COURT:**  Mr. Smith?

21          **THE DEFENDANT:**  If I may, your Honor?

22          **THE COURT:**  Yes, Mr. Griffin.

23          **THE DEFENDANT:**  If I can, if I can interject

24  anything.  I just want to make you aware once again that

25  it's been nine months that I've been going through this.

1    There's a recall that's been going against me in the county

2    through my elected position.  I've already been tried,

3    convicted and sentenced from the local to the state to the

4    national media.

5          It's just a shame, you know, it shouldn't happen

6    to people in our country today.  We should have a right to a

7    speedy trial where we can have our day in court, the

8    evidence can be produced and the judge can decide fairly.

9    That should be the America that we live in.  Unfortunately,

10   when you come to January 6th, I've been charged with a

11   misdemeanor charge.  I spent three weeks in solitary

12   confinement on a misdemeanor trespass charge.  And now my

13   trial date is going to be in March where the media can just

14   continue to annihilate me and rip me to shreds over this

15   whenever I did nothing violent on that day, I broke nothing,

16   I didn't fight with anybody.  I didn't knock on any -- all I

17   did was stand on the steps of the Capitol and pray with

18   people, that's it.  And now, you know, my life's been turned

19   upside down.

20         It's been -- every day is a day of punishment for

21   me.  I'm being punished every day that I don't have a trial.

22   It's very unfair and it's very unjust, and it's sad that our

23   country has come to this.  And it's a disgrace that our

24   judicial --

25         **MR. NICHOLAS SMITH:**  Couy, Couy, Couy, Couy.

1          **THE DEFENDANT:**  Okay.  That's my piece, and I

2     appreciate you for allowing me to have it.

3          **THE COURT:**  Thank you, Mr. Griffin.  I hear you,

4     and I'm sympathetic to your concerns there.  I'm setting the

5     date, as Ms. Miller suggested, well in advance of when many

6     of my colleagues are, in part because I agree with you in

7     some of that.  But also, one way or the other, you were

8     involved in an event that also involved hundreds, if not

9     thousands, of other people.

10          And you have the added misfortune of being caught

11     up in the criminal justice system at a time when we're under

12     tremendous stress because of COVID and just trying to --

13     we're not functioning as quickly or as efficiently as we

14     typically have.  And I don't like that, but I'm trying to

15     process and consider not only your consideration, but also

16     frankly many other people who were also there on that day

17     who are in jail right now, and other people who have been in

18     jail for much longer who also are waiting their trial date.

19     So I understand your frustration, and we are where we are.

20          So Mr. Griffin -- Mr. Smith, you said you're

21     available for trial March 21st?

22          **MR. NICHOLAS SMITH:**  Yes.  Does that work for you,

23     Couy?

24          **THE DEFENDANT:**  Yes, sir.  Yeah, that's fine.

25          **THE COURT:**  Okay.  We'll set this for trial on

1   Monday, March 21st at 9:30.  We'll set a motion hearing, how

2   about Friday, March 11th at 10:00 a.m., does that work for

3   the Government?

4          MS. IYENGAR:  Yes, that's a good day for the

5   Government.

6          THE COURT:  Okay.  And Mr. Smith?

7          MR. NICHOLAS SMITH:  Yes, your Honor.  Is that a

8   motion hearing for all -- that's the motion hearing for all

9   pretrial motions?

10          THE COURT:  Yeah, sorry, there will be a motion

11   hearing and a pretrial conference.  I mean, I've already

12   considered and addressed your motion to dismiss.  If there

13   are -- I mean, I think that would be the presumptive date

14   for any other motions.  But if the parties think that I need

15   to rule on something earlier that would make a significant

16   difference in the outcome of the -- how the trial goes, I'm

17   happy to consider that.

18          MR. NICHOLAS SMITH:  That works for the defense,

19   your Honor, March 11th works.

20          THE COURT:  Okay.  I'm going to wait to set other

21   deadlines for now, but let's go ahead and pick another

22   status date here.  How about Friday, October 29th?

23          MS. IYENGAR:  Your Honor, unfortunately that's the

24   one day I'm not available in October.

25          THE COURT:  Okay, that's fine.  How about

1    10:00 a.m. on Tuesday, March 26th, does that work for the

2    Government, a Zoom hearing?

3            MS. IYENGAR:  Did the Court mean October 26th?

4            THE COURT:  I did, sorry about that.

5            MS. IYENGAR:  Yes, that's fine.

6            THE COURT:  Okay.  Mr. Smith, does that work for

7    the defense?

8            MR. NICHOLAS SMITH:  Yes, your Honor.  And

9    Mr. Griffin, Couy, does that work for you?

10           THE DEFENDANT:  Yes, sir, absolutely.

11           THE COURT:  Okay.  I've also -- I've considered

12   the Government's motion to continue at ECF number 44 and the

13   defense's objection to it.  I'm going to grant the motion to

14   continue and toll the Speedy Trial clock until October 26th

15   for the reasons described in the Government's motion.

16           Anything else for us to discuss today,

17   Ms. Iyengar?

18           MS. IYENGAR:  Nothing from the Government, your

19   Honor.

20           THE COURT:  And Mr. Smith?

21           MR. NICHOLAS SMITH:  Your Honor, we just want to

22   clarify whether the Government is saying that -- Ms. Miller

23   announced that basically discovery might not be prepared,

24   fully complied with even by March, your Honor.  So is the

25   Court taking the position that the Speedy Trial Act will be

1    continued through March come hell or high water, so to

2    speak, or is there kind of a limit to how Speedy Trial Act

3    continuance is based on the facts on the ground as they

4    proceed here?

5              **THE COURT:**  I've only tolled the Speedy Trial

6    clock until October 26th.  We'll consider it from there.

7              All right, thanks, folks.  I'll see you all in

8    October 26th for another Zoom hearing.  Thank you.

9         (Proceedings adjourned at 3:00 p.m.)

1                        **C E R T I F I C A T E**

2


3                I, **Jeff Hook, Official Court Reporter**,

4    certify that the foregoing is a true and correct transcript

5    of the remotely reported proceedings in the above-entitled

6    matter.

7                    **PLEASE NOTE:**  This hearing occurred during

8    the COVID-19 pandemic and is therefore subject to the

9    technological limitations of court reporting remotely.

10

11

12

13    **September 27, 2021**                 _____

14          **DATE**                              **Jeff M. Hook**

15

16

17

18

19

20

21

22

23

24

25

**1**

1,600 [1]   3/25
10 [1]   34/4
108 [1]   1/18
10:00 a.m [2]   38/2 39/1
11th [2]   38/2 38/19
14th [1]   3/7
15 [1]   29/15
15-minute [1]   29/11
16 [2]   9/1 17/23
16th [1]   3/21
1752 [1]   15/25
19 [1]   41/8
1:21-cr-92 [1]   1/4
1st [1]   1/18

**2**

2,300 [1]   3/23
20 [2]   1/5 33/13
20001 [1]   1/25
2020 [1]   19/17
2021 [1]   1/5
20530 [1]   1/15
21-92 [1]   2/3
21st [4]   35/5 35/16
37/21 38/1
22314 [1]   1/18
26th [5]   39/1 39/3
39/14 40/6 40/8
29th [1]   38/22
2:02 [1]   1/6

**3**

30 [1]   20/22
3161 [2]   17/6 27/7
333 [1]   1/24
3:00 p.m [1]   40/9

**4**

424 [1]   19/17
44 [1]   39/12
46 [1]   19/17
4700-C [1]   1/24
4th [1]   1/14

**5**

555 [1]   1/14

**6**

60 [2]   27/4 29/3
600 [1]   16/9
6th [2]   25/19 36/10

**7**

7,000 [1]   30/12

**8**

850 [1]   6/6

**9**

9/16 [1]   17/23
92 [2]   1/4 2/3
9:30 [2]   35/16 38/1

**A**

a.m [2]   38/2 39/1
ability [1]   32/14
able [5]   7/6 12/24

15/3 31/18 31/22
above [1]   41/5
above-entitled [1]
41/5
absolutely [1]
39/10
access [2]   9/4 9/16
acknowledged [1]
27/25
acquire [1]   18/4
across [1]   15/22
act [12]   3/5 16/21
16/23 17/2 17/9
17/17 18/24 19/22
20/2 23/19 39/25
40/2
acting [1]   33/1
action [2]   1/3
16/20
actions [1]   10/22
actual [1]   10/10
actually [9]   8/3
18/3 20/4 22/11
27/3 29/8 29/20
32/13 34/11 35/1
add [3]   5/2 7/20
31/10
added [1]   37/10
addition [2]   7/17
7/23
address [1]   24/14
addressed [1]   38/12
addressing [1]
33/15
adjourned [1]   40/9
administer [1]   8/21
administered [1]
8/20
admissions [1]
10/11
advance [2]   26/2
37/5
advantage [1]   32/13
afternoon [9]   2/5
2/7 2/8 2/10 2/12
2/13 2/14 2/15 2/17
again [1]   35/24
against [2]   32/5
36/1
agencies [1]   25/7
agents [3]   19/9
19/14 24/2
ago [2]   7/8 13/17
agree [3]   7/10
35/15 37/6
agreed [1]   8/21
agreeing [1]   34/11
agreement [1]   16/22
ahead [2]   16/9
38/21
Alexandria [1]   1/18
Alfred [1]   1/18
allegation [1]   6/21
allegations [7]
5/25 6/4 9/20 11/7
22/12 22/12 32/19
alleged [1]   16/15
allowed [1]   20/20
allowing [2]   25/14
37/2

along [2]   5/25
10/13
although [1]   24/19
always [2]   12/9
14/23
AMERICA [3]   1/3 2/3
36/9
among [2]   5/22
15/21
amount [1]   27/18
amounts [1]   30/21
analyzed [1]   11/22
angles [2]   6/20
15/11
annihilate [1]
36/14
announced [1]   39/23
anticipate [1]   26/5
APPEARANCES [1]
1/11
applies [2]   24/1
27/7
appointed [1]   24/3
appreciate [1]   37/2
appreciated [1]
23/2
appropriate [11]
16/20 18/23 19/7
23/14 23/23 25/9
26/17 33/23 34/15
34/19 35/4
area [5]   6/17 18/15
18/19 25/4 30/2
arguably [2]   13/6
34/7
argued [1]   20/9
argument [2]   15/20
18/19
arguments [2]   15/24
24/4
army [1]   19/9
around [1]   10/21
articulated [1]
27/25
aside [1]   25/18
assembled [1]   32/24
assistance [1]
33/23
associate [1]   12/1
assuredly [1]   10/17
attempt [1]   16/6
attorney [1]   12/8
Attorney's [1]   1/13
30/24
attorneys [3]   8/24
24/3 30/25
audio [3]   4/4 4/6
21/6
AUSAs [1]   29/4
authority [2]   18/16
27/25
authorization [1]
18/20
authorized [3]   5/17
9/15 9/16
available [4]   29/17
35/17 37/21 38/24
Avenue [1]   1/24
aware [15]   4/12
4/15 4/22 4/24 9/11

9/13 24/6 24/7
26/14 29/7 32/1
34/1 34/5 34/13
35/24

**B**

back [12]   6/3 7/2
12/1 12/6 13/14
22/6 23/1 25/21
25/21 25/22 25/22
27/12
backlog [1]   25/20
bad [2]   9/18 12/4
ball [3]   35/1 35/3
35/3
Bankruptcy [1]   1/23
bar [1]   9/4
barricade [1]   6/13
barricades [7]   3/6
14/6 14/25 18/13
18/17 18/18 21/13
based [3]   6/3 10/8
40/3
bases [1]   17/3
basic [1]   21/11
basically [1]   39/23
basis [3]   5/11
16/13 17/13
becomes [1]   32/1
beginning [1]   10/23
bench [1]   35/6
benefitting [1]
33/22
best [5]   7/12 12/16
12/23 28/11 31/23
better [2]   6/20
15/13
betwixt [1]   23/6
beyond [2]   31/11
35/13
big [1]   24/11
bike [2]   5/5 6/1
body [9]   3/23 8/14
11/12 22/16 26/15
29/5 29/18 30/4
30/10
body-cam [1]   26/15
body-worn [8]   3/23
8/14 11/12 22/16
29/5 29/18 30/4
30/10
both [2]   16/6 19/24
boundary [1]   18/19
Brady [45]
breach [4]   4/6 4/9
8/21 9/10
brief [1]   12/6
briefed [1]   26/11
briefing [1]   15/23
broke [1]   36/15
bucket [2]   17/20
17/22
buckets [1]   17/19
building [2]   5/17
21/15
bumping [1]   5/5
burden [3]   16/7
18/7 34/2
burdens [1]   17/8
bury [1]   32/2

**C**

calendar [1]   26/7
calendared [1]   13/20
call [1]   32/21
called [1]   8/18
calling [1]   16/5
cam [1]   26/15
came [1]   6/8
camera [13]   3/24 8/14 11/12 15/13 22/16 29/5 29/11 29/13 30/1 30/5 30/11 31/19 33/2
camera's [1]   29/15
cameras [8]   29/18 29/19 29/23 30/8 31/9 31/11 31/13 31/17
can [30]   4/21 5/2 5/8 9/3 12/8 13/5 16/4 16/5 16/8 16/18 16/25 18/25 19/23 20/21 21/18 21/19 24/13 26/5 27/10 27/15 28/25 29/23 30/2 33/2 35/23 35/23 36/7 36/8 36/8 36/13
capacious [1]   20/10
Capitol [31]   3/7 3/9 4/1 4/6 4/9 5/22 6/11 6/18 6/23 7/1 8/14 8/21 9/10 11/12 13/19 14/10 14/16 14/18 14/23 15/16 20/24 21/4 21/10 21/10 21/14 29/14 30/12 31/10 31/11 32/25 36/17
capture [2]   30/5 31/25
captured [4]   6/11 31/9 31/14 31/16
captures [1]   31/19
case [40]   2/2 4/8 8/24 10/9 10/10 10/20 11/22 12/6 12/18 12/20 13/18 14/1 14/15 14/24 15/25 16/14 16/22 17/6 17/7 17/11 17/11 18/24 19/7 19/17 20/9 20/11 21/17 23/20 26/18 27/6 27/22 27/23 27/24 28/4 28/5 28/6 30/22 31/18 33/18 34/22
case-specific [1]   12/18
cases [15]   5/14 8/5 8/7 9/4 10/1 13/18 13/19 14/16 15/22 19/6 19/18 21/9 23/23 24/1 24/2
categories [1]   17/5
category [1]   17/5
category meets [1]

17/5
caught [1]   37/10
CCTV [2]   14/23 22/16
cellphones [1]   31/15
certain [1]   15/14
certainly [13]   3/15 10/7 13/7 20/9 21/16 22/20 22/22 24/20 25/15 30/11 30/24 34/21 35/11
certainty [1]   27/20
certify [1]   41/4
characteristic [1]   23/18
charge [3]   16/8 36/11 36/12
charged [3]   13/16 16/11 36/10
charges [1]   8/7
check [1]   11/18
choice [6]   16/13 16/16 16/18 16/19 20/3 20/5
choose [1]   19/22
chose [1]   16/11
circuit [3]   28/6 28/18 33/19
circumstances [1]   25/16
cited [2]   12/6 27/22
cites [1]   19/18
civil [1]   33/22
claim [1]   10/13
claims [2]   9/23 20/23
clarification [1]   7/20
clarify [1]   39/22
clear [8]   4/18 5/8 9/12 13/7 18/22 24/5 24/18 26/18
client [3]   13/9 32/14 32/15
client's [1]   32/15
clients [1]   12/4
clip [1]   6/16
clips [4]   15/1 15/3 15/3 15/5
clock [2]   39/14 40/6
closer [1]   21/14
colleagues [1]   37/6
collectively [1]   17/8
COLUMBIA [2]   1/1 1/14
combined [1]   29/4
comment [1]   14/4
commitments [2]   17/24 17/25
committed [1]   23/15
compel [9]   2/20 2/22 3/2 3/3 14/20 19/20 19/21 19/25 24/15
compiled [1]   15/4
complaint [2]   23/4

23/5
complaints [1]   8/3
complete [2]   7/22 23/24
completed [1]   13/23
complex [3]   17/6 17/7 27/6
complicated [2]   11/24 14/2
complicit [2]   5/16 32/20
complied [3]   28/8 32/16 39/24
comply [2]   16/25 24/23
comport [1]   33/18
concern [1]   24/25
concerned [1]   8/5
concerning [1]   14/10
concerns [1]   37/4
conduct [1]   3/15
conducted [2]   4/8 26/14
conference [4]   1/9 2/18 27/12 38/11
confinement [1]   36/12
consider [7]   5/12 10/7 12/25 28/6 37/15 38/17 40/6
consideration [1]   37/15
considered [5]   4/16 14/7 19/16 38/12 39/11
consistent [1]   11/17
consists [1]   20/22
conspiracy [1]   16/14
constitutes [1]   15/19
Constitution [1]   1/24
constitutional [2]   20/10 20/14
constrained [1]   12/15
contain [1]   5/12
contains [1]   10/18
context [1]   17/5
continuance [4]   16/24 17/1 17/9 40/3
continue [6]   2/20 5/9 27/5 36/14 39/12 39/14
continued [2]   13/25 40/1
continuing [1]   3/16
contrary [1]   10/25
control [1]   19/5
convert [2]   7/4 7/7
convicted [1]   36/3
corporate [1]   33/23
counsel [6]   2/3 5/14 9/21 11/9 27/22 33/22
country [4]   25/13

28/18 36/6 36/23
county [1]   36/1
couple [1]   35/7
course [5]   25/19 26/7 32/1 33/8 33/9
court [38]   1/1 1/22 1/23 4/3 7/3 7/22 8/16 9/6 10/3 10/6 12/22 17/1 17/15 19/6 21/12 22/8 23/11 24/3 24/17 24/17 25/19 26/10 26/22 27/2 27/3 27/8 27/11 27/15 27/20 27/24 28/4 28/18 32/7 36/7 39/3 39/25 41/3 41/9
Court's [1]   26/7
court-appointed [1]   24/3
courthouse [1]   19/17
courts [2]   1/23 13/22
COUY [11]   1/6 2/3 2/12 2/16 26/4 36/25 36/25 36/25 36/25 37/23 39/9
COVID [2]   37/12 41/8
COVID-19 [1]   41/8
cr [1]   1/4
created [3]   16/7 28/14 29/10
criminal [4]   1/3 2/2 30/22 37/11
crowd [3]   32/23 33/1 33/3
current [1]   3/22
currently [1]   4/14
custody [2]   19/5 20/13
cut [1]   34/10
cuts [1]   20/8

**D**

D.D.C [1]   27/23
database [2]   9/7 11/20
date [11]   24/12 25/25 26/7 27/2 27/4 36/13 37/5 37/18 38/13 38/22 41/14
dates [2]   25/18 35/5
DAVID [3]   1/17 1/17 2/12
day [10]   15/9 35/18 36/7 36/15 36/20 36/20 36/21 37/16 38/4 38/24
days [5]   7/8 12/2 27/4 35/7 35/13
DC [3]   1/5 1/15 1/25
deadlines [1]   38/21
dealing [1]   25/19
debating [1]   33/14

## D

decide [4]   16/8
26/11 33/7 36/8
decision [1]   19/18
defaulted [1]   19/20
defendant [30]   1/7
1/16 4/5 4/7 4/13
4/17 5/1 5/12 9/8
9/12 9/14 9/17 9/24
9/25 10/4 10/7
10/20 12/17 16/7
16/14 16/14 18/8
19/9 20/13 28/2
30/8 31/1 31/18
31/19 34/25
defendant's [1]
10/10
defendants [6]   8/6
8/22 9/10 14/7 24/4
25/24
Defender [1]   8/20
Defender's [5]   18/1
18/4 18/7 18/9
30/23
defense [45]
defense's [2]   15/20
39/13
defenses [2]   34/6
34/8
define [1]   33/8
definition [1]
18/18
definitively [1]
18/22
deliberately [1]
34/21
delivered [1]   7/16
Deloitte [1]   18/5
demands [2]   34/23
34/23
deny [1]   25/15
denying [1]   24/16
depending [1]   6/8
depict [1]   32/23
describe [2]   13/14
20/20
described [2]   9/23
39/15
describing [1]
30/21
designated [1]   15/1
detailed [1]   13/16
details [1]   14/3
detained [1]   25/23
difference [1]
38/16
different [8]   6/19
12/8 15/11 29/3
31/8 31/13 31/13
31/14
difficult [1]   12/20
digital [2]   17/20
21/3
diligence [1]   27/5
direct [2]   24/23
28/2
directly [1]   4/22
disclosed [6]   3/7
3/10 3/20 4/4 5/6

28/3
disclosing [1]   3/25
discovery [21]   2/24
3/22 4/20 4/20 5/21
12/18 13/15 17/12
17/20 17/21 18/7
19/7 22/19 23/23
23/24 26/9 26/17
27/5 30/21 34/22
39/23
discuss [3]   2/19
33/13 39/16
disgrace [1]   36/23
disgrace that [1]
36/23
dismiss [2]   15/22
38/12
disorganized [1]
22/1
disseminated [1]
8/8
distribute [2]   8/23
9/4
distributing [1]
9/10
DISTRICT [6]   1/1
1/1 1/10 1/14 1/23
28/4
dividing [1]   21/11
doc [1]   12/11
docs [2]   12/2 28/24
document [1]   17/21
documents [5]   12/3
19/10 21/1 23/25
33/20
done [3]   4/2 22/21
23/15
down [2]   18/2 36/19
dozens [1]   15/22
drafting [1]   5/9
due [2]   5/8 25/20
dump [1]   28/10
dumping [1]   19/8
during [1]   41/7
duty [3]   18/25 28/1
34/21
dynamic [1]   16/3
dynamics [1]   13/15

## E

e-mail [1]   3/10
earlier [2]   7/3
38/15
earliest [2]   13/24
26/6
easy [1]   12/12
ECF [1]   39/12
effective [1]   17/11
efficiently [1]
37/13
effort [4]   5/20
6/23 21/22 21/25
either [3]   12/14
16/4 25/22
elaborate [1]   5/7
elected [1]   36/2
else [1]   39/16
EMILY [2]   1/13 2/8
encouraged [1]
16/15

end [4]   3/24 4/2
10/23 28/3
ends [2]   17/3 17/9
enforcing [1]   21/13
engaged [1]   5/16
engaging [1]   3/14
ensure [1]   11/19
enter [3]   5/17
18/15 21/9
enterprise [1]
19/13
entire [3]   9/3
19/12 29/25
entitled [2]   7/11
41/5
equivalent [1]
28/12
especially [1]
16/14
essentially [4]
5/15 7/5 20/21
29/12
established [1]
8/19
even [8]   11/13
12/20 19/9 23/19
28/13 30/10 33/13
39/24
event [4]   10/14
29/25 30/6 37/8
events [2]   11/14
15/12
eventually [1]
11/19
everyone [2]   6/14
19/10
everywhere [1]
32/14
evidence [13]   2/20
2/24 5/4 10/9 10/18
14/20 16/1 28/2
28/3 29/2 33/6 34/3
36/8
Evidence.com [4]
8/18 8/19 17/21
18/5
exactly [3]   5/25
6/2 29/24
example [4]   5/14
28/25 29/3 32/22
exclude [1]   3/5
exculpatory [11]
4/17 4/25 5/13 10/7
13/6 28/2 29/2
31/21 32/1 32/25
33/8
exhaustive [1]   3/15
exhibit [2]   21/1
22/2
exhibits [14]   6/7
6/7 6/22 6/24 6/25
7/13 7/15 14/16
14/19 21/22 21/24
22/3 22/5 23/1
exists [1]   4/22
expect [1]   26/1
expected [1]   24/20
expecting [1]   35/7
explain [3]   5/19
11/24 17/16

explained [3]   5/10
5/14 34/3
explains [1]   29/12
extend [2]   30/11
31/11
extent [2]   11/7
23/3
extraordinary [2]
14/1 34/22
extremely [7]   7/25
8/2 11/23 12/20
22/15 22/23 31/21
eye [1]   15/11

## F

F.Supp.3d [1]   19/17
facing [1]   16/12
fact [5]   8/2 10/25
11/13 22/23 27/24
factor [3]   33/20
33/21 33/21
facts [3]   28/4 28/5
40/3
factual [1]   10/10
fail [1]   32/6
failing [1]   34/21
fair [1]   33/14
fairly [1]   36/8
far [1]   10/22
fashion [1]   29/8
fault [1]   9/18
FBI [1]   19/12
Federal [6]   8/20
18/1 18/3 18/6 18/8
30/23
few [5]   2/18 13/19
19/18 24/3 27/2
fight [1]   36/16
figure [3]   6/17 9/3
25/2
file [5]   2/21 19/7
25/11 25/12 26/17
filed [3]   3/21 5/9
9/1
filing [1]   13/20
finally [2]   7/6
22/9
find [9]   12/16
12/19 19/10 24/11
29/18 30/1 30/4
30/5 34/20
fine [6]   17/19 18/2
35/11 37/24 38/25
39/5
firm [1]   12/1
first [5]   5/21 5/24
25/21 27/1 32/18
fist [1]   5/5
fits [1]   26/7
flag [4]   12/23
12/24 12/24 26/8
flagged [1]   5/3
flagging [1]   34/14
Floor [1]   1/18
fly [1]   15/11
focused [1]   22/15
folks [3]   34/10
35/5 40/7
follow [1]   10/21
followed [1]   15/8

**F**

following [1]  6/15
footage [17]  3/24
  7/5 7/17 8/15 9/13
  10/1 11/13 15/13
  15/15 22/11 22/16
  26/15 26/16 29/6
  29/6 30/11 30/12
For the Defendant [1]
  1/16
force [1]  17/17
forced [1]  19/22
foregoing [1]  41/4
foremost [1]  5/21
forever [1]  17/15
form [1]  7/7
forthcoming [1]
  14/17
found [3]  19/1 22/8
  24/9
FPD [1]  9/9
frankly [2]  6/14
  37/16
Friday [5]  7/7
  21/24 22/9 38/2
  38/22
friendly [1]  10/15
frustration [2]
  25/6 37/19
fully [1]  39/24
functionality [1]
  28/13
functioning [1]
  37/13
funded [1]  8/18

**G**

gates [1]  25/4
gave [3]  6/25 7/1
  7/25
general [2]  28/1
  33/3
generally [2]  21/14
  23/15
given [3]  8/5 10/10
  20/2
giving [2]  28/12
  32/12
goal [1]  32/2
goes [4]  7/2 16/17
  22/24 38/16
good [12]  2/5 2/7
  2/8 2/10 2/12 2/13
  2/13 2/15 2/17 12/3
  35/18 38/4
Government [69]
Government's [16]
  2/19 2/21 10/14
  13/3 16/18 17/8
  17/10 17/23 18/7
  18/18 19/25 20/6
  25/10 35/12 39/12
  39/15
GPS [1]  29/17
grant [2]  25/10
  39/13
granted [2]  19/20
  19/21
granting [1]  24/16

great [1]  34/24
greater [1]  34/25
GRIFFIN [23]  1/6
  2/3 2/12 2/17 13/16
  15/8 15/19 18/14
  19/3 19/22 21/15
  24/13 26/17 29/23
  29/24 29/25 31/9
  34/6 34/8 35/22
  37/3 37/20 39/9
Griffin's [4]  16/16
  21/9 26/13 34/7
ground [1]  40/3
group [1]  3/15
guess [4]  2/22 3/1
  3/4 24/15

**H**

hang [1]  23/17
happen [2]  27/17
  36/5
happened [2]  6/20
  30/9
happening [1]  33/4
happy [4]  13/1
  13/12 23/12 38/17
hard [3]  12/7 12/10
  31/7
haystacks [1]  13/10
hear [5]  13/2 13/12
  25/7 30/16 37/3
heard [2]  14/10
  18/9
hearing [10]  4/3
  4/18 27/4 38/1 38/8
  38/8 38/11 39/2
  40/8 41/7
held [3]  22/6 23/1
  33/9
hell [1]  40/1
help [1]  29/19
helpful [1]  9/22
helping [1]  28/15
here's [2]  22/3
  24/10
hide [2]  35/2 35/3
hiding [1]  35/1
high [2]  8/5 40/1
highlighted [1]
  32/3
himself [1]  31/9
historic [1]  30/21
hold [1]  31/5
holding [1]  28/3
honestly [2]  12/13
  22/15
Honor [28]  2/2 2/5
  2/8 2/15 5/7 14/24
  16/20 17/22 18/2
  21/8 21/21 23/25
  26/8 26/10 26/24
  28/23 31/8 32/6
  33/11 35/15 35/21
  38/7 38/19 38/23
  39/8 39/19 39/21
  39/24
HONORABLE [1]  1/9
HOOK [3]  1/22 41/3
  41/14
hope [2]  21/19

22/21
hopefully [1]  4/1
hot [3]  12/2 12/11
  28/24
hours [9]  3/23 3/25
  22/16 26/15 30/4
  30/12 30/13 32/23
  34/5
hundreds [7]  15/23
  19/13 31/14 31/16
  31/16 31/17 37/8
hunted [1]  30/18

**I**

IAD [1]  32/18
identification [3]
  23/20 26/10 27/21
identified [11]
  3/19 14/5 15/4
  18/13 19/25 21/1
  23/20 30/8 30/18
  30/19 34/7
identify [15]  6/20
  19/1 19/15 24/6
  24/8 26/16 26/20
  28/17 28/24 29/2
  29/19 31/18 32/6
  33/24 34/8
ii [1]  17/6
images [2]  25/1
  25/3
imagine [1]  11/4
impeachment [2]
  4/17 4/25
implied [1]  9/14
importance [1]
  24/18
important [5]  17/18
  21/11 22/10 22/24
  25/8
improperly [1]  8/8
inability [1]  17/12
inclined [2]  27/2
  27/8
include [4]  6/8
  14/11 15/9 29/3
included [1]  3/8
including [3]  4/5
  9/17 9/23
inconsistent [2]
  28/5 28/18
incorrect [1]  28/21
incredibly [1]  27/6
increments [1]
  29/11
indicating [1]  3/10
indict [1]  16/12
indicted [1]  16/11
indiscreet [1]
  20/20
individual [1]  10/1
information [28]
  4/12 5/12 5/15 8/8
  10/12 10/18 10/24
  11/1 11/2 11/5 11/8
  17/13 18/1 18/6
  18/10 18/25 19/25
  21/10 27/18 28/7
  28/9 29/16 29/17
  30/18 30/19 32/11

34/5 34/7
informs [1]  13/16
innocence [1]  10/10
Instagram [2]  6/10
  6/14
instance [1]  8/19
instructed [1]  7/13
intend [1]  35/2
intends [1]  34/18
intent [2]  32/2
  32/15
interacting [1]
  25/6
interactions [1]
  9/15
interest [1]  12/19
interested [4]  9/24
  10/12 24/13 29/22
interesting [1]
  10/20
interior [1]  31/11
interject [1]  35/23
internal [1]  5/22
interns [1]  29/4
interviews [5]  4/7
  7/25 7/25 21/5 21/6
into [15]  3/8 4/19
  5/17 5/17 6/11 7/7
  8/4 8/8 11/13 11/20
  13/23 17/15 18/2
  25/3 31/12
introduce [1]  2/4
investigate [1]
  6/21
investigating [1]
  20/23
investigation [3]
  4/21 16/10 23/18
investigations [3]
  3/8 3/18 5/23
investigative [1]
  21/4
investigator [1]
  6/16
investigators' [1]
  20/23
involve [1]  25/23
involved [4]  9/25
  16/10 37/8 37/8
issue [10]  8/7
  23/19 25/19 26/9
  26/11 27/21 28/7
  28/23 34/4 34/15
issued [1]  27/24
issues [1]  23/21
item [1]  7/11
items [2]  7/3 12/16
iv [1]  27/7
IYENGAR [15]  1/12
  2/6 2/7 2/23 4/11
  7/21 8/13 9/1 12/17
  13/8 19/2 25/12
  35/9 35/17 39/17

**J**

jail [2]  37/17
  37/18
JANANI [2]  1/12 2/5
January [2]  25/19
  36/10

**J**

January 6th [2]
  25/19 36/10
JEFF [3]   1/22 41/3
  41/14
job [2]   28/8 33/2
judge [32]   1/10
  2/12 13/13 14/14
  15/7 15/10 15/21
  15/24 16/2 17/17
  17/18 18/23 18/25
  19/6 19/11 19/14
  19/19 20/3 20/19
  23/13 23/19 26/6
  26/12 26/23 27/23
  27/23 31/4 33/12
  34/9 34/17 34/20
  36/8
judicial [1]   36/24
jury [1]   35/7
justice [3]   17/4
  17/9 37/11

**K**

keep [1]   19/24
kept [1]   21/14
kind [6]   10/17
  10/18 13/14 15/12
  34/11 40/2
kinds [2]   9/23
  20/25
knock [1]   36/16
knowing [2]   10/6
  32/14
knowingly [1]   12/24
knowledge [1]   26/21
known [1]   19/15
knows [6]   13/8
  15/10 16/1 19/11
  21/12 29/24

**L**

language [1]   10/2
large [2]   5/11
  33/20
largely [1]   10/16
larger [2]   13/15
  28/2
last [6]   3/4 4/2
  4/18 7/7 15/24
  21/24
late [2]   2/21 25/11
law [5]   12/1 17/11
  21/13 30/14 32/10
lawful [2]   18/15
  18/20
lawyers [1]   22/11
learning [1]   8/22
least [2]   3/12 3/18
leave [2]   2/21
  25/11
lengthy [2]   6/6
  7/25
less [3]   10/24 13/3
  20/12
letting [1]   11/5
licenses [4]   8/23
  8/24 9/5 18/4
life's [1]   36/18

lifting [1]   14/25
likely [4]   13/22
  15/15 30/19 34/20
limit [1]   40/2
limitations [2]
  31/2 41/9
limited [1]   28/4
limitless [1]   22/18
line [3]   19/6 21/11
  24/1
lines [2]   6/1 10/13
link [1]   22/2
list [4]   7/15 7/19
  22/14 22/20
literally [2]   19/23
  25/21
litigation [1]
  33/22
live [1]   36/9
local [3]   24/17
  24/24 36/3
long [3]   17/15 23/5
  27/15
longer [3]   23/1
  24/20 37/18
look [8]   6/12 12/8
  17/18 27/13 32/22
  33/4 33/6 33/17
looking [4]   10/1
  12/14 18/11 25/17
looks [1]   17/22
lot [3]   7/3 7/24
  11/21
lying [1]   33/11

**M**

mail [1]   3/10
main [1]   15/18
makes [3]   11/3
  15/18 22/4
making [2]   17/23
  17/25
manner [1]   22/1
many [9]   5/14 8/2
  9/21 23/18 24/2
  27/18 30/13 37/5
  37/16
map [2]   29/14 30/3
March [13]   25/18
  25/25 27/10 35/5
  35/16 36/13 37/21
  38/1 38/2 38/19
  39/1 39/24 40/1
March 11th [2]   38/2
  38/19
March 21st [4]   35/5
  35/16 37/21 38/1
March 26th [1]   39/1
mass [2]   28/3 28/15
material [23]   4/16
  4/20 5/13 8/6 9/21
  10/7 13/4 13/6 14/8
  15/10 19/15 19/15
  22/23 26/14 27/16
  28/15 28/17 30/9
  31/20 33/7 33/24
  33/25 34/12
materials [9]   3/4
  3/11 3/12 3/16 3/17
  3/20 5/11 21/20

26/2
matter [2]   25/17
  41/6
max [1]   35/8
may [11]   5/4 5/8
  5/12 6/14 9/17 11/9
  12/19 26/24 27/8
  31/14 35/21
maybe [1]   9/18
McFADDEN [1]   1/9
mean [4]   11/23
  38/11 38/13 39/3
meaning [1]   12/19
means [2]   17/15
  29/22
meant [2]   9/20 14/9
meantime [1]   17/2
meat [1]   3/3
media [10]   11/15
  14/25 15/3 17/20
  20/24 21/3 26/16
  30/13 36/4 36/13
Meek [1]   12/6
meets [2]   17/5 17/5
Mehta [1]   15/24
memo [4]   3/21 3/22
  8/25 28/13
memoranda [1]   20/23
mens [1]   18/16
mention [1]   13/19
mentioned [1]   21/23
merely [1]   21/4
message [1]   7/16
Metro [2]   21/11
  21/12
mid [2]   25/18 25/25
might [14]   5/12
  9/24 10/12 10/24
  14/7 15/10 15/25
  20/11 22/19 29/20
  30/8 31/20 31/21
  39/23
MILLER [26]   1/13
  2/9 2/10 4/21 5/2
  11/3 13/10 13/18
  14/3 14/8 14/11
  14/12 14/22 18/12
  18/21 19/1 20/17
  21/5 21/18 28/20
  30/17 31/6 34/3
  35/2 37/5 39/22
Miller's [1]   25/5
millions [2]   19/8
  23/25
mind [1]   25/1
minute [3]   12/14
  29/11 32/22
minutes [4]   20/22
  29/15 33/13 34/4
mischaracterized [1]
  23/9
mischaracterizing [1]
  10/14
misconduct [4]   5/16
  5/23 20/23 23/16
misdemeanor [2]
  36/11 36/12
misfortune [1]
  37/10
misimpression [1]

9/7
misrepresented [1]
  23/9
moment [1]   24/14
Monday [1]   38/1
monitor [1]   27/5
monsters [1]   24/8
month [1]   13/17
months [5]   11/22
  13/17 16/2 25/21
  35/25
more [7]   4/22 13/3
  15/12 16/11 20/10
  30/12 31/3
morning [1]   22/8
most [4]   11/4 12/16
  24/13 25/23
mostly [2]   4/7
  34/11
motion [24]   2/19
  2/20 2/21 2/22 3/2
  3/3 3/4 5/9 5/19
  6/2 9/13 19/19
  19/21 24/15 25/10
  25/16 38/1 38/8
  38/8 38/10 38/12
  39/12 39/13 39/15
motions [4]   13/21
  15/22 38/9 38/14
move [2]   19/24
  24/12
moved [2]   6/1 14/20
movie [1]   4/5
moving [6]   3/6 5/5
  6/13 14/6 17/16
  18/13
MPD [1]   32/18
Mr. [51]
Mr. Griffin [20]
  2/17 13/16 15/8
  15/19 18/14 19/3
  19/22 21/15 24/13
  26/17 29/23 29/24
  29/25 31/9 34/6
  34/8 35/22 37/3
  37/20 39/9
Mr. Griffin's [4]
  16/16 21/9 26/13
  34/7
Mr. Smith [26]   3/10
  4/5 5/3 6/3 13/1
  20/4 20/15 21/19
  22/18 23/2 23/8
  25/11 25/17 26/3
  29/22 30/22 31/5
  31/20 32/7 32/12
  35/14 35/20 37/20
  38/6 39/6 39/20
Mr. Smith's [1]
  24/25
Ms. [38]   2/7 2/10
  2/23 4/11 4/21 5/2
  7/21 8/13 9/1 11/3
  12/17 13/8 13/10
  13/18 14/3 14/8
  14/11 14/12 14/22
  18/12 18/21 19/1
  19/2 20/17 21/5
  21/18 25/5 25/12
  28/20 30/17 31/6

**M**

Ms.... [7]   34/3
35/2 35/9 35/17
37/5 39/17 39/22
Ms. Iyengar [13]
2/7 2/23 4/11 7/21
8/13 9/1 12/17 13/8
19/2 25/12 35/9
35/17 39/17
Ms. Miller [24]
2/10 4/21 5/2 11/3
13/10 13/18 14/3
14/8 14/11 14/12
14/22 18/12 18/21
19/1 20/17 21/5
21/18 28/20 30/17
31/6 34/3 35/2 37/5
39/22
Ms. Miller's [1]
25/5
much [3]   11/1 28/4
37/18
multiple [1]   4/4
must [2]   26/16
26/19

**N**

national [1]   36/4
nature [6]   3/6 8/2
8/5 8/7 10/14 20/21
nearly [1]   21/10
neatly [1]   18/17
necessarily [1]
12/9
necessary [1]   17/10
need [10]   7/4 7/15
8/11 9/2 24/7 25/5
27/19 27/19 35/6
38/14
needles [1]   13/9
needs [5]   11/21
22/10 24/8 33/6
33/16
negotiations [1]
4/9
next [7]   13/24
13/25 18/23 22/21
25/21 27/12 32/6
NICHOLAS [2]   1/16
2/11
nine [1]   35/25
non [1]   16/14
none [1]   21/7
nonviolent [1]   33/1
NOTE [1]   41/7
noted [1]   28/13
notwithstanding [1]
22/18
number [6]   8/6 21/1
21/23 23/9 33/20
39/12
NW [2]   1/14 1/24

**O**

objection [2]   22/22
39/13
objectively [3]
19/16 33/25 34/12
obligation [4]   13/4

obligations [4]
13/23 16/25 23/24
32/16
obvious [2]   12/12
24/5
obviously [7]   3/16
5/10 6/22 8/11 11/4
26/1 32/8
occurred [1]   41/7
October [6]   38/22
38/24 39/3 39/14
40/6 40/8
October 26th [4]
39/3 39/14 40/6
40/8
October 29th [1]
38/22
off [3]   16/8 22/2
34/11
office [9]   1/13
3/16 18/1 18/4 18/7
18/9 29/4 30/23
30/24
officer [2]   6/13
6/20
officer's [1]   29/11
officers [19]   3/6
3/9 3/14 5/4 5/16
6/1 6/2 7/24 10/15
10/16 11/5 14/6
14/25 15/5 18/17
21/7 25/3 30/1
32/19
official [2]   1/23
41/3
offs [1]   16/10
often [1]   6/8
old [1]   25/22
older [1]   25/23
once [4]   16/9 23/24
32/11 35/24
one [14]   10/2 11/15
14/1 15/7 15/18
22/2 26/4 27/22
30/7 31/1 33/15
33/20 37/7 38/24
one-off [1]   22/2
ones [1]   24/3
ongoing [1]   3/18
only [8]   11/19 17/8
21/24 27/10 29/6
34/9 37/15 40/5
onto [2]   9/16 16/6
open [5]   19/7 23/22
26/9 26/9 26/17
OPR [9]   7/23 7/24
11/7 14/9 14/24
20/15 21/4 22/4
32/17
order [2]   33/17
34/16
organize [1]   29/16
organized [1]   29/11
others [4]   13/7
15/14 20/9 33/18
out [23]   6/17 7/15
9/3 11/8 11/9 11/10
12/18 14/6 21/13
22/8 22/10 22/15

24/5 28/16 32/10
25/12 25/13 27/4
30/1 30/18 31/12
33/3 33/15
outcome [1]   38/16
outlines [1]   3/22
outset [1]   11/25
outside [1]   21/13
over [30]   3/24 4/14
5/11 6/5 6/6 6/23
8/1 8/9 8/14 8/17
9/7 10/5 10/17
11/10 11/11 12/22
13/4 13/6 13/7
21/22 21/25 24/18
25/5 25/8 29/21
31/13 32/12 32/13
32/17 36/14
overall [1]   4/21
own [4]   10/11 10/21
29/14 30/1

**P**

p.m [2]   1/6 40/9
page [1]   13/3
pages [4]   6/6 15/23
19/8 23/25
pandemic [2]   25/20
41/8
paralegals [1]   29/4
parallel [1]   33/22
part [7]   3/12 5/8
5/11 11/18 24/16
24/16 37/6
participation [2]
4/6 4/8
particularly [6]
12/3 12/3 20/12
25/2 25/3 33/8
parties [2]   26/12
38/14
passing [1]   31/13
past [2]   23/10 34/4
peaceful [1]   10/16
penalize [1]   32/9
pending [1]   20/12
people [20]   5/17
10/16 11/6 11/14
15/1 15/5 16/9
16/11 16/15 22/2
25/3 29/4 29/19
30/4 33/1 36/6
36/18 37/9 37/16
37/17
people's [1]   31/15
perfectly [1]   24/4
permitted [1]   18/15
person [1]   31/23
personally [4]   4/15
4/19 19/2 19/4
perspective [1]
35/12
pervasive [1]   27/25
phenomenon [1]
15/12
phones [2]   11/15
11/16
photographer [1]
15/9
photographs [5]

18/12 20/17 20/25
21/3 22/11
pick [4]   18/17
25/25 35/6 38/21
picture [2]   6/13
7/22
pictures [1]   21/20
piece [1]   37/1
piecemeal [3]   22/1
23/3 23/5
pieces [1]   17/16
place [1]   9/19
places [1]   31/13
Plaintiff [1]   1/4
plan [2]   12/21
28/10
platform [1]   8/18
plausible [1]   15/21
playable [1]   7/7
players [1]   7/4
plea [2]   4/9 16/21
please [2]   2/4 41/7
PLLC [1]   1/17
point [8]   5/1 21/8
24/22 24/24 27/18
28/11 33/14 33/17
points [4]   7/21
15/7 15/18 27/2
police [26]   3/7 3/9
4/1 5/4 5/22 6/12
6/23 9/15 10/15
10/15 14/6 14/10
14/16 14/18 14/25
15/5 15/16 18/13
18/17 20/24 21/4
21/6 21/10 21/11
21/12 21/14
poor [1]   5/8
position [11]   10/19
19/19 19/21 20/6
23/22 26/13 26/19
31/23 34/9 36/2
39/25
possession [2]   9/8
19/5
possible [3]   22/24
25/9 33/5
possibly [1]   30/5
potential [1]   13/9
potentially [3]
6/18 13/6 32/20
practical [1]   25/17
pray [1]   36/17
precedent [2]   26/22
33/19
prejudice [1]   25/14
premises [2]   5/18
9/17
preparation [1]
17/11
prepare [1]   31/1
prepared [3]   13/22
26/10 39/23
press [1]   6/15
presumptive [1]
38/13
pretrial [2]   38/9
38/11
pretty [4]   6/5
13/25 19/6 23/18

**P**

principle [1]   19/18
print [2]   17/19
18/2
prior [1]   14/4
priority [4]   7/11
7/14 22/13 22/25
probably [2]   13/2
14/23
problem [2]   16/12
22/25
problems [2]   21/23
22/6
proceed [1]   40/4
proceedings [2]
40/9 41/5
process [3]   27/19
27/19 37/15
processed [1]   11/22
processing [2]
21/23 22/7
produce [4]   17/12
17/24 17/25 18/25
produced [7]   2/25
15/16 21/2 21/3
21/7 23/24 36/8
producing [3]   14/19
31/23 33/20
product [1]   28/14
production [5]   9/2
14/11 20/21 21/4
22/3
profile [1]   8/5
project [1]   29/5
promising [1]   12/23
properly [1]   11/16
proprietary [1]   7/4
prosecutor [1]   12/7
protest [1]   10/17
protesters [1]
32/20
protesting [1]
32/24
provide [6]   5/21
23/3 23/4 23/6 26/1
28/14
provided [3]   7/3
8/12 27/13
providing [5]   7/18
12/18 22/23 27/5
28/9
public [9]   8/4 8/20
8/20 18/1 18/4 18/6
18/8 30/23 31/12
publicly [1]   6/9
pull [1]   6/18
punished [1]   36/21
punishment [1]
36/20
purpose [1]   28/14
pursued [1]   16/10
put [7]   7/14 9/17
16/6 16/13 22/13
30/4 31/8

**Q**

quality [1]   11/18
quickly [3]   24/18
25/9 37/13

quite [2]   13/11
15/15
quote [3]   10/4
27/25 28/3
quoted [1]   6/2
quoting [1]   6/3

**R**

racks [2]   5/5 6/1
raise [2]   7/18 34/6
rather [2]   22/3
26/20
re [1]   7/5
re-request [1]   7/5
rea [1]   18/16
read [2]   6/4 22/4
reader [1]   25/1
reads [1]   18/2
ready [3]   23/2
27/13 27/20
really [9]   4/19
12/7 12/11 14/9
16/16 17/4 17/17
21/15 22/10
realm [1]   8/4
reason [3]   15/2
32/17 35/9
reasonable [3]
17/10 17/13 17/14
reasonably [2]   13/5
19/16
reasons [3]   10/5
15/21 39/15
recall [1]   36/1
receive [1]   17/1
received [1]   9/12
receiving [1]   8/6
record [1]   23/8
recorded [1]   29/25
recording [2]   11/14
11/14
recordings [3]   4/4
4/7 21/6
records [3]   3/8 3/8
19/8
redacted [1]   8/12
redacting [2]   8/1
8/9
redirected [1]
19/12
reference [3]   14/24
21/5 21/6
referenced [2]
20/25 21/20
referencing [3]
14/4 14/12 20/18
referring [1]   14/9
refers [1]   17/7
regarding [3]   3/5
3/14 4/8
regardless [1]   20/8
related [3]   5/23
6/18 15/2
relating [1]   19/3
Relativity [2]
17/22 18/5
relevant [8]   11/5
12/16 12/25 13/9
25/2 29/20 31/21
31/25

relying [1]   17/10
remotely [2]   41/5
41/9
removing [1]   25/4
report [6]   6/7
10/21 14/4 14/13
17/23 22/5
reported [1]   41/5
Reporter [3]   1/22
1/23 41/3
reporting [1]   41/9
reports [18]   6/4
6/5 6/7 6/22 7/16
7/23 7/24 14/9
14/16 14/24 17/19
20/16 21/5 21/22
22/4 23/1 32/17
32/18
represented [1]
8/25
representing [1]
24/3
request [3]   3/13
7/5 27/9
requested [6]   3/2
3/3 5/20 5/24 6/21
6/22
requesting [3]   5/15
27/3 30/16
require [1]   33/23
required [2]   28/19
30/14
requires [2]   9/9
17/1
resolution [1]
24/12
resolved [1]   21/24
resource [1]   31/1
resources [2]   22/17
22/18
respect [2]   5/1
8/13
respond [5]   5/20
21/19 23/11 25/15
26/24
response [1]   14/17
responses [1]   14/20
responsive [1]   3/13
restricted [4]   5/18
18/15 18/19 25/4
results [1]   11/19
review [3]   19/10
26/15 29/5
reviewed [2]   20/22
29/7
right [13]   10/19
11/17 13/21 16/13
18/4 19/13 24/10
25/11 30/23 34/17
36/6 37/17 40/7
rights [5]   19/23
19/24 20/3 20/10
20/14
riot [3]   4/21 5/23
16/16
rioters [1]   32/21
rip [1]   36/14
Room [1]   1/24
rule [3]   28/1 33/3
38/15

ruled [1]   28/7
rules [2]   24/17
24/24
run [1]   18/24
running [2]   16/21
16/23

**S**

sad [1]   36/22
Saffarinia [4]
19/17 24/1 27/22
33/18
same [5]   8/10 12/8
12/9 13/3 16/12
satisfies [1]   34/7
saying [11]   11/6
16/4 18/21 19/7
20/16 23/16 27/16
27/17 29/1 30/17
39/22
scoped [2]   11/17
11/19
scouring [1]   19/14
screaming [1]   32/7
search [4]   11/16
24/8 26/19 30/13
searched [1]   11/17
searching [1]   34/3
second [2]   26/4
26/5
section [2]   17/9
17/14
security [1]   15/2
security-related [1]
15/2
seeking [1]   24/19
seems [1]   18/21
sees [2]   6/10 25/8
selectively [1]
16/11
send [2]   6/11 8/11
sending [1]   22/2
sense [3]   11/3 22/4
35/9
sensitive [2]   8/2
15/1
sent [2]   3/10 7/16
sentenced [1]   36/3
September [4]   1/5
3/7 3/21 9/1
September 14th [1]
3/7
September 16 [1]
9/1
September 16th [1]
3/21
set [9]   16/21 16/22
27/2 27/4 27/4
27/10 37/25 38/1
38/20
setting [1]   37/4
seven [1]   13/17
seventh [1]   13/17
shame [1]   36/5
share [1]   15/3
show [5]   11/10
16/15 29/23 32/25
33/10
showing [4]   11/5
14/5 15/5 24/21

**S**

shown [2]   15/23 25/13
shows [3]   14/25 29/12 29/13
shreds [1]   36/14
side [1]   32/24
sift [1]   3/17
significant [3]   10/24 21/16 38/15
significantly [2]   31/2 34/25
similar [2]   25/15 25/16
simple [2]   18/14 29/1
sitting [1]   13/8
slip [1]   30/20
small [1]   33/21
SMITH [32]   1/16 1/17 1/17 2/12 2/13 2/14 3/10 4/5 5/3 6/3 13/1 20/4 20/15 21/19 22/18 23/2 23/8 25/11 25/17 26/3 29/22 30/22 31/5 31/20 32/7 32/12 35/14 35/20 37/20 38/6 39/6 39/20
Smith's [1]   24/25
smoothly [1]   17/16
social [6]   11/15 14/24 15/3 20/24 26/16 30/13
solitary [1]   36/11
somebody [1]   6/10
somehow [2]   5/17 9/15
someone [2]   6/11 23/15
sometimes [2]   6/9 12/12
somewhat [1]   20/10
somewhere [1]   32/24
soon [4]   9/1 13/4 14/17 22/24
Sophie's [1]   20/3
sorry [2]   38/10 39/4
sort [6]   4/18 9/14 17/15 23/6 23/16 34/15
sounds [2]   13/5 20/15
sourced [1]   6/9
speak [3]   4/21 32/15 40/2
specific [2]   12/18 23/11
specifically [5]   5/3 14/15 18/12 24/8 32/18
speedy [19]   3/5 5/10 16/4 16/21 16/23 17/2 17/17 18/24 19/22 20/2 20/6 20/9 20/14 23/19 36/7 39/14

spent [1]   36/11
spreadsheet [1]   29/10
stack [1]   18/17
stand [2]   2/23 36/17
standard [2]   26/22 33/10
start [2]   3/1 31/10
starting [1]   2/4
state [1]   36/3
stated [2]   3/4 3/23
statement [1]   6/3
STATES [9]   1/1 1/3 1/10 2/3 2/6 2/9 3/7 3/9 3/25
status [14]   1/9 2/18 3/22 4/2 4/18 9/5 14/4 14/13 17/19 17/23 27/4 27/12 28/13 38/22
stay [1]   10/23
step [1]   13/14
steps [1]   36/17
still [2]   3/16 23/20
strawman [1]   33/15
Street [2]   1/14 1/18
streets [1]   31/12
stress [2]   22/22 37/12
stuff [1]   28/10
subject [1]   41/8
substantial [1]   19/6
substantiate [1]   23/16
sufficient [1]   30/20
suggest [1]   25/24
suggested [2]   5/15 37/5
suggesting [1]   20/11
suggestion [1]   5/4
Sullivan [2]   27/23 34/17
summer [1]   13/25
support [1]   22/12
supported [1]   26/22
supporting [1]   10/12
supportive [1]   9/22
suppose [1]   33/1
supposed [1]   8/23
suppress [2]   7/10 12/22
suppressed [2]   28/7 32/11
Supreme [1]   24/17
sure [7]   3/1 7/22 8/16 12/11 32/3 35/1 35/3
surprise [1]   27/14
surveillance [7]   4/1 6/18 7/1 8/14 11/12 30/12 31/10
sympathetic [1]

39/25 40/2 40/5
system [2]   7/1 37/11

**T**

tag [2]   12/10 32/8
tagging [1]   12/2
talk [1]   35/5
talked [1]   7/17
talking [2]   30/25 31/5
team [6]   4/20 7/14 7/18 22/9 22/19 22/22
technological [2]   22/6 41/9
technology [1]   25/6
television [1]   6/19
telling [2]   7/2 13/21
term [1]   14/8
terms [7]   2/24 3/19 4/24 9/11 11/17 28/12 29/13
thanks [2]   11/3 40/7
theory [2]   18/14 31/22
therefore [3]   32/9 33/11 41/8
therein [2]   5/10 9/23
though [1]   28/21
thought [2]   9/22 28/20
thousands [13]   11/13 15/11 19/13 22/15 26/15 29/19 30/3 31/9 31/16 31/17 31/17 34/5 37/9
thousands of [1]   31/16
three [6]   7/5 7/8 25/21 32/23 33/21 36/11
throwing [1]   22/17
timeline [1]   18/3
timely [1]   17/12
times [3]   7/3 7/5 31/14
tip [3]   6/8 6/9 6/10
today [4]   2/19 26/11 36/6 39/16
together [1]   30/4
told [4]   10/6 15/24 22/8 22/9
toll [2]   17/2 39/14
tolled [1]   40/5
tolling [2]   17/3 17/4
took [2]   29/8 30/3
tool [1]   19/23
tools [3]   12/15 28/12 32/12
top [4]   7/14 7/19 22/13 22/20
totally [1]   28/5
towards [2]   19/12

24/12
trade [2]   16/8 16/10
trade-off [1]   16/8
trade-offs [1]   16/10
transcript [2]   1/9 41/4
transferring [1]   3/23
tremendous [1]   37/12
trespass [1]   36/12
TREVOR [1]   1/9
trial [37]   3/5 5/10 13/20 16/4 16/17 16/21 16/23 16/24 17/2 17/17 18/24 19/22 20/2 20/6 20/10 20/14 23/19 23/23 24/11 25/18 25/25 26/6 27/2 27/4 35/5 35/6 36/7 36/13 36/21 37/18 37/21 37/25 38/16 39/14 39/25 40/2 40/5
trials [4]   13/21 13/24 25/20 25/22
tried [1]   36/2
true [1]   41/4
truly [1]   5/9
truth [1]   10/5
try [5]   6/17 12/16 19/24 24/14 29/16
trying [15]   5/19 7/9 7/10 9/12 11/24 12/5 24/11 28/21 28/24 29/1 29/12 29/18 30/25 37/12 37/14
Tuesday [1]   39/1
turn [15]   5/11 6/5 6/23 8/1 8/9 9/7 11/11 12/22 13/4 13/7 21/22 21/25 25/8 29/21 32/11
turned [7]   4/14 6/6 10/5 10/17 11/10 13/6 36/18
turning [4]   8/14 8/17 24/18 32/17
two [7]   12/8 17/19 22/21 27/1 30/25 33/21 35/13
type [3]   3/14 11/7 26/18
types [1]   16/1
typically [1]   37/14
typo [1]   9/18

**U**

U.S [10]   1/13 1/23 5/22 6/11 6/23 15/15 20/24 21/3 21/10 30/24
under [7]   3/5 9/6 27/7 28/1 28/16 32/10 37/11
understands [1]

## U

understands... [1]
27/15
understood [2]   8/16
13/1
unfair [1]   36/22
unfortunately [3]
6/25 36/9 38/23
unfounded [1]   8/3
UNITED [9]   1/1 1/3
1/10 2/3 2/6 2/9
3/7 3/9 3/25
unjust [1]   36/22
unknowns [1]   27/18
unlikely [1]   10/11
unlimited [1]   17/13
unusual [2]   17/6
17/7
up [7]   5/8 16/15
18/17 28/11 29/16
31/10 37/11
uploading [1]   11/15
upon [1]   29/8
upside [1]   36/19
use [4]   8/22 12/15
15/10 19/23
used [2]   14/8 32/4
useful [1]   16/2
usually [1]   21/12

## V

VA [1]   1/18
vacate [1]   13/21
vaguely [2]   23/15
23/17
value [2]   4/17 4/25
various [2]   13/10
25/7
verbally [1]   20/20
versus [1]   26/9
video [14]   1/9 4/4
4/7 6/10 6/25 8/11
9/13 11/21 15/15
22/7 24/25 32/22
32/23 34/3
videographer [1]
10/21
videos [22]   3/5
3/14 10/11 11/9
14/5 14/12 14/14
14/22 14/23 14/25
16/2 18/11 18/13
19/14 20/17 20/24
20/25 21/3 21/7
21/16 21/19 33/16
view [1]   23/9
viewed [1]   34/5
views [1]   15/14
violation [1]   24/21
violent [2]   33/4
36/15
visibility [1]   4/19
volume [1]   12/13
voluminous [3]   5/11
5/21 29/7
voluntary [1]   33/23

## W

wade [2]   28/15

29/18
wait [2]   26/4 38/20
waiting [2]   23/5
37/18
waivable [1]   20/7
waive [2]   20/1 20/2
waiving [2]   20/5
20/6
walking [1]   31/12
wants [4]   11/1 30/1
30/5 32/21
warrant [2]   11/16
11/18
warrants [1]   30/14
Washington [3]   1/5
1/15 1/25
watch [1]   33/16
water [1]   40/1
wave [1]   8/10
waving [3]   15/1
15/5 25/3
way [14]   7/1 10/2
10/6 12/9 12/14
14/6 22/4 29/6
29/18 31/8 31/12
31/21 32/5 37/7
week [12]   3/24 4/2
7/7 7/18 8/15 8/15
9/2 9/8 15/24 22/14
22/16 22/21
weeks [1]   36/11
weigh [1]   34/16
weren't [1]   21/2
what's [3]   7/23 9/5
12/18
whenever [2]   27/12
36/15
whereas [1]   21/14
wherever [1]   29/2
who's [1]   34/20
within [2]   20/13
28/2
without [2]   18/15
20/19
witnesses [1]   35/13
word [2]   17/13 18/9
words [2]   31/8 32/4
work [12]   7/2 8/17
9/9 17/14 22/9
25/25 28/14 37/22
38/2 39/1 39/6 39/9
working [1]   13/7
works [2]   38/18
38/19
world [2]   8/9 10/11
worn [8]   3/23 8/14
11/12 22/16 29/5
29/18 30/4 30/10
written [1]   34/16
wrong [1]   9/19
wrongdoing [1]   3/9
wrote [1]   10/2

## Y

year [5]   13/24
13/25 18/23 20/12
25/22

## Z

zone [6]   21/15

29/14 29/14 29/15
29/15 30/2
zoom [3]   33/3 39/2
40/8