UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-CR-92 (TNM) |
| v. | : | |
| | : | |
| COUY GRIFFIN, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' MEMORANDUM IN OPPOSITION TO MOTION FOR DISCOVERY AND EVIDENTIARY HEARING IN SUPPORT OF CLAIM OF SELECTIVE ENFORCEMENT AND PROSECUTION

Defendant Couy Griffin seeks discovery and an evidentiary hearing on his claim that the government selectively targeted him for enforcement and prosecution due to his political beliefs.[1] Because Griffin's motion (ECF No. 67) does not satisfy the rigorous standard for discovery in this setting, this Court should deny it.

### FACTUAL BACKGROUND

The government charged Griffin with one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); and one count of disorderly and disruptive conduct, in violation of 18 U.S.C. § 1752(a)(2). ECF No. 14. These charges implicate Griffin's conduct at the U.S. Capitol on January 6, 2021.

*Events at the United States Capitol on January 6, 2021*

On January 6, 2021, a joint session of Congress convened to certify the votes of the Electoral College for the 2020 Presidential Election. At 1:30 p.m., the House and Senate adjourned

---

[1] Griffin's pleading mirrors a similar motion previously filed in *United States v. Ethan Nordean*, No. 1:21-cr-175 (D.D.C.) (ECF No. 267). The government already filed a response opposing this relief in *Nordean* (ECF No. 279).

1

to their respective chambers to resolve an objection. Vice President Michael Pence presided over the joint session and, later, the Senate proceedings.

As the proceedings continued, a large crowd gathered outside the U.S. Capitol. Officers with the United States Capitol Police and the Metropolitan Police Department attempted to keep the crowd away from the building. Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol by, among other things, breaking windows and by assaulting officers as others in the crowd encouraged and assisted those acts. In response to this intrusion, representatives, senators, and Vice President Pence evacuated their respective chambers around 2:20 p.m.

At all relevant times, the United States Capitol building and its grounds—including the Lower West Terrace on the West Front—were closed to members of the public

*Griffin's Actions at the United States Capitol on January 6, 2021*

On January 6, 2021, Griffin and his videographer, Matt Struck, attended President Trump's rally on the Mall. Following the rally, Griffin and Struck walked towards the Capitol. When they reached the Capitol grounds, many metal barricades had been moved and a large crowd had entered the restricted area.

Griffin climbed over a stone wall and entered the lawn on the west front of the Capitol, within the restricted area. He turned to another individual and stated, "This is our house … we should all be armed." Griffin then climbed over a metal barricade surrounding the Lower West Terrace and entered the area below the inauguration platform.

Griffin accessed the inauguration platform, spoke through a bullhorn, and asked the crowd to pray. He then joined in a chant of "Free the people!," turned towards Struck's camera, and stated, "It's a great day for America. The people are showing that they have had enough. People are ready for fair and legal elections, or this is what you're gonna get and you're gonna get more

2

of it." Another individual stated, "We came peacefully," but "we are well armed if we need to be." Griffin responded, "And we're not going anywhere, we aren't taking no for an answer. We're not gonna get our election stolen from us from China. This is an America that's had enough right here."

On January 11, 2021, FBI agents contacted Griffin by phone. Griffin admitted that, upon arriving at the U.S. Capitol, he formed part of the crowd that pushed through barricades. FBI agents also interviewed Struck, who stated that he observed people "where they shouldn't be"—pushing past barriers onto the platform in front of the Capitol.

On January 14, 2021, Griffin, who serves as a county commissioner in New Mexico, attended a recorded county council meeting and stated:

> We walked down the Mall and we were gonna leave. We were in debate to leave or not. I wasn't even going down to the Capitol. I knew that there was a lot of people that were going, but with the news that Mike Pence had just certified the election, that was kinda what the crowd was thinking about. But we thought, well, lets not leave too early, lets go ahead and see what they are doing. We walked down to the Capitol and on the inaugural side when all those people all those Trump people got down there that had just not gotten anything necessarily from the President that was new, and then heard that Mike Pence had certified a fraudulent election, the element in the crowd was pretty elevated, I would say. But when they got down to the inaugural side there was some fencing up. They were saying you couldn't go any further because this was being reserved for Joe Biden and his inauguration. You tell a million Trump supporters that are going down there, pretty soon that crowd just pushed through. I wasn't anywhere in the front of it, I was in the back.

Griffin further stated that he led the crowd in a prayer when he got a bullhorn, "outside the Capitol, but up where the President is inaugurated at."

*Investigation and Prosecutions Relating to Events at the U.S. Capitol on January 6, 2021*

According to a recent Justice Department report, "the investigation and prosecution of those responsible for the attack continues to move forward at an unprecedented speed and scale."

3

*See* Dep't of Justice, One Year Since the Jan. 6 Attack on the Capitol, available at https://www.justice.gov/usao-dc/one-year-jan-6-attack-capitol.  The report states that:

- More than 725 defendants have been arrested.

- More than 225 defendants have been charged with assaulting, resisting, or impeding officers or employees (a felony).

- At least 275 defendants have been charged with corruptly obstructing, influencing, or impeding an official proceeding, or attempting to do so (a felony).

- Approximately 640 defendants have been charged with entering or remaining in a restricted federal building or grounds (a misdemeanor).

- Approximately 40 defendants have been charged with conspiracy (a felony), either: (a) conspiracy to obstruct a congressional proceeding, (b) conspiracy to obstruct law enforcement during a civil disorder, (c) conspiracy to injure an officer, or (d) some combination of the three.

- Approximately 145 have pleaded guilty to misdemeanors; twenty have pleaded guilty to felonies.

- Approximately 70 federal defendants have been sentenced.

## **ARGUMENT**

Griffin's motion fails the threshold evidentiary showing for discovery on a selective-prosecution or enforcement claim.  His request should be denied.

**I.    Legal Framework**

Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted).  This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Id.* at 465.  "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the

case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (citation omitted); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is . . . at its most limited when reviewing the Executive's charging determinations" because "the Judiciary . . . generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).

To overcome that presumption, a defendant must present "clear evidence" that a decision to prosecute was "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464-465 (citation omitted). "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id*. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

Concerned that selective-prosecution inquiries "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," the Supreme Court has also imposed a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent." *Ibid*. (citation omitted). The defendant's evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence." *Id*. at 470. "If either part of the test is failed," the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of United States v. Irish People, Inc*., 684 F.2d 928, 947 (D.C. Cir. 1982).

**II.     Discussion.**

Griffin's motion rests on two allegations: (1) the government charged him more severely than other similarly situated January 6 defendants; and (2) this disparity targets his political beliefs and associations. But Griffin's motion fails to adduce any credible evidence—as *Armstrong* demands—supporting either assertion.

### A. This Court previously rejected Griffin's selective-prosecution allegations.

Griffin previously advanced these same allegations. In his motion to dismiss, Griffin asserted that the government had charged him with Section 1752 offenses in an arbitrary and discriminatory fashion. ECF No. 30, at 19-21. Griffin asserted "hundreds or perhaps thousands of other individuals 'remaining' in the same area" as him, but who "have not been charged under § 1752." *Id*. at 20. He accused the government of bringing Section 1752 charges based on his leadership role in a political action committee named "Cowboys for Trump." *Id*.

This Court rejected Griffin's allegations of discriminatory prosecution. Citing the D.C. Circuit's decision in *Fokker Services*, the Court noted the presumption of regularity attendant to the government's decisions about "when and whether to institute criminal proceedings, or what precise charge shall be made." ECF No. 41, at 12 (quoting 818 F.3d at 741) (attached as Ex. A).

This Court then found that "Griffin c[ame] up short on providing the 'clear evidence' required for this Court to surmount the presumption of regularity." ECF No. 41, at 12. First, the Court dismissed the fact that other individuals who entered the U.S. Capitol grounds on January 6 had not been charged under Section 1752. It "hesitate[d] to credit [Griffin's] unsupported numbers, especially as the Government continues to charge new individuals with offenses related to January 6." *Id*. at 13. Second, the Court rejected Griffin's allegations of impropriety with respect to the government's references to his Cowboys-for-Trump affiliation at a pretrial detention hearing, observing that "detention hearings require the Court to consider the defendant's history

6

and personal characteristics." *Id.*  Third, the Court dismissed as unpersuasive the fact that the government had dropped Section 1752 charges against another January 6 defendant: Christopher Kelly.  It explained: "the Government could rationally forgo federal prosecution as to most trespassers while deciding that Griffin's leadership role in the crowd, position as an elected official, and more blatant conduct at the scene merited him different treatment." *Id.*

Griffin fails to acknowledge the Court's previous ruling or explain his effort to relitigate the issue anew.  On that basis alone, the Court should deny the present motion.  *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995) ("'Law-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court … in earlier phases.").

**B.     In any event, Griffin has failed his initial burden under *Armstrong*.**

Even if the Court elects to reopen the question, the answer remains the same: Griffin has failed to make the threshold showing on either *Armstrong* element.

1.     To obtain selective-prosecution discovery, Griffin must first adduce evidence that "others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted." *Attorney General of the United States v. Irish People, Inc.*, 684 F.2d 928, 946 (D.C. Cir. 1982) (citation omitted).  Griffin fails this showing.

Griffin alleges (ECF No. 67, at 1, 13) that "over 1,000 protesters" are "similarly situated to Griffin and uncharged under § 1752"—namely, "all the protesters in the 'restricted area' who did not enter the Capitol Building or commit a felony offense outside it."  He offers examples (*id.* at 4, 10) where the government accepted misdemeanor pleas from two defendants (Derek Jancart and Frank Scavo) and dropped charges against a third (Christopher Kelly).

7

This Court's previous analysis applies equally to the present argument. As Griffin notes, "over 2,000 protesters were present at the Capitol on January 6 in an area regarded by the government as 'restricted.'" ECF 67, at 12. But most of these individuals have not yet been arrested or charged—not because the government has cleared them of criminal conduct, but because it has had to marshal an unprecedented level of investigatory resources to identify and charge each one. As this Court noted, "the Government continues to charge new individuals with offenses related to January 6." ECF No. 41, at 13. For that reason, Griffin's effort to claim disparate treatment in comparison to an ever-expanding sample size is "unsupportable." *Id*.

Griffin's granular case-level comparisons likewise fail. This Court has already rejected his attempt to analogize his conduct to Christopher Kelly. *See* ECF No. 41, at 13. The same holds for Derek Jancart and Frank Scavo—who entered misdemeanor pleas. Unlike each of them, Griffin whipped up the mob on the West Terrace. As this Court recognized, "[his] leadership role in the crowd, position as an elected official, and more blatant conduct at the scene merited him different treatment." ECF No. 41, at 13. Such considerations represent "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" in Griffin's case. *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997).

2. With respect to *Armstrong*'s second prong, Griffin has failed to adduce any evidence that improper motives undergird this prosecution.

Griffin alleges that the government targeted him for charges because it deems his "political views … contemptible, embarrassing and ignorant." ECF No. 67, at 16. But, as this Court previously observed, Griffin's comparator class—other individuals who assembled on the Capitol steps but who have not faced Section 1752 charges—"presumably … share[s] his 'politics.'" ECF

41, at 13-14. That circumstance negates Griffin's proffered inference that he has been singled out based on his political views and associations.

Griffin also takes issue with the former U.S. Attorney's comments (ECF 67, at 16) about expeditiously charging "internet stars" who engaged in criminal activity on January 6 as part of a larger effort to deter future riotous conduct at the Presidential Inauguration. But such considerations—prioritizing the prosecutions of leaders and readily identifiable individuals with the goal of deterring others who might seek to do the same—reflect precisely the type of decision-making that falls squarely within the province of the Executive Branch. *See Armstrong*, 517 U.S. at 464 ("Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). The former Acting U.S. Attorney's comments accordingly fail to advance Griffin's allegations of discriminatory motive.

      C.     **Griffin's effort to reframe his allegations as a selective-enforcement claim likewise fails**

Griffin alternatively restyles his claim as one of "selective enforcement" and alleges that law enforcement has improperly targeted him for investigation based on his political briefs and associations. ECF 67, at 9-15

As Griffin acknowledges, the D.C. Circuit has not addressed whether a "selective enforcement" claim—the same as a selective prosecution claim but aimed at law enforcement—permits discovery on a lesser showing than is required in *Armstrong*. Three circuits have done so, but only in the particular context of "reverse sting operations" not applicable here. *See United States v. Sellers*, 906 F.3d 848, 850-51 (9th Cir. 2018); *United States v. Washington*, 869 F.3d 192,

219 (3d Cir. 2017); *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (en banc). Others have applied the same requirements as *Armstrong*. *See, e.g.*, *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264-65 (10th Cir. 2006).

In any event, Griffin has failed to articulate a selective-enforcement claim under any circuit's case law. In an effort to show disparity, Griffin's motion references the government's charging decisions, two misdemeanor pleas, and one instance where it dropped charges. These points address solely "how the United States Attorney has exercised prosecutorial discretion" and, accordingly, the traditional *Armstrong* standard for selective prosecution. *Davis*, 793 F.3d at 720.

A selective-enforcement claim requires Griffin to adduce evidence supporting an inference that "*[law] enforcement* had a discriminatory effect and was motivated by a discriminatory purpose. *Sellers*, 906 F.3d at 850 (emphasis added). On that front, Griffin's motion is silent. He presents no facts or statistics regarding the FBI's investigation of January 6, much less evidence that its agents have either pursued or declined to investigate any suspect based on an impermissible consideration. Indeed, the sheer number of arrests to date (725) and this Court's observation about the continuing nature of the investigation (ECF No. 41, at 13) show the FBI's effort to pursue everyone involved in the U.S. Capitol breach.

### D. Griffin's cursory First Amendment allegations lack merit.

Griffin briefly argues that he was exercising his First Amendment rights to free speech and association while on restricted U.S. Capitol grounds. ECF No. 67, at 11-12. To the extent that this cursory discussion seeks relief on the ground that Griffin's prosecution violates his First Amendment rights, the Court should reject the claim based on the reasons set forth by Judge Kelly in *United States v. Ethan Nordean*, 1:21-cr-175 (D.D.C. Dec. 28, 2021) (ECF No. 263). In brief, "[n]o matter Defendant['s] political motivations or any political message [he] wished to express,

this alleged conduct"—trespassing into a restricted U.S. Capitol area and engaging in disorderly conduct—"is simply not protected by the First Amendment." *Id*. at 29; *see also Cox v. Louisiana*, 379 U.S. 536, 555 (1965) (The First Amendment does not allow a "group of demonstrators" to "insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations.").

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the defendant's motion for discovery and an evidentiary hearing be denied.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        UNITED STATES ATTORNEY
                                        D.C. Bar No. 481052

                                        BY:   /s/
                                        KIMBERLY L. PASCHALL
                                        D.C. Bar No. 1015665
                                        JANANI IYENGAR
                                        N.Y.  Bar No. 5225990
                                        Assistant United States Attorneys
                                        Federal Major Crimes Section
                                        555 4th Street, N.W.,
                                        Washington, D.C. 20530
                                        202-252-2650 (Paschall)
                                        202-252-7760 (Iyengar)
                                        Kimberly.paschall@usdoj.gov
                                        Janani.Iyengar@usdoj.gov