UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| v. | ) Case No. 1:21-cr-92-TNM |
|  | ) |
| COUY GRIFFIN, | ) |
|  | ) |
| Defendant. | ) |

**DEFENDANT GRIFFIN'S REPLY IN RESPONSE TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION FOR DISCOVERY AND FOR AN EVIDENTIARY HEARING IN SUPPORT OF HIS CLAIM OF SELECTIVE ENFORCEMENT AND PROSECUTION**

Defendant Griffin's motion for discovery in support of his claim of selective enforcement and prosecution contended that although over 2,000 protesters unlawfully entered the Capitol's restricted area on January 6, according to the government, he is the only one charged under 18 U.S.C. § 1752 who did not enter the Capitol building or allegedly commit a felony outside it. ECF No. 67. Over a year after the event, over 1,000 potential § 1752 misdemeanants remain uncharged (2,000 less the 725 currently charged). Griffin is in a charging set of one.

The government's opposition does not deny this. ECF No. 71. It does not cite one protester charged under § 1752 matching Griffin's alleged conduct. Instead, it argues that the Court's opinion denying Griffin's motion to dismiss the information concluded that he has not been selectively prosecuted. Not so. Griffin's prior motion did not make a selective prosecution argument and the Court's opinion, filed six months ago, did not address the arguments and statistics Griffin raises in the present motion.

1

The rest of the government's opposition is simply summarized. While there may be over one thousand protesters "similarly situated" to Griffin who have not been charged under § 1752, the government's decision to charge him alone cannot be attributable, even in part, to his obnoxious and offensive commentary emphasized in its briefs. The similarly situated "presumably share his politics." Thus, Griffin cannot have been "singled out based on his political views." Rather, he "merited different treatment" from the uncharged because unlike them he expressed his political views—at certain decibel levels. Griffin's political speech was "more blatant conduct." It was "leadership." Criminally blatant leadership. Organizer. ECF No. 71, p. 8.

The mistake here is not hard to see. The government dresses up Griffin's protected political expression in lazy criminal law jargon. Its admission that the expression of his political speech was the basis on which he was selected for charging is another reason to grant Griffin's motion for discovery, or to dismiss the misdemeanor charges now.

### A.   This is Griffin's only selective prosecution motion, so the Court did not previously reject it

The government's primary argument is that the Court has already concluded that Griffin is not selectively prosecuted. ECF No. 71, pp. 6-7. That cannot be the case, as Griffin has filed one selective prosecution motion. This is the one.

The government refers to the last four paragraphs of the Court's opinion denying Griffin's motion to dismiss the Amended Information. *U.S. v. Griffin*, 2020 U.S. Dist. LEXIS 12392, at *17-18 (D.D.C. July 2, 2021). The passage begins by observing that "Griffin complains of discriminatory prosecution." *Id.* at *17. Griffin explained in oral argument on his prior motion that he was not then asserting he was selectively prosecuted. As the Court's opinion goes on to note, selective prosecution involves discerning the criteria that motivated the

2

government's charging decision.  *Id.*  Griffin's motion-to-dismiss argument, however, did not require the Court to determine whether the charging decision was based, even in part, on the offensive exercise of his constitutional rights.  His argument instead concerned vagueness doctrine.  ECF No. 32, pp. 16-20.  True, the Court observed that Griffin "point[ed] to 'hundreds or perhaps thousands of other individuals remaining in the same area' as him on January 6 who have not faced charges under 18 U.S.C. § 1752." 2020 U.S. Dist. LEXIS 12392, at *18-19.  Here too Griffin points to over one thousand protesters similarly situated to him but not charged under § 1752.  But even if there is some conceptual overlap, a significant distinction exists between vagueness doctrine and selective prosecution.

Vague laws offend the due process guarantee of the Fifth Amendment not just because they fail to give ordinary people fair notice of prohibited conduct but because their "standardless[ness] . . . invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  Selective prosecution offends the equal protection component of the Fifth Amendment where the government's charging decision is based not just on the sufficiency of the evidence but on "an unjustifiable [criterion] such as race, religion, or other arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996).  Thus, arbitrary prosecution can involve either or both concepts.  But a determination that a law is vague enough to "invite" arbitrary enforcement does not require the Court to find that the government has based a charging decision on a specifically identified "unjustifiable" charging criterion.  And, on the other hand, the Court may determine that the government is selectively prosecuting a defendant even if the law at issue is not intolerably vague.

Griffin's motion to dismiss argued that the government's novel interpretation of § 1752(c) was vague enough to invite arbitrary enforcement.  If there is no statutorily defined

3

entity with clear responsibility for defining the legally enforceable security perimeter for a Secret Service protectee, Griffin argued, the matter of where a person may lawfully "enter" or "remain" in the indeterminate presence of a protectee is that much more subject to varying standards.  He pointed to hundreds or thousands of protesters near Griffin on January 6 who were not charged under § 1752(a) to show that the uncertainty surrounding the restricted area's gatekeeper invited arbitrary enforcement against him.  But finding for Griffin on that point would not have required the Court to throw back the curtain on the government's internal charging deliberation.[1]

By extension, it does not follow from the Court's conclusion that § 1752(c) is not unconstitutionally vague that it rejected a selective prosecution argument Griffin had not then made.  More to the point here is the reason the Court gave for "hesitat[ing] to credit" Griffin's contention that there were "hundreds or thousands" of other uncharged protesters in the restricted area.  Those were "unsupported numbers" in July 2021, "especially as the Government continue[d] to charge new individuals with offenses related to January 6." 2020 U.S. Dist. LEXIS 12392, at *19.  Six months later, and over a year after the event, the government's opposition tacitly concedes there were indeed over 1,000 protesters in the "restricted area" most or all of whom did not enter the Capitol building and who are not accused of committing felony offenses outside it—and that among those, Griffin is the only one charged under § 1752(a).  This

---

[1] Griffin did not seek judicial review of "'the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings.'" 2020 U.S. Dist. LEXIS 12392, at *18 (quoting *U.S. v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016)).  *Fokker* did not address a selective prosecution argument.  It held that a district court erred in rejecting a joint motion to toll the Speedy Trial Act (STA) in furtherance of a deferred prosecution agreement, where the court did not like the terms.  818 F.3d at 738.  The question whether a court may use the STA to foment a case or controversy unwanted by the parties is not dangerous terrain on which to make a general statement in support of executive discretion.

4

fact is no longer "unsupported"—the government does not contest it.  The Court's July opinion does not decide the outcome here.

### B. Griffin has adduced more than "some evidence tending to show" he is selectively prosecuted and thus discovery is warranted

#### 1. Griffin has shown over 1,000 similarly situated uncharged protesters

As discussed, the government does not dispute that there were over 1,000 protesters in the restricted area on January 6 who have not been charged under § 1752(a).  The government's opposition provides no argument as to why the uncharged are not what they appear to be—"similarly situated" to Griffin.  He has therefore satisfied the first *Armstrong* showing required to obtain discovery from the government.  *Armstrong*, 517 U.S. at 469.

The function of the § 1752(a) offense must be kept in mind.  The offense is unauthorized proximity to a Secret Service protectee.  Not "blatant" speech, or "leadership," or megaphoning, "We're not gonna get our election stolen from China," ECF No. 71, p. 3—it is purely a crime of propinquity.  The defendant got too close (or, in the case here, did not get close at all because the Secret Service protectee was underground and not approachable by Griffin or anyone else).  That is the crime.  On that criterion, which is what makes this a § 1752(a) case and not a newspaper column, the over 1,000 uncharged protesters are not just "similarly situated," they are identically situated.

The government cites the statement in the Court's motion-to-dismiss opinion that "the Government continues to charge new individuals with offenses related to January 6." ECF No. 71, p. 8.  True, Griffin might be the only one charged under § 1752(a) among over one thousand similarly situated protesters, and it may be over a year after the event, but that might change in the future.  One or two more Griffins might pop up in 2023.  If over 1,000 uncharged "comparators" a year on from the criminal event is not even "some evidence tending to"

5

establish *Armstrong*'s "similarly situated" element, it may be better for the Court to directly hold that the decision is something to be cited and not followed.

Finally, the government says that, unlike the "comparator class," "Griffin whipped up the mob on the west terrace." ECF No. 71, p. 8. Helpfully, the government quotes much of Griffin's brief speech on this terrace. *Id.*, pp. 2-3. The Court can see for itself that none of Griffin's words comes close to incitement. He does not encourage anyone to breach the Capitol or commit any other crime. Equating "joining in a chant of 'Free the people!'" with "whipp[ing] up the mob" is exaggeration unworthy of argument in federal court. This is a place where defendants can be sentenced to 20-year mandatory minimums; arguing that Griffin was selected for federal prosecution for announcing "we aren't taking no for an answer" is not just an admission that Griffin was selectively prosecuted, it is also prosecutorial bathos. In any case, the government's premise is mistaken. There are quite a few examples of protesters in the restricted-area comparator class who appear to have saliently incited others to enter the Capitol building—and yet remain uncharged under § 1752(a) a year on.[2] Griffin has therefore adduced, at the least, "some evidence tending to show" uncharged and similarly situated protesters.

> **2.  Griffin has provided "some evidence" that the decision to charge him was motivated by his protected political expression**

Even if there are over 1,000 protesters in the uncharged comparator class, the government next argues, they "presumably shared his politics," so the decision to charge Griffin alone could

---

[2] *E.g.*, *Arizona man went to Washington for day of Capitol riot, appears to talk about plans in video*, AZCentral, Jan. 12, 2021, https://www.azcentral.com/story/news/local/arizona/2021/01/11/fbi-capitol-investigation-arizona-trump-supporter/6624406002/. Griffin does not cite this example to imply that the government was somehow responsible for the actions of this or any other protester, but for precisely the opposite reason: even bona fide protesters in the comparator class who encouraged others to enter the Capitol remain uncharged while Griffin, alone, has been.

6

not have been based on the "unjustifiable [criterion]" of Griffin's exercise of his right to political expression.  ECF No. 71, pp. 8-9.  The government's opposition itself shows this not to be the case.

The government says that Griffin is different from the comparator class because unlike them, he "whipped up the mob." ECF No. 71, p. 8.  Griffin showed above that his speech does not come close to incitement—but the government's argument is revealing.  The government sets out the specific language by which Griffin "whipped up the mob":

> Griffin accessed the inauguration platform, spoke through a bullhorn, and asked the crowd to pray.  He then joined in a chant of "Free the people!," turned towards Struck's camera, and stated, "It's a great day for America.  The people are showing that they have had enough.  People are ready for fair and legal elections, or this is what you're gonna get and you're gonna get more of it. . .And we're not going anywhere, we aren't taking no for an answer.  We're not gonna get our election stolen from us from China.  This is an America that's had enough right here."

ECF No. 71, p. 3.

The Court should be clear that the government is explicitly stating that Griffin was appropriately selected for prosecution on the basis of making the above-quoted remarks at the U.S. Capitol.  In the government's criminal law jargon, this is appropriately to charge Griffin based on "leadership" and "blatant conduct." ECF No. 71, p. 8.  In fact, it is protected speech.

The government's opposition concludes with a stand-alone section on "Griffin's cursory First Amendment allegations." ECF No. 71, p. 10.  The government does not understand.  Selective prosecution occurs where the charging decision is made "at least in part because of, not merely in spite of" an unjustifiable criterion.  *Wayte v. United States*, 470 U.S. 598, 610 (1985).  Such criteria include "a suspect's exercise of constitutional rights through participation in political activity." *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997).  If Griffin was

7

selected for prosecution from the comparator class at least partly because the salient exercise of protected speech set him apart from the comparators, he was selectively prosecuted.

Contrary to the government's apparent assumption, Griffin is not required to successfully mount a facial or as-applied challenge to § 1752(a) in order to establish selective prosecution. The argument is that Griffin's equal protection right under the Fifth Amendment was infringed when he was selected for prosecution under that statute at least in part because of the exercise of his right to expression. If Griffin were required to succeed first in a facial or as-applied challenge to the charge at issue in order to show he was prosecuted at least in part because of the exercise of his protected expression, there would be no need for the selective prosecution doctrine in the first place. In any event, Griffin will show that his speech is protected expression under this Circuit's precedent.

The government quotes from the Court's decision in another January 6 case: "'No matter Defendant's political motivations and any political message [he] wished to express, this alleged conduct is simply not protected by the First Amendment.'" ECF No. 71, p. 10 (quoting *U.S. v. Nordean*, 21-cr-175-TJK, ECF No. 263 (D.D.C. Dec. 28, 2021)). As the government knows, this citation does not do much work.

First, the government omits the line immediately preceding its quote from the *Nordean* opinion. The omission is misleading. The antecedent to "this alleged conduct": "[The Defendants] are charged with conduct involving acts of trespass, depredation of property, and interference with law enforcement, all intended to obstruct Congress's performance of its constitutional duties." 21-cr-175, ECF No. 263, p. 29. By contrast, Griffin is not charged with most of those crimes, and the "trespass" allegation here does not contend—and the speech at issue does not show—he "intended to obstruct Congress's performance of its constitutional

8

duties"—to the extent that means something more than expressing opposition to an act of Congress while on Capitol grounds, a protected activity. ECF No. 31.[3]

Second, unlike the defendant in that case, Griffin did not enter the Capitol building. The place distinction has a constitutional dimension. Two cases omitted from both the *Nordean* decision and the government's opposition here are apposite. *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002); *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972) (three-judge panel) *sum. aff'd* 409 U.S. 972 (1972).

The Court has seen many January 6 cases charging the misdemeanor offense of parading in the Capitol Building. 40 U.S.C. § 5104(e)(2)(G). It has seen far fewer charges of parading on the Capitol Grounds. § 5104(f)(1). Actually, it has seen none. Why has the government not charged the latter offense given so many January 6 protesters on the Capitol Grounds? Are not the government's allegations about Griffin's "blatant" speech, "leadership," and "whipping up" people effectively saying that he was "parading" or "demonstrating" on the Grounds?

There is a very specific reason the government has repackaged that offense as a § 1752(a) violation here. A special panel of this Court held that the parading-on-the-Grounds offense is void on its face on First Amendment grounds. *Jeannette Rankin Brigade*, 342 F. Supp. at 587. Because the Supreme Court summarily affirmed, it is binding precedent. *Lederman*, 291 F.3d at 41.

---

[3] The defendant in *Nordean* did not argue that depredation of property and interference with law enforcement constitute protected expression. Instead, his First Amendment argument concerned the unprecedented application of the obstruction-of-justice crime in § 1512(c)(2) to nonviolent protest that occurred exclusively outside the Capitol building and on ground that has been held a public forum by the D.C. Circuit. If the government were correct that even nonviolent demonstration outside the Capitol in protest of, e.g., legislation constitutes "attempted corrupt influencing of official proceedings," American history's uncharged felons would populate the National Mall several times over. So, the *Nordean* Court addressed an argument the defendant did not make.

Former Congresswoman Jeannette Rankin planned a protest of the Vietnam War at the Capitol. The plan entailed 5,000 protesters "march[ing] in a body from Union Station to the East Front Plaza of the Capitol" where they would protest the war. 342 F. Supp. at 578. (As the Court knows, the East Front Plaza lies within the restricted area in Griffin's case. ECF No. 33, p. 2.) The Chief of the Capitol Police informed Rankin that the march would violate § 5104(f)(1). Rankin sued the Chief, asserting that § 5104(f)(1) was facially invalid. A three-judge court empaneled to consider the constitutional issue agreed. The first question was whether there is a First Amendment "right to assemble in the Capitol Grounds." *Id.* at 583. The answer is yes, "The Capitol Grounds (excluding such places as *the Senate and House floors, committee rooms,* etc.)" is a public forum. *Id.* at 584 (emphasis added). The court explained the difference between criminalizing parading near courthouses and the circumstances at the Capitol:

> [T]he integrity of the judicial process could not survive in an atmosphere of mob excitement. But while traditionally, the judiciary does not decide cases by reference to popular opinion, the fundamental function of a legislature in a democratic society assumes accessibility to such opinion.

342 F. Supp. at 584 (cleaned up).

The second question: the extent to which the government may reasonably regulate the time, places and manner in which assembly may take place in a public forum like the Capitol Grounds. Here, the court held, "the rights to free speech and assembly may not be abridged in the guise of regulation, and the state interest which may supersede these rights must '[rise] far above public inconvenience, annoyance, or unrest . . . There is no room under our Constitution for a more restrictive view.'" 342 F. Supp. at 584 (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949)). The court settled on the balancing test in *United States v. O'Brien*, 391 U.S. 367 (1968), under which state restrictions on expression are valid if (1) the regulation furthers an important or substantial government interest, (2) the governmental interest is unrelated to the

10

suppression of free expression, and (3) the incidental restriction on First Amendment rights is no greater than is essential to the furtherance of that interest. 342 F. Supp. at 584 (citing *O'Brien*, 391 U.S. at 367).

Section 5104(f)(1) failed the *O'Brien* test because the "desire of Congress" for "serenity" was overbalanced by "the principles of the First Amendment, whose 'function . . . under our system of government is to invite dispute,' and which 'may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.'" 342 F. Supp. at 585 (quoting *Terminiello*, 337 U.S. at 4).

Similarly, in *Lederman* the D.C. Circuit considered a Capitol Grounds regulation that banned "demonstration activity" near the Capitol building. 291 F.3d at 39. Here is what "demonstration activity" meant:

> ***Parading, picketing***, leafleting, holding vigils, sit-ins, ***or other expressive conduct or speechmaking that conveys a message supporting or opposing a point of view and has the intent, effect or propensity to attract a crowd or onlookers***, but does not include merely wearing Tee shirts, buttons, or other similar articles of apparel that convey a message.

*Id.* (italics and emboldening added).

Lederman approached the "foot of the Senate steps on the Capitol's East Front." 291 F.3d at 39. Carrying a sign that read "Stop Arresting Artists," he distributed leaflets to passerby and harangued them about a lawsuit. Capitol Police informed him that he could not demonstrate at the foot of the steps but that he could continue "if he moved to the lawn on the far side of the paved East Front—still in the central part of the Capitol Grounds but approximately 250 feet from the Capitol." *Id.* at 40. Lederman refused, continuing to demonstrate at the Capitol steps.

After his arrest, Lederman challenged the demonstration ban as facially unconstitutional. The court of appeals began its analysis with the observation that "courts have long recognized

11

that the Capitol Grounds *as a whole* meet the definition of a traditional public forum." 291 F.3d at 41 (emphasis added). More specifically, the *Lederman* Court adopted the definition of "grounds" used in *Jeannette Rankin Brigade*: "grounds" means the "Grounds (excluding such places as the Senate and House floors, committee rooms, etc.)," i.e., fora not inside the building. *Id.* The government argued that the East Front sidewalk (immediately below the Senate steps) was different from the rest of the Grounds because it "abuts the Capitol Building," "ha[d] never been available to the public for expressive activity," was "not consistent with public debate and assembly," and its "function as a security perimeter around the Capitol is equally incompatible with public use." 291 F.3d at 43. The D.C. Circuit rejected all this. The government failed to show that the sidewalk's use was "overwhelmingly specialized." *Id.*[4]

The government has made no argument whatever that the steps on the Capitol's west front, where Griffin led a prayer, are not a public forum under *Jeannette Rankin Brigade* and *Lederman*. The speech on which it explicitly states the decision to select Griffin for charging from the comparator class was based does not come close to incitement. *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (forbidding the proscription of advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action). Rather, Griffin's was "speechmaking" that had "the intent, effect or propensity to attract a crowd or onlookers." *Lederman*, 291 F.3d at 39.

Again, the Court need not address whether § 1752(a) is facially invalid under these decisions as a time, place and manner restriction. The equal protection question here is whether the government's decision to charge Griffin was based, even in part, on the exercise of a

---

[4] The Court went on to hold, under the narrow-tailoring analysis of *United States v. Grace*, 461 U.S. 171 (1983), that the "demonstration activity" ban was facially unconstitutional. 291 F.3d at 45.

12

constitutional right—not whether the government's interest in § 1752(a) may never overbalance the exercise of that right under time, place and manner precedent. Griffin had the "right to assemble in the Capitol Grounds," *Jeannette Rankin Brigade*, 342 F. Supp. at 583, and to perform "speechmaking" there. *Lederman*, 291 F.3d at 39. Whether or not valid time, place and manner restrictions existed, the government may not choose to prosecute Griffin and not similarly situated protesters because of Griffin's protected speech.

The government contends that Griffin was appropriately chosen for prosecution among the similarly situated because of the salient exercise of his speech in the Grounds. ECF No. 71, p. 8. Thus, Griffin has adduced "some evidence tending to show" that the decision to charge him was based on an "unjustifiable [criterion.]" *Armstrong*, 517 U.S. at 464.

### C.     The government misunderstands selective-enforcement law

Griffin's motion showed that his burden to obtain discovery on a claim of selective enforcement is substantially lower than that set forth in *Armstrong*. ECF No. 67, p. 9. The government's response is as mistaken as it is brief.

The government suggests that selective enforcement doctrine only applies "in the particular context of 'reverse sting operations' not applicable here." ECF No. 71, p. 9. Not so. While that fact pattern occasioned further development of selective enforcement law, the rationale supporting a burden for discovery lower than that set forth in *Armstrong* does not turn on anything unique to reverse sting operations. Rather, as Judge Easterbrook has explained, the courts should be more amendable to selective enforcement claims because unlike prosecutors, law enforcement agents "are not protected by a powerful privilege or covered by a presumption of constitutional behavior." *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (en banc).

Next, the government says that Griffin has adduced no evidence supporting an inference the law enforcement agents—as opposed to prosecutors—selected Griffin for arrest or prosecution referral based on an unjustifiable criterion.  ECF No. 71, p. 10.  It is not clear what the government means.  The criminal complaint for Griffin's arrest, charging him under § 1752(a), was filed by law enforcement agents, not the U.S. Attorney's Office.  ECF No. 1.  The law enforcement agents also dwelled at length on Griffin's speech on the Capitol steps as a basis for prosecution referral.  *Id.*, pp. 4-6.  For example, the agents noted that Griffin made comments "about his intent [on January 6] to lead the [crowd] in prayer." *Id.*, p. 5.

The government seems to suggest that the conceded statistical reality that Griffin is in an arrest set of one among over 1,000 similarly situated protesters is not attributable even in part to the investigatory role of law enforcement.  Because law enforcement agents independently arrested Griffin on this charge and filed the criminal complaint, as they do in hundreds of other January 6 cases, the government's argument makes no sense.

**Conclusion**

Griffin stands in a charging set of one among over 1,000 similarly situated protesters.  The government's opposition itself indicates that it was his unique speech on the Capitol steps that justified charging him and not others.  At the least, then, he has satisfied the standard for discovery into his selective enforcement and prosecution claim.  The current evidence is itself sufficient to dismiss the charges for an equal protection violation.

Dated: January 23, 2022                                  Respectfully submitted,

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314

14

Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 722-1096
nds@davidbsmithpllc.com

*Attorneys for Couy Griffin*

## Certificate of Service

I hereby certify that on the third day of January 23, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

> Janani Iyengar
> Assistant United States Attorney
> 555 4th Street, N.W., Room 4408
> Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, VA Bar No. 25930
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

*Attorneys for Couy Griffin*