UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        v.<br><br>COUY GRIFFIN,<br><br>        Defendant. | )<br>)<br>)<br>)<br>) Case No. 1:21-cr-92-TNM<br>)<br>)<br>)<br>) |

**DEFENDANT GRIFFIN'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO LIMIT CROSS-EXAMINATION OF SECRET SERVICE AGENCY WITNESSES**

Defendant Griffin, through his counsel, files this response to the government's attempt to preclude cross-examination on a subject going to his guilt or innocence on the charged offense under 18 U.S.C. § 1752(a). ECF No. 72.

The government's motion is inappropriate. Several of its factual representations are inaccurate. It represents that "at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Michael Pence and his two immediately family members, all of whom were present at the Capitol." ECF No. 72, p. 2. This is similar to its representation, in hundreds of § 1752(a) criminal complaints including the one here, that "Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber [at 2:20 p.m.] until the session[] resumed [at 11:35 p.m.]." ECF No. 1-1, p. 3. This is also similar to its prior representation that Vice President-elect Kamala Harris was "temporarily visiting" when Griffin allegedly entered the restricted area. ECF No. 31.

The government's allegation about the vice president-elect's presence in the restricted area on January 6 turned out to be false. Nor does the government still defend the criminal complaint's allegation that Vice President Pence "remained" in the Capitol between 2:20 p.m.

1

and 11:35 p.m.  And it does not deny that the vice president left the Capitol building at 2:26 p.m., repairing to an underground garage after passing through subterranean tunnels.  ECF No. 73, p. 1.

The Court should inquire why the government makes factual representations in court filings after they were shown to be inaccurate.

Just as the factual premises of the motion in limine are mistaken, so are its legal ones. The trial question at issue is whether Griffin knowingly entered or remained in a "restricted building or grounds" where the vice president "[was] or [would] be temporarily visiting." § 1752(c)(1)(B).  The government is actually proposing that the Court prevent the fact finder from learning whether the vice president was or would be temporarily visiting the restricted Capitol Building and the Capitol Grounds when Griffin allegedly entered the latter.  ECF No. 72, p. 2. Even if the government had not given the Court all the above reasons to doubt the veracity of its allegations on this central issue, its request would still be on its face frivolous.

None of the rules of evidence cited by the government permits foreclosure of cross-examination of a government witness on a subject going to whether an element of the offense has been proven beyond a reasonable doubt.  To the contrary, those rules, and Griffin's constitutional rights, require rejection of the government's position.  Griffin has the right to confront witnesses against him.  U.S. Const. Amend. VI.  Generally, Confrontation Clause issues "fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985).  The latter category is governed by the Supreme Court's decision in *Davis v. Alaska*, 415 U.S. 308, 315 (1974).  474 U.S. at 18.  In *Davis*, "the Court recognized that Confrontation Clause questions will arise [when restrictions are placed on the

2

scope of cross-examination] because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'" *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)); *Davis*, 415 U.S. at 315 ("[T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."). In *Davis*, the Court vacated a conviction after the defendant was denied the opportunity to cross-examine a prosecution witness on the subject of the witness's probationary status as a juvenile delinquent to show possible bias. 415 U.S. at 309. The government's "policy interest in protecting the confidentiality of [the witness's record] [could not] require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.* at 320.

The government's specific argument here was rejected in *United States v. Foster*, 986 F.2d 541 (D.C. Cir. 1993). Foster was on trial for possession of crack cocaine with intent to distribute and for committing the offense within 1,000 feet of a school. *Id.* at 542. To prove the proximity-to-a-school element, the government called a U.S. Park Police officer who testified that he identified Foster from an elevated observation post. To challenge the officer's identification of him, Foster sought cross-examination on the subject of the location of the observation post. *Id.* The government objected on the ground that revealing the post's location would interfere with its interest in detecting and preventing future crime in the area, a significant government interest. The district court barred the defendant from cross-examination on the matter. *Id.*[1]

The D.C. Circuit vacated the defendant's conviction. Even assuming the government had

---

[1] The only reason the *Foster* court closely considered the government's argument at all was that it was based on an evidentiary privilege—the so-called "observation post privilege." Here, the government invokes no privilege, citing instead to Rules 401, 403 and 611(b), which lend no support to its position, as shown *infra*. 986 F.2d at 543.

3

identified a real evidentiary privilege—the "observation post privilege"—it was plainly overbalanced by the defendant's interest in eliciting information "relevant and helpful to the defense. . ." 986 F.2d at 541 (internal quotation marks omitted).  Without the officer's testimony, the government could not have established its case that Foster committed the offense within 1,000 feet of a school.  "The more important the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendment, to cross-examine the witness." *Id.* at 543 (citing *Davis*, 415 U.S. at 319).  Without knowing where the observation post was located, the defendant could not effectively challenge the officer's testimony that he committed an element of the offense.  "The right of the defense to engage in such lines of inquiry is at the heart of our system of criminal justice." *Id.* at 544.

As for the government's interest in preserving the secrecy of the observation post, "drug dealers already know from this case that the police can watch this particular area from a distance." 986 F.2d at 544.

Here, the government represents that it "may" call a Secret Service agent to establish that the area Griffin entered was "restricted." ECF No. 72, p. 4.  As with the government witness in *Foster*, the Secret Service agent's testimony is necessary to the government's case. *Foster*, 986 F.2d at 543.  The question whether the "building [and] grounds" at issue were so restricted turns on whether the vice president "[was] or [would] be temporarily visiting" there when Griffin allegedly entered either of those places.  § 1752(c).  Thus, the scope of direct examination, and therefore of cross-examination, encompasses the subject matter on which the government attempts to preclude witness testimony—"information related to the location within the Capitol or its grounds to which the Vice President and his family, or their motorcade, were taken once

the riot began on January 6, 2021." ECF No. 72, p. 2.[2]

Moreover, the government makes no argument showing how the question whether the vice president "[was] or [would] be temporarily visiting" the "restricted building or grounds" when Griffin allegedly entered or remained there is somehow both an element of the offense—and also irrelevant. It has not contested Griffin's contention that the vice president left the Capitol Building at 2:26 p.m. on January 6; that Griffin entered the "restricted area" at no point before 2:31 p.m.; and that after leaving the building, the vice president proceeded to an underground garage lying physically and definitionally outside the restricted area, comprising the Capitol Building and part of the Capitol Grounds. ECF No. 73, pp. 1-2.

Unlike in *Foster*, the government raises no evidentiary privilege. Instead, it contends that the question whether the vice president was in, or would be returning to, the restricted area when Griffin entered it is "sensitive information" that is "by extension" a matter of "national security." ECF No. 72, p. 2. The government cites two decisions which it says support its position. *Id.*, pp. 2,5. They do not. Both are distinguishable for two simple reasons.

First, the government does not represent that the "sensitive information" going to whether Griffin committed a crime is classified. It therefore has no basis for arguing for preclusion of testimony under the Classified Information Procedures Act (CIPA) which contains a statutory mechanism allowing courts to exclude relevant evidence in certain limited circumstances. 18 U.S.C. App III. That distinguishes Griffin's case from the one the government cites for the purported principle that the Court may preclude cross-examination on a subject on the ground

---

[2] The government characterizes the question as going to where "within" the Capitol or its grounds the vice president was taken after 2:26 p.m. ECF No. 72. As it knows, the question instead is whether the location to which the vice president was taken was a part of the United States Capitol, 40 U.S.C. § 5101, or of the portion of the United States Capitol Grounds (§ 5102) within the "restricted area" under § 1752(a).

that it concerns "national security." ECF No. 72, p. 5 (citing *U.S. v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (concerning CIPA and classified information, not a claim of a "national security" information in unclassified material). Even in *Mohammed*, the court did not preclude cross-examination on the subject at issue merely because the information was classified but because it did not relate at all to any legal dispute in the case and did not even bear on the possible bias of a witness. 410 F. Supp. 2d at 916.

Second, to the extent the other authority cited by the government identifies a basis for courts to preclude cross-examination on unclassified "sensitive information" as such outside the context of an evidentiary privilege or CIPA it is only in the case of material that does not "pertain to the charges" in the case. *U.S. v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). Nor did the *Balistreri* court explain the nature of the "sensitive" information at issue or whether its sensitivity was determinative in its exclusion since the court also deemed it irrelevant. *Id.*

The government's remaining arguments are frivolous. It cites to *Fensterer* for the proposition that the "Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" ECF No. 72, p. 3 (quoting 474 U.S. at 20). It is not clear why the government cites to this case. As the Court explicitly held in *Fensterer*, the trial court in that case "did not limit the scope or nature of defense counsel's cross-examination in any way." 474 U.S. at 19.

The government cites to *Delaware v. Van Arsdall*, 475 U.S. 673 (1986) for the point that "permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning." ECF No.

6

72, p. 3 (quoting 475 U.S. at 679).  *Van Arsdall* is a curious citation for the government.  There, the trial court did what the government requests here: "prohibited *all* inquiry" into the subject matter on which the defendant sought cross-examination of the government's witness. 475 U.S. at 679 (italics original).  That is precisely why the Court found a Confrontation Clause violation. *Id.*  The *Van Arsdall* Court also concluded that the trial court error would be reviewed on appeal under the standard set forth in *Chapman v. California*, 386 U.S. 18 (1967), i.e., whether the deprivation of cross-examination was "harmless beyond a reasonable doubt." 475 U.S. at 684.

      The government's remaining citations have no relevance to the issue here.  In *United States v. Lin*, the D.C. Circuit upheld the trial court's limitation on cross-examination because defense counsel refused to answer the court's reasonable demand for a proffer to support questioning concerning the government witness's "shady businesses." 101 F.3d. 760, 768 (D.C. Cir. 1996).  Without such a proffer, there was no basis for proving the witness had a motive to lie. *Id.*  Unlike here, the cross-examination in *Lin* had nothing to do with whether an element of the offense was satisfied.  The government's citation to *United States v. Sampol*, 636 U.S. 621, 663-64 (D.C. Cir. 1980) is distinguishable for the same reason.  Unlike in Griffin's case, the defendants sought to cross-examine a government witness not on the elements of the crime at issue, but with respect to other alleged crimes committed by the witness. 636 U.S. at 657.  The court of appeals found that Rule 404(b) material too tangential to the crime at issue and in any event the defense did not proffer a reasonable factual foundation for that line of inquiry. *Id.* at 658.

      Finally, the government cites to *United States v. Stamp*, 458 F.2d 759 (D.C. Cir. 1971). This decision supports Griffin's position, not the government's.  While the court of appeals found no error in the trial court's decision not to allow the defense to cross-examine a

government witness "with respect to matters only relative to an affirmative defense" not adequately presented, it also found that it was "without question that appellants had a right to cross-examine the [government witnesses] concerning the . . . [criminal] transactions listed in the indictment[.] [I]f we were to find that the trial judge in fact denied them this right we would be duty-bound to reverse the convictions." 458 F.2d at 772.  Here, the subject matter on which the government seeks to preclude cross-examination does not concern any affirmative defense but instead the elements of a § 1752(a) offense themselves.  Thus, this Court's preclusion of cross-examination on those elements would constitute reversible error.  *Stamp*, 458 F.2d at 772.

In sum, there is no basis in the evidentiary rules or the Constitution to endorse the government's extraordinary attempt at shutting down inquiry into whether Griffin has committed a crime.  But even if there were, granting the government's next request for an ex parte proceeding to determine the evidence's admissibility would result in clear error.  Again, the government has not represented that the information at issue is classified.  Therefore, even if an in camera hearing were appropriate to determine whether the information at issue may be excluded from trial, it would be grossly inappropriate to hold it without the presence of defense counsel.  Ex parte proceedings "are antithetical to the very concept of a[] court reaching impartial decisions through formal adjudication." *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F2d 1534, 1543 (9th Cir. 1993).  As the D.C. Circuit has found,

> We think it a mockery of justice to even suggest that judges or other decisionmakers may be properly approached on the merits of a case during the pendency of an adjudication. Administrative and judicial adjudications are viable only so long as the integrity of the decisionmaking process remains inviolate. There would be no way to protect the sanctity of the adjudicatory process if we were to condone direct attempts to influence decisionmakers through ex parte contacts.

*Professional Air Traffic Controllers Org. v. Federal Labor Relations Auth.*, 685 F.2d 547, 570 (D.C. Cir. 1982).

Ex parte proceedings may occur only in "the most extraordinary circumstances." *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986). Such circumstances almost always involve classified information. *Id.* at 1060. Outside that context, the "extraordinary circumstances" that would permit what is ordinarily "a mockery of justice" are strictly limited. Those are where (1) "documents sought by a party enjoy a privilege against discovery," (2) "to prevent frustration of a statutory purpose to limit access to Government papers," or (3) "to resolve fears of intimidation of a witness." *Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.2d 958, 967 (D.C. Cir. 2016). Apparently the sole situation in which the D.C. Circuit has found those exceptions satisfied was "intelligence materials generated in the midst of a geopolitical conflict." *Id.* at 968.³ Even there, the *Gilmore* court did not make clear that the materials were unclassified.

The government points to no evidentiary privilege, conflicting statutory purpose, or witness intimidation fear. It appears to compare the question of whether Vice President Pence was in an underground garage on January 6 to "intelligence materials generated in the midst of a geopolitical conflict." That is self-evidently absurd. Reporting indicates that the former vice president's team volunteered photographs of his time in the garage to a journalist who advised that he was writing a book on the events of January 6. *Mike Pence Hid in "Loading Dock" in Underground Parking Garage During Jan. 6. Riot*, Newsweek, 11/9/21, available at: https://www.newsweek.com/mike-pence-january-6-riot-loading-dock-underground-parking-garage-1. This information has been provided to multiple reporters and at different points in time. *"I alone can fix it" book excerpt: The inside story of Trump's defiance and inaction on*

---

³ The government's remaining citations uncontroversially show that the Court may hold an in camera proceeding on the issue, not that the hearing may be held ex parte. *United States v. Nixon*, 418 U.S. 683, 714 (1974); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977).

*Jan. 6*, Washington Post, July 15, 2021, available at:

https://www.washingtonpost.com/politics/2021/07/15/jan-6-i-alone-can-fix-it-book-excerpt/

(reporting that the vice president left the Capitol Building for an "underground" place at 2:26 p.m. on January 6). The locations of the underground garages to which members of Congress have access are not only not akin to "intelligence materials generated in the midst of a geopolitical conflict," they are publicly available information on the website of the Architect of the Capitol. See Senate Fountain, Architect of the Capitol, available at:

https://www.aoc.gov/explore-capitol-campus/art/senate-fountain (describing location of underground Senate garage).

There is no authority permitting any in camera hearing on this issue to be held ex parte. Such a procedure would constitute a due process violation. *Gilmore*, 843 F.2d at 967 (finding no due process violation because the materials reviewed ex parte were "intelligence materials generated in the midst of a geopolitical conflict"). Therefore, even if the Court decides an in camera review of the evidence is somehow necessary, it should not be held ex parte.[4]

Even if the Court were to grant the government's motion and foreclose questioning regarding the specific location to which the vice president was taken after 2:26 p.m. on January 6, that would not require foreclosing questioning concerning whether that unidentified location was within the Capitol Building and whether it lay in the "restricted area" map used by the government in this case. Those matters could be resolved at trial without revealing the specific

---

[4] If the Court concludes that the garage-related information is akin to classified material, Griffin moves the Court to order the government to explain why his counsel may not attend the hearing with a security clearance. If such a clearance is sufficient for access to classified information, the government should explain why it is insufficient for the unclassified material here.

10

location at issue.  The government has provided no explanation as to why that procedure would not safeguard its "national security" interests.

Finally, Griffin draws the Court's attention to the government's representation that it "may" call a trial witness from the Secret Service, not that it will necessarily do so.  ECF No. 72, p. 1.  Griffin has inquired with the government whether it will make available a Secret Service witness with knowledge of the relevant issues in the event the government does not call one at trial.  Griffin explained that a timely response is necessary, as he will comply with appropriate *Touhy* regulations before subpoenaing the witness, if the government does not agree to make the witness available for trial.  To date, Griffin has not heard back from the government.

Dated: January 27, 2022                                        Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Appointed by the Court*

Nicholas D. Smith, VA Bar No. 79745
David B. Smith, PLLC
7 East 20th Street, Suite 4R
New York, NY 10003
(917) 902-3869
nds@davidbsmithpllc.com

**Certificate of Service**

I hereby certify that on the 27th day of January, 2022, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

JANANI IYENGAR

      Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-7846

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com