**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | |
| **COUY GRIFFIN,** | **CASE NO. 21-CR-092 (TNM)** |
| Defendant. | |

<u>**UNITED STATES' TRIAL BRIEF**</u>

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and various legal issues likely to be brought before the Court.

**I.     THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS**

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds when a joint session of Congress had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael Pence, as the President of the Senate, was there to preside over the joint session and, later, the Senate proceedings. On that day, physical barriers surrounded the U.S. Capitol building and grounds.  At all relevant times, the United States Capitol building and its grounds—including the inaugural stage on the Lower West Terrace on the West Front—were closed to members of the public.

The defendant, Couy Griffin, was among those thousands who illegally entered the U.S. Capitol grounds that day. The defendant and his associate, Matthew Struck, walked from the downtown mall, over several barriers, and up an internal staircase to ultimately enter the inaugural stage that was in the process of being constructed on the Lower West Terrace of the Capitol building. In doing so, the defendant violated 18 U.S.C 1752(a)(1) and 1752(a)(2).

II.      **THE GOVERNMENT'S PROOF**

With this filing, the government aims to streamline the presentation of evidence in the trial and focus the legal issues before this Court. The government intends to call three primary witnesses—an Inspector from the U.S. Capitol Police, an Inspector from the U.S. Secret Service, and an immunized witness who was with the defendant before, during, and after the events of January 6, 2021. The government also expects to present video evidence of the defendant's own statements and actions in Washington, D.C. on January 5 and 6, and the defendant's statements when back in New Mexico on January 14. This presentation will prove the charged offenses beyond a reasonable doubt.

A.  **Elements of the Crimes Alleged**

The Information charges two offenses under 18 U.S.C. § 1752.  The elements of those offenses are as follows.

Count One of the Information charges the defendant with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1.  First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

2.  Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant knowingly entered or remained in a restricted building or grounds, the Court may consider all of the evidence, including what the defendant did or said.[1]

Count Two of the Information charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person.

---

[1]     *See* Seventh Circuit Pattern Criminal Jury Instructions; *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005).

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[2]

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Count One.

### B.  Matthew Struck's Videos and Testimony

Matthew Struck accompanied the defendant to Washington, D.C. and served as the videographer for the defendant, including on January 6.  At trial, the government expects Matthew Struck's testimony and videos will provide a precise picture of the defendant's actions and his intentions. Struck has been granted immunity to testify at trial.

On January 5, 2021, the defendant and Struck arrived in Washington, D.C. Upon their arrival, Struck took a video of the defendant in a parking lot in front of the U.S. Capitol building. During that video, the defendant talked about the purpose of their visit in D.C., for what the defendant believed would be "possibly the most historic day for our country in my lifetime." The defendant stated that he and many others were praying for Vice President Mike Pence and "trust that [he] will do the right thing." Behind the defendant was the West Front of the Capitol grounds, surrounded by bike racks bearing signs saying "Area Closed," cordoning off the perimeter of the area the defendant would breach the next day.

On January 6, 2021, the defendant attended President Trump's rally on the National Mall between the Ellipse and the Washington Monument.  Following the rally, the defendant and Struck walked towards the Capitol. When they reached the Capitol grounds at approximately 2:30 p.m., many metal barricades had been moved and a large crowd had already entered the restricted area.

---

[2]     Redbook 6.643.

Griffin climbed over a stone wall and entered the lawn on the West Front of the Capitol, within the restricted area. He turned to another individual and stated, "This is our house … we should all be armed." Griffin then climbed over a metal barricade surrounding the West Front and entered the area below the inauguration platform.

As Griffin climbed the hidden stairway to the inauguration stage, which was under construction on the Lower West Terrace, he said, "I love the smell of napalm in the air," referencing a quote from *Apocalypse Now* as he appeared to cover his mouth and nose from the acrid smell of oleoresin capsicum spray. Griffin then boosted himself up onto the front railing of the inaugural stage, turned to Struck's camera and said, "can we do it live?" Griffin asked again, "are we live?" and addressed his video audience saying, "It's a great day for America. The people are showing that they have had enough. People are ready for fair and legal elections, or this is what you're gonna get and you're gonna get more of it." Another individual stated, "We came peacefully," but "we are well armed if we need to be." Griffin responded, "And we're not going anywhere, we aren't taking no for an answer. We're not gonna get our election stolen from us from China. This is an America that's had enough right here." Griffin spent over an hour perched on the front railing of the inaugural stage being filmed by Struck. During this time, Griffin joined those around him in chanting "We . . . the people!," and later shouted through a bullhorn, waiving his arms and asking the crowd below to kneel and listen as he led them in prayer.

**C.    The Defendant's Statements at the County Commission Meeting**

Not only will the Court see video evidence of the defendant's actions on January 6, 2021, but it will hear the defendant describing those actions a week later. On January 14, 2021, the defendant appeared at an Otero County Commissioners' meeting, as a part of his official duties, and discussed the events of January 6, 2021. This County Commissioners' meeting was streamed

live on YouTube and captured by law enforcement as evidence in this case. Several of the defendant's statements in the recording of the meeting constitute either direct admissions that he was illegally present in a restricted area or evidence of the defendant's state of mind during and after January 6, 2021.

The government plans to introduce these statements at trial, which are admissible as non-hearsay under Federal Rule of Evidence 801(d)(2)(A) (Opposing party's statements are not hearsay).

**D.      Compilation Exhibits About January 6, 2021 Events at the U.S. Capitol**

Although the defendant is only one participant and remained outside the Capitol building itself on January 6, evidence of the broader context of the events of the day is both relevant to and probative of the alleged offenses.

*Capitol Police Testimony and CCTV Video Compilation*

The government intends to introduce evidence through a U.S. Capitol Police inspector familiar with the Capitol Police procedures leading up to January 6, 2021, including the security measures put in place. The inspector is also familiar with the approximately 1600 cameras present at the U.S. Capitol building and grounds. From the videos created by those cameras on January 6, 2021, the government has developed a comprehensive exhibit covering the events of the day.

As the Certification proceeding at the Capitol began, a large crowd gathered outside the U.S. Capitol.  Officers with the United States Capitol Police and the Metropolitan Police Department attempted to keep the crowd away from the building, but the crowd broke through several barriers on the West front just before 1:00 pm  Another crowd gathered on the East Plaza of the building, encroaching on the area where the motorcade that brought Vice President Pence to the Capitol was located.  Shortly before 2:00 p.m., the crowd on the West Front broke into the

scaffolding, which was set up to construct the inauguration stage.  At 2:13 p.m., individuals in the crowd forced entry into the U.S. Capitol building itself on the West side near the Senate.  In response to this intrusion, representatives, senators, and Vice President Pence evacuated their respective chambers around 2:20 p.m.  For the next two hours, rioters flooded the building and the grounds, while police attempted to clear them out. The police finally cleared the Lower West Terrace of the Capitol at approximately 5:10 p.m.

*Congressional Proceeding Montage and Congressional Record*

The government also expects to submit the official *Congressional Record* for both the Senate and the House of Representatives on January 6, 2021. Additionally, the government plans to submit video from both the House and Senate recording studios, which will demonstrate that the official government business of the day was disrupted by the rioters. This evidence has been compiled into a summary exhibit to show the Court the timeline of the proceedings and the length of the disruption.

The government expects the defense to object to these compilation exhibits under Rules 401 and 403 of the Federal Rules of Evidence. Evidence about the official proceeding, and its disruption, as well of the actions of Capitol Police with respect to the rioters, is relevant to the charges in two respects. First, for Count Two, the government must prove that the defendant engaged in "disorderly or disruptive conduct" in a restricted area "when . . . such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."  18 U.S.C. § 1752(a)(2).  The compilation exhibits establish how and when the disruption occurred.  Second, for Counts One and Two, the government must prove the defendant knowingly engaged in certain

conduct in a restricted area.[3]   The compilation establishes that element by showing law enforcement efforts, both before and during the breach of the restricted area, to keep unauthorized persons out of the restricted area.

Additionally, any objection under Rule 403 grounded in "unfair prejudice" has "no logical application to bench trials." *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981). Rule 403 "assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity," and "can also exclude those improper inferences from his mind in reaching a decision." *Id.*; *see also Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("[I]n the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial.").

## E. Testimony Regarding the Former Vice President

The government intends to introduce testimony from an inspector with the U.S. Secret Service who was assigned to the detail of former Vice President Mike Pence on January 6, 2021, and can testify about his whereabouts on that day.

On January 18, 2022, the government filed a Motion in Limine to limit the cross-examination of any Secret Service witness at trial in order to avoid public disclosure of sensitive details concerning the operations of the Secret Service and its protection of high-level officials at the U.S. Capitol.   ECF 72.   The government requested a reasonable limitation on the cross-examination in order to avoid inquiry into sensitive matters that are not required elements of the crimes charged.   Specifically, the government requested that the Court preclude inquiry into the

---

[3] A defendant may violate 18 U.S.C. § 1752(a)(2) by engaging in disruptive conduct (with the appropriate *mens rea*) while "within such proximity" to a restricted area.   The proof in this case will establish that the defendant was "in" the restricted area, not merely in close proximity to it.

following: "Information related to the location within the Capitol or its grounds to which the Vice President and his family, or their motorcade, were taken once the riot began on January 6, 2021." (ECF No. 72, at 2). As discussed in the government's Motion in Limine, those details are not necessary to establish the offenses charged. The government's Motion in Limine remains pending.

On February 16, 2022, the defendant filed a motion seeking to subpoena a Secret Service witness. The government did not oppose the Defendant's motion, and on March 9, 2022, the Court issued a minute order denying the defendant's motion as moot and stating the following:

> MINUTE ORDER as to COUY GRIFFIN: The Court has reviewed the Defendant's [79] Motion for Rule 17(b), (d) Subpoena. If the Government wishes to proceed on Count One of the [85] Third Amended Information, it is hereby ORDERED to have a witness present at trial who can speak based on first-hand knowledge as to the whereabouts of former Vice President Pence during the alleged offense conduct. The motion is otherwise DENIED as moot. SO ORDERED.

The government intends to proceed on Counts One and Two of the Third Amended Information and, pursuant to the Court's minute order, a Secret Service Inspector, who, as noted, has first-hand knowledge of the Vice President's location during the crimes charged, will be available to testify at trial.

For the reasons set out in the government's pending Motion in Limine, the Defendant should be precluded from cross-examining the witness regarding the details of the Vice President's secure location. Given the sensitivity of this information and the fact that details regarding the undisclosed location within the Capitol where the Vice President and his family remained during the breach of the Capitol (1) are not necessary to establish the crimes charged and (2) implicate

national security considerations, the government reiterates its request that the Defendant be precluded from cross-examination concerning the details of the Vice President's specific location.

Indeed, this information is so sensitive and important to the security of Secret Service protectees that any Secret Service witness who testifies in this case will not answer any questions about the precise location of the emergency relocation site to which the Vice President was taken on January 6, 2021.  To require any witness to testify to such facts would compromise the mission of the Secret Service and would put the government in the untenable position of trying to prosecute a statute aimed at protecting a Head of State, while simultaneously compromising the future security of a Head of State.

An amendment to the Information that aligns it more closely with the relevant statutory language further establishes that the Vice President's exact location at the time that the Defendant entered the Capitol grounds is irrelevant to the charged conduct. Section 1752 requires the government to prove that the Defendant entered a "restricted area of a building or grounds," which includes an area in which a person protected by the Secret Service is *or will be* temporarily visiting. 18 U.S.C. § 1752(c)(1)(B). Thus, the statute requires only that the government prove that the Secret Service protectee was or would be visiting the building or grounds associated with the restricted area.  The Third Amended Information tracks that statutory language.  ECF 85.

Therefore, the government is not required to prove that at the exact moment the defendant entered the restricted area, the Vice President was also in the restricted area. The government is required to prove only that a Secret Service protectee was or would be in the restricted building or grounds into which the defendant entered or on which the defendant remained. In this case, Vice President Pence was, in fact, within the restricted area throughout the Capitol breach.  And even if the government offered no evidence as to the Vice President's exact location at the time of the

defendant's offense, the public record makes clear that Vice President Pence was in the Senate Chamber in the early afternoon on January 6 and returned to the Senate Chamber for the proceedings in the evening on January 6, 2021.  This alone establishes that the Capitol Building and Grounds were a restricted area at the time of the charged offense because, at the very least, it was a location where the Vice President "will be temporarily visiting."

## III.    LEGAL ISSUES BASED ON ANTICIPATED DEFENSES

Based on the defendant's previous arguments and pre-trial filings, as well as the nature of the evidence in this case, the government anticipates that the defendant may pursue certain defenses at trial.  Legal issues presented by these anticipated defenses, none of which undermines the proof in this case, are previewed below.

### A.    The Capitol Grounds Was Restricted on the Afternoon of January 6 Because the Vice President Was and Would Be Visiting That Location, Regardless of the Precise Time of the Defendant's Breach.

In several filings, the defendant has attempted to add an additional element for the government to prove at trial. Consistent with the plain language of Section 1752(c)(1)(B), for each count in the Third Amended Information, the government is required to prove that the defendant entered a "restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting."  ECF 85.  The Information, tracking the statute, requires only that the government prove that the Vice President was or would be visiting the restricted area in the Capitol or grounds.  The government expects the testimony at trial to show that former Vice President Pence remained in the restricted area from the time he began presiding over the Electoral College certification process in the Senate beginning at approximately 1:00 p.m. to the time he returned to the Senate chamber at approximately 8:06 p.m.  That testimony satisfies the element

requiring the government to prove that the former Vice President was or would be visiting the restricted area of the Capitol or grounds at the time the defendant entered the restricted area.

The defendant has argued in prior pleadings that, at the time he entered the restricted area, the Vice President was in a parking garage that was outside the restricted area. ECF No. 66 at 5. This claim is inaccurate, and, as consistent with the Court's minute order denying as moot the defendant's motion to subpoena a Secret Service witness, the government will have a witness present at trial who can say unequivocally that the Vice President remained within the restricted area throughout the defendant's offense conduct.  However, as discussed above, this is not a required element of the offenses charged, and the government need not offer proof that the Vice President was actually present within the restricted area in order to establish a violation.

The defendant further claims that Court should apply the definition of the U.S. Capitol in 40 U.S.C. 5101 to the term "United States Capitol" in the government's Information. ECF No. 66 at 5-6. The defendant argues that because this definition distinguishes between the Capitol building and areas that are below ground, including subways and the office building garages, the underground areas are not considered part of the Capitol building. *Id.* Therefore, the defendant argues, if the Vice President was in an underground location, he could not have been within the United States Capitol as it is defined in Title 40. *Id.*

That claim fails.  The defendant is not charged with a Title 40 offense, and the definition of the United States Capitol in Title 40 is inapplicable to Section 1752.  Section 1752 requires only that the Secret Service protectee was within the restricted area or a building or grounds associated with the restricted area. The Information includes "*any* posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting…" There is nothing in the text of the statute or the charges that

suggest the topographical limitation that the defendant has asked the Court to apply.  And the government anticipates that witnesses will testify that all Capitol structures that fell within the restricted perimeter on January 6 constituted the restricted "building or grounds" for purposes of Section 1752.

**B.    The Defendant Need Only Intend to Enter the Restricted Area Knowing That He Did Not Have Lawful Authority to Do So, and the Government Need not Prove that he had Knowledge of the Vice President's Presence.**

The "knowingly" element of 18 U.S.C. 1752 requires the government to prove that the defendant was aware that he entered and remained in a restricted area and that he knew he did so without lawful authority. The evidence at trial will make that showing. On January 14, 2021, the defendant stated in a video-recorded statement that he observed barricades and fencing on the West Front and was told that he could not enter that area due to the construction of the inauguration platform. This will prove that the defendant knowingly entered a restricted area.

The defendant may argue that the government is also required to prove that the defendant knew that the Vice President was at the Capitol at the time of his entry, or knew the Vice President would return to the Senate chamber following his departure from the grounds.  That argument is incorrect.  Section 1752 does not require the government to prove that the defendant knew why a "restricted building or grounds" was restricted.  The "knowingly" adverb in Section 1752(a) modifies the actus reus in each Count—entering or remaining without lawful authority in Count One (§ 1752(a)(1)), engaging in disorderly or disruptive conduct in Count Two (§ 1752(a)(2))— but does not attach to 18 U.S.C. § 1752(c), which defines the term "restricted building or grounds" in one of three possible ways.  How to define a restricted area for purposes of 18 U.S.C. § 1752 has "nothing to do with the wrongfulness of the defendant's conduct," and thus is "not subject to the presumption in favor of scienter."  *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019); *see*

13

*United States v. Bursey*, 416 F.3d 301, 309 (4th Cir. 2005).  It therefore follows that Section 1752 does not require the government to prove the defendant knew either that the restricted area on January 6 was restricted because of the Vice President's presence or where within the restricted area the Vice President was.

In any event, the defendant's own statements show that he was well aware that Vice President Pence was present at the Capitol on January 6. In a video filmed on January 5, 2021, the defendant makes a reference to the Vice President presiding over the Electoral College certification, while standing directly in front of the Capitol building. And, in the County Commissioners' meeting on January 14, 2021, the defendant states that he was aware that "Mike Pence had certified a fraudulent election," before he walked towards the Capitol grounds.  Thus, even under the defendant's flawed interpretation of what Section 1752 requires, evidence would still establish his guilt.

## IV.    CONCLUSION

The defendant joined the mob that entered the area restricted on January 6, 2021 for the safety and security of the Vice President of the United States.  At trial, the evidence will prove he acted with knowledge and willfulness when taking those actions on January 6, 2021, and the government will prove his guilt beyond a reasonable doubt.


Dated: March 17, 2022


                                        Respectfully Submitted,
                                        MATTHEW M. GRAVES
                                        United States Attorney

By: _____/s/_____

Janani Iyengar
NY Bar No. 5225990
Kimberly L. Paschall
D.C. Bar No. 1015665
Assistant United States Attorneys
555 Fourth Street, N.W., Room 4237
Washington, DC 20530
Janani.iyengar@usdoj.gov
(202) 252-7760

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

Dated: March 17, 2022

By: _____/s/_____

Janani Iyengar
NY Bar No. 5225990
Kimberly L. Paschall
D.C. Bar No. 1015665
Assistant United States Attorneys
555 Fourth Street, N.W., Room 4237
Washington, DC 20530
Janani.iyengar@usdoj.gov
(202) 252-7760