UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 1:21-cr-92-TNM |
| | ) |
| COUY GRIFFIN, | ) |
| | ) |
| Defendant. | ) |

**GRIFFIN'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR "CLARIFICATION"**

The government has filed a motion to reconsider the Court's March 18 Order directing that at trial "Griffin may probe the Government's evidence as to the location of Vice President Pence." ECF No. 92, p. 6. It styles its motion as one seeking "clarification," so as to avoid the forbidding legal standard for a motion for reconsideration which it cannot meet. ECF No. 97. This marks the third time the government has forced Griffin to litigate the same issue, this time on the night before his trial. The Court has resolved this matter, it is the law of the case, and the defendant has relied on it in preparing for his trial tomorrow. The government's motion is vexatious litigation.

On March 9, the Court entered this perfectly clear minute order:

> If the Government wishes to proceed on Count One of the Third Amended Information, it is hereby ORDERED to have a witness present at trial who can speak based on first-hand knowledge as to the whereabouts of former Vice President Pence during the alleged offense conduct.

3/9/2022 Minute Order.

Griffin prepared for trial in reliance on this Order. Yet, in its trial brief, filed March 17, the government effectively asked the Court to reconsider its March 9 Order, but without citing

1

the standard for reconsideration.  ECF No. 90, pp. 8-11.  In its March 18 Order, the Court again denied the government's motion to restrict Griffin's right to cross-examination.  ECF No. 92, pp. 4-6.

Now, the government moves for reconsideration a third time.  Not only will the government not follow the Court's Orders, but it also apparently regards itself as above the reconsideration standard that applies to other parties.  The government represents that in its March 18 Order, "the Court has held that certain information regarding the Vice President's whereabouts *on January 6* should not be adduced.  Additionally, testimony regarding the precise location of the Vice President following his emergency evacuation from the Senate Chamber on January 6, 2021, is . . . irrelevant to the charged offenses. . ." ECF No. 97 (emphasis added).  The government nakedly misrepresents the Court's Order, which needs no clarification.

The government's demand was specifically addressed and clearly denied in the March 18 Order, as it previously was in the March 9 Order:

> The Government responds that the Vice President's *precise location* ultimately doesn't matter. See Reply 1–2, ECF No. 75. Perhaps, although the lack of clarity about the metes and bounds of the restricted area and the Vice President's movements on January 6th undermine this argument. More, the Government's evolving legal theory and factual assertions relating to the Secret Service's protectees raise more questions than they answer.  As of May 2021, the Amended Information alleged Vice President Pence and Vice President-elect Harris were at the Capitol. See ECF No. 31. News media reported just days after January 6th that Vice President Harris was not at the Capitol and watched the events unfold from a remote, secure location.  And yet the Government didn't amend its Information to remove the misrepresentations about Vice President Harris until more than a year later. See Second Amend. Compl., ECF No. 80 (filed on 2/23/2022). The Government has never explained how it got such a basic fact so wrong for so long. Presumably, it was relying on representations—and in felony cases, grand jury testimony—of Secret Service personnel. Given all that, Griffin *may probe the Government's evidence as to the location of Vice President Pence*.

ECF No. 92, pp. 5-6 (emphasis added).

The Court's March 18 Order did restrict Griffin's cross-examination rights as to two

2

other categories of information—that Griffin did not even contest. ECF No. 92, pp. 3-4. What the two restricted categories have in common is they concern general policy-related matters, not factual questions about the vice president's whereabouts on a specific day ("Secret Service protocols. . . ." and "the nature of Secret Service VIP-protection operations"). *Id.*

The government's reconsideration motion suggests that the Court's ruling on the policy-related subject areas somehow means that it also tacitly "held that certain information regarding the Vice President's whereabouts *on January 6* should not be adduced." ECF No. 97, p. 2 (emphasis added). This is insulting. If the Court's ruling on the uncontested policy-related categories of information had also tacitly restricted Griffin's cross-examination rights as to the vice president's whereabouts on January 6, the second half of the Court's March 18 Order is meaningless, as is its order that "Griffin may probe the Government's evidence as to the location of Vice President Pence," ECF No. 92, p. 6, as is its March 9 Order that, "If the Government wishes to proceed on Count One of the Third Amended Information, it is hereby ORDERED to have a witness present at trial who can speak based on first-hand knowledge as to the whereabouts of former Vice President Pence during the alleged offense conduct." 3/9/2022 Minute Order. Had Griffin known that the government would attempt three times to undermine the Court's Orders with baseless arguments such as these, he would have opposed restriction of his cross-examination rights on the other categories of information. The government's demand would necessitate another round of briefing so Griffin would have the opportunity to make all his Sixth Amendment arguments again under the government's misleading interpretation of the Court's March 18 Order.

In any case, Griffin has no intention of cross-examining the witness as to the restricted areas of inquiry but instead as to whether the vice president was within the Capitol Building or

3

Capitol Grounds when Griffin allegedly entered those areas, as that is an element of the offense the government has alleged and must prove. 18 U.S.C. § 1752(c)(1)(B).

The government's motion does not come close to satisfying the reconsideration standard. "To prevail on a motion for reconsideration, it is the moving party's burden to show 'new facts or clear errors of law which compel the court to change its prior position.'" *United States v. Philip Morris*, *Inc.*, 130 F. Supp. 2d 96, 99 (D.D.C. 2001) (quoting *National Ctr. For Mfg. Sciences v. Department of Defense*, 199 F.3d 507, 511 (D.C. Cir. 2000)). "A motion for reconsideration will not be granted if a party is simply attempting to renew legal arguments that have already been rejected by the Court. In general, reconsideration is an extraordinary remedy which should be used sparingly." *Id.*

Related to this is the law of the case doctrine. The law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Among other things, this protects settled expectations of parties and their reliance on court orders. *Trout v. Garrett*, 780 F. Supp. 1396, 1425 (D.D.C. 1991); *Hopkins v. Price Waterhouse*, 737 F. Supp. 1202, 1208 (D.D.C. 1990) (same).

The government has shown no new facts that were unavailable when the Court entered its March 9 and 18 Orders. Not only has it shown no "clear error of law," the relief requested by the government—eliminating Griffin's right to cross-examine a witness on facts going to the elements of the crime with which he is charged—would constitute a clear error of law, for the reasons the Court itself has already clearly explained. March 18 Order, p. 4 (citing *United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993)).

Perhaps most important of all, Griffin has relied on the Court's March 9 and 18 Orders in

4

preparing his defense. Upsetting the settled law of the case one day before trial would severely prejudice his ability to proceed and would only spur additional delays in a misdemeanor case that is already over a year old. The government's demand is particularly inappropriate against the backdrop that it has produced a large amount of last-minute discovery to Griffin which could have been avoided with due diligence. If the Court were to seriously consider the government's request to reconsider two key prior rulings the night before trial, Griffin requests the opportunity to address the issue in oral argument before trial.

Dated: March 20, 2022                              Respectfully submitted,

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorneys for Couy Griffin*

### Certificate of Service

I hereby certify that on the third day of March 19, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

    Janani Iyengar
    Assistant United States Attorney

      555 4th Street, N.W., Room 4408
      Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

      /s/ David B. Smith
      David B. Smith, VA Bar No. 25930
      David B. Smith, PLLC
      108 North Alfred Street, 1st FL
      Alexandria, Virginia 22314
      (703) 548-8911 / Fax (703) 548-8935
      dbs@davidbsmithpllc.com