IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**COUY GRIFFIN,**<br><br>Defendant. | **CASE NO. 21-CR-092 (TNM)** |

## GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER FED. R. CRIM. P. 29

Following the close of the government's case, defendant Couy Griffin moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The defendant makes a single argument—that the Vice President was not temporarily visiting the United States Capitol on January 6, 2021—that no court has accepted, and that three judges on this Court have rejected. *See United States v. Puma*, 21-cr-454, 2022 WL 823079, at *16-*19 (D.D.C. Mar. 19, 2022) (Friedman, J.); *United States v. Andries*, 21-cr-93, 2022 WL 768684, at *16-*17 (D.D.C. Mar. 14, 2022) (Contreras, J.); *United States v. McHugh*, --- F.Supp.3d ---, 21-cr-453, 2022 WL 296304, at *20-*22 (D.D.C. Feb. 1, 2022) (Bates, J.). This Court should deny the defendant's motion.

**I.     Background**

The facts discussed here are limited to those relevant to the disposition of the defendant's sole challenge. Under the Constitution, the Vice President of the United States also serves as the President of the Senate, and in that capacity, the Vice President presides over a Joint Session of Congress on the January 6 following a presidential election in order to certify the Electoral College vote. *See* 3 U.S.C. § 15. An office exists at the United States Capitol for the Vice President in his or her role as the President of the Senate; that office is known as the "ceremonial office." No other person or official uses the ceremonial office, and the Vice President typically is engaged in

government business when he or she comes to the ceremonial office in the Capitol. According to United States Secret Service Inspector Lanelle R. Hawa, Vice President Pence came to the ceremonial office a "handful of times" during his four-year tenure.[1]

## II.   Legal Standard

Rule 29 permits the defendant the move for judgment of acquittal at the close of the government's case in chief on the ground that the evidence presented is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). This Court considers that evidence "in the light most favorable to the government" to determine if "*any* rational trier of act could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (citations omitted). Stated otherwise, "a judgment of acquittal is warranted 'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991).[2] The defendant cannot surmount that demanding standard here.

## III.   Discussion

Counts One and Two allege violations of 18 U.S.C. § 1752, which prohibits the unlawful entry into and disruptive or disorderly conduct in a "restricted buildings or grounds." A "restricted building or grounds" is a "posted, cordoned off, or otherwise restricted area . . . where the President

---

[1] In his Rule 29 motion, the defendant claims that Vice President Pence came to "break at least 12 ties" in the Senate. Def. R. 29 Mot., at 2. Although the defendant inquired of at least one witness during cross-examination, no witness confirmed that statement. But even crediting that statement, that would amount to 12 trips to the Capitol over a four-year period.

[2] This Court applies the same standard to resolve a motion under Rule 29 "whether in the context of a bench or jury trial." *United States v. Jabr*, 18-cr-105, 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (Friedman, J.).

2

or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).  On January 6, 2021, from the time the defendant entered the restricted area around 2:30 pm until the defendant left that area around 5 pm, the Vice President remained in the restricted area.  The defendant's conduct accordingly falls within the Section 1752's plain sweep because he unlawfully entered a restricted area while the Vice President was "temporarily visiting" that area.

That conclusion follows principally from Section 1752's text.  To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  The term "temporary" means "[l]asting for a time only; existing or continuing for a limited time; transitory." *Temporary*, Black's Law Dictionary (11th ed. 2019).  )). The verb "visit" means, *inter alia,* "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."  *See* https://www.merriam-webster.com/dictionary/visit.  Taken together, therefore, "someone is 'temporarily visiting' a location if they have gone there for a particular purpose, be it 'business, pleasure, or sight-seeing,' and for a limited time, which could be 'brief' or 'extended' while nonetheless remaining 'temporary.'" *McHugh*, 2022 WL 296304, at *20.  It is, moreover, "quite natural to say that a person 'temporarily visits' a place where she has an office." *Andries*, 2022 WL 768684, at *16.  Applying these definitions, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification." *Puma*, 2022 WL 823079, at*17; *accord McHugh*, 2022 WL 296304, at *21 ("[T]he Vice President went to the Capitol for a particular purpose—in this case, an official business purpose—and stayed there for only a brief time; his sojourn at the Capitol was 'for a

3

period relatively short' and set to 'terminate upon the occurrence of an event having a reasonable possibility of occurring within a short period of time,' namely the completion of the certification vote.").[3]

The defendant resists this "commonsense conclusion," *McHugh*, 2022 WL 296304, at *21, by advancing two faulty claims. First, he contends that the Vice President "was working." Def. R. 29 Mot., at 2. That argument both fails as a definitional matter—the definitions of "visit" do not include a limitation "based on a trip's purpose,"—and "flies in the face of the ordinary usage" of the ordinary words. *Id.* As Judge Bates pointed out, under that logic, someone who travels for a business trip, including an appellate judge traveling out of town to hear an oral argument, would not be "temporarily visiting" even though describing such conduct as a temporary visit "would be perfectly natural." *Id.*; *accord Andries*, 2022 WL 768684, at *16.

Second, the defendant incorrectly suggests that Vice President Pence used his ceremonial office frequently. *See* Def. R. 29 Mot., at 2 ("Nor did Vice President Pence infrequently use his Capitol office."). In fact, testimony at trial indicated Vice President Pence appeared at the Capitol only a "handful of times" during his four-year tenure in office. That infrequency is unremarkable given that the Capitol "is not the Vice President's regular workplace, nor was Vice President Pence's trip to the Capitol on January 6, 2021 analogous to a regular commute to the office." *McHugh*, 2022 WL 296304, at *22. Indeed, that the office set aside in the Capitol for the Vice President is known as the "ceremonial office" suggests that it is "misleading," *id.*, to describe that

---

[3] Judge Friedman offers an alternative "sensible interpretation" of Section 1752 that avoids having to define the term "temporarily visiting." *See Puma*, 2022 WL 823079, at*18. Under that reading, Section 1752(c)(1)(B) applies to either (1) anywhere "where the President or other person protected by Secret Service *is*" or (2) anywhere "where the President or other person protected by the Secret Service . . . *will be temporarily visiting*." 18 U.S.C. § 1752(c)(1)(B) (emphasis added). As described below, that interpretation is fully consistent with the statute's context and legislative history.

office—as the defendant does, *see* Def. R. 29 Mot., at 2—as the Vice President's "permanent office."

The defendant's interpretation "is not supported by the statutory text and is out of step with the statutory context." *Puma*, 2022 WL 823079, at*17.  Sections 1752 and 3056, which is cited in Section 1752(c)(2), are principally designed to protect certain high-level Executive Branch officials and their families.  Section 1752 aims to deter attacks on these protectees by criminalizing attacks on these individuals either in their official residences, *see* 18 U.S.C. § 1752(c)(1)(A), in any "restricted building or grounds" where they are or will be temporarily visiting, 18 U.S.C. § 1752(c)(1)(B), or in any "restricted building or grounds" that is restricted for a "special event of national significance,"[4] 18 U.S.C. § 1752(c)(1)(C).  The defendant's narrowed interpretation of the "temporarily visiting" prong would protect a protectee for brief visits—but not work trips— outside of Washington, D.C., but not at "any location in Washington, D.C. (other than an official residence) where the protectee maintains an office." *Puma*, 2022 WL 823079, at*17.  Such an interpretation would "leave an arbitrary gap in the application of the law." *Id.*

That straightforward reading of Section 1752's context and purpose finds support in its legislative history.  That history explains that Section 1752 "was designed to remedy the fact that 'there is, at the present time, no Federal statute which specifically authorizes [the Secret Service] to restrict entry to areas where the President maintains temporary residences *or offices*.'" *Andries*, 2022 WL 768684, at *17 (citing S. Rep. No. 91-1252 at 7S. Rep. No. 91-1252 at 7 (1970) (emphasis added).  Indeed, Congress recognized that the Secret Service's "protective mission"

---

[4] Although the Presidential Inauguration was designated as a "special event of national significance," the Certification proceeding on January 6, 2021, was not. *See* Congressional Research Service, *National Special Security Events: Fact Sheet* (Jan. 11, 2021), available at https://sgp.fas.org/crs/homesec/R43522.pdf.

encompasses "securing the buildings and grounds where those protected *work or visit*." 112 Cong. Rec. H1,373 (daily ed. Feb. 28, 2011) (emphasis added); *see Puma*, 2022 WL 823079, at*17 (noting that the relevant legislative history "suggests that Congress intended Section 1752 to apply broadly and comprehensively, reinforcing the security of Secret Service protectees at a number of locations").

In support of his narrowed interpretation of Section 1752, the defendant relies principally on comments made by Judge Nichols during a hearing in *United States v. Fischer*, 21-cr-234 (D.D.C. 2021). But in the ruling that followed, *United States v. Fischer*, 21-cr-234, 2022 WL 782413 (D.D.C. Mar. 15, 2021), Judge Nichols did not disagree with the three rulings discussed above; instead, he noted that a superseding indictment that referred to the members of the Vice President's immediate family would render any challenge "meritless." *Id.* at *5. But as the thoughtful opinions in *McHugh*, *Andries* and *Puma* demonstrate, such a claim is equally "meritless" applied to Vice President Pence himself on January 6. Moreover, the defendant here points to nothing adduced at trial that would unsettle the reasoning in those rulings.[5]

## IV.   Conclusion

For the foregoing reasons, the Court should deny the defendant's motion for judgment of acquittal.

---

[5] The defendant, who never cites let alone discusses *McHugh*, *Andries*, and *Puma*, inaccurately suggests (Def. R. 29 Mot., at 4) that "Judge Nichols' view coincides with all or nearly all reported § 1752 cases." For one thing, Judge Nichols's decision in *Fischer* never expressed a view on the "temporary visiting" question in Section 1752. Moreover, the cases the defendant cites, which involve the President or Vice President in locations outside of Washington, D.C., offer no insight in how to interpret Section 1752 under the factual circumstances presented in this case.

Dated: March 21, 2022

                                        Respectfully Submitted,
                                        MATTHEW M. GRAVES
                                        United States Attorney

By:       /s/
                                        Janani Iyengar
                                        NY Bar No. 5225990
                                        Kimberly L. Paschall
                                        D.C. Bar No. 1015665
                                        Assistant United States Attorneys
                                        555 Fourth Street, N.W., Room 4237
                                        Washington, DC 20530
                                        Janani.iyengar@usdoj.gov
                                        (202) 252-7760